# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF DELAWARE

ARCELORMITTAL FRANCE and )
ARCELORMITTAL ATLANTIQUE )
ET LORRAINE, )
)
     Plaintiffs, )
)
v. ) Civ. No. 10-050-SLR
)
AK STEEL CORPORATION, )
SEVERSTAL DEARBORN, INC., and )
WHEELING-NISSHIN, INC., )
)
     Defendants. )

**FINAL JURY INSTRUCTIONS**

Dated:   January 14, 2011

## GENERAL INSTRUCTIONS

### INTRODUCTION

Members of the jury, now it is time for me to instruct you about the law that you must follow in deciding this case. I will start by explaining your duties and the general rules that apply in every civil case. I will explain some rules that you must use in evaluating particular testimony and evidence. I will explain the positions of the parties and the law you will apply in this case. Last, I will explain the rules that you must follow during your deliberations in the jury room. Please listen very carefully to everything I say.

You will have a written copy of these instructions with you in the jury room for your reference during your deliberations. You will also have a verdict form, which will list the interrogatories, or questions, that you must answer to decide this case.

1

## JURORS' DUTIES

You have two main duties as jurors.  The first one is to decide what the facts are from the evidence that you saw and heard here in court.  Deciding what the facts are is your job, not mine, and nothing that I have said or done during this trial was meant to influence your decision about the facts in any way.

Your second duty is to take the law that I give you, apply it to the facts, and decide which party should prevail on the issues presented.  I will instruct you about the burden of proof shortly.  It is my job to instruct you about the law, and you are bound by the oath that you took at the beginning of the trial to follow the instructions that I give you, even if you personally disagree with them.  This includes the instructions that I gave you before and during the trial, and these instructions.  All the instructions are important, and you should consider them together as a whole.

Perform these duties fairly.  Do not let any bias, sympathy or prejudice that you may feel toward one side or the other influence your decision in any way.

## EVIDENCE DEFINED

You must make your decision based only on the evidence that you saw and heard here in the courtroom. Do not let rumors, suspicions, or anything else that you may have seen or heard outside of court influence your decision in any way. The evidence in this case includes only what the witnesses said while they were testifying under oath (including deposition testimony that has been played or read to you), the exhibits that I allowed into evidence, and any facts that the parties agreed to by stipulation.

Nothing else is evidence. The lawyers' statements and arguments are not evidence. Their questions and objections are not evidence. My legal rulings are not evidence. None of my comments or questions are evidence. The notes taken by any juror are not evidence.

Certain charts and graphics have been used to illustrate testimony from witnesses. Unless I have specifically admitted them into evidence, these charts and graphics are not themselves evidence even if they refer to, identify, or summarize evidence.

During the trial I may not have let you hear the answers to some of the questions that the lawyers asked. I also may have ruled that you could not see some of the exhibits that the lawyers wanted you to see. And sometimes I may have ordered you to disregard things that you saw or heard. You must completely ignore all of these things. Do not speculate about what a witness might have said or what an exhibit might have shown. These things are not evidence, and you are bound by your oath not to let them influence your decision in any way.

3

Make your decision based only on the evidence, as I have defined it here, and nothing else.

## DIRECT AND CIRCUMSTANTIAL EVIDENCE

Some of you may have heard the terms "direct evidence" and "circumstantial evidence."

Direct evidence is simply evidence like the testimony of any eyewitness which, if you believe it, directly proves a fact. If a witness testified that he saw it raining outside, and you believed him, that would be direct evidence that it was raining.

Circumstantial evidence is simply a chain of circumstances that indirectly proves a fact. If someone walked into the courtroom wearing a raincoat covered with drops of water and carrying a wet umbrella, that would be circumstantial evidence from which you could conclude that it was raining.

It is your job to decide how much weight to give the direct and circumstantial evidence. The law makes no distinction between the weights that you should give to either one, nor does it say that one is any better evidence than the other. You should consider all the evidence, both direct and circumstantial, and give it whatever weight you believe it deserves.

## CONSIDERATION OF EVIDENCE

You should use your common sense in weighing the evidence. Consider it in light of your everyday experience with people and events, and give it whatever weight you believe it deserves. If your experience tells you that certain evidence reasonably leads to a conclusion, you are free to reach that conclusion.

## USE OF NOTES

You may use notes taken during the trial to assist your memory. Remember that your notes are for your personal use. They may not be given or read to anyone else. Do not use your notes, or any other juror's notes, as authority to persuade fellow jurors. Your notes are not evidence, and they are by no means a complete outline of the proceedings or a list of the highlights of the trial. Some testimony that is considered unimportant at the time presented and, thus, not written down, may take on greater importance later on in the trial in light of all the evidence presented. Your notes are valuable only as a way to refresh your memory. Your memory is what you should be relying on when it comes time to deliberate and render your verdict in this case.

## CREDIBILITY OF WITNESSES

You, the jurors, are the sole judges of the credibility, or the believability, of the witnesses you have seen during the trial and the weight their testimony deserves.

You should carefully scrutinize all the testimony each witness has given and every matter of evidence that tends to show whether he or she is worthy of belief. Consider each witness's intelligence, motive, and state of mind, as well as his or her demeanor while on the stand. Consider the witness's ability to observe the matters as to which he or she has testified and whether he or she impresses you as having an accurate recollection of these matters. Consider also any relation each witness may bear to each side of the case, the manner in which each witness might be affected by the verdict, the interest any witness may have in the verdict, and the extent to which, if at all, each witness is either supported or contradicted by other evidence in the case.

Discrepancies in the testimony of different witnesses may, or may not, cause you to discredit such testimony. Two or more persons witnessing an incident or transaction may see or hear it differently. Likewise, in determining the weight to give to the testimony of a witness, you should ask yourself whether there was evidence tending to prove that the witness testified falsely about some important fact, or whether there was evidence that at some other time the witness said or did something, or failed to say or do something, that was different, or inconsistent, from the testimony that he or she gave during the trial. It is the province of the jury to determine whether a false statement or a prior inconsistent statement discredits the witness's testimony.

You should remember that a simple mistake by a witness does not mean that the witness was not telling the truth. People may tend to forget some things or remember

8

other things inaccurately.  If a witness has made a misstatement, you must consider whether it was simply an innocent lapse of memory or an intentional falsehood, and that may depend upon whether it concerns an important fact or an unimportant detail.

## EXPERT WITNESSES

When knowledge of technical subject matter might be helpful to the jury, a person who has special training or experience in that technical field – he or she is called an expert witness – is permitted to state his or her opinion on those technical matters. However, you are not required to accept that opinion. As with any other witness, it is up to you to judge the credentials and credibility of the expert witness and decide whether to rely upon his or her testimony.

You should consider each expert opinion received in evidence in this case, and give it such weight as you think it deserves. If you decide that the opinion of an expert witness is not based upon sufficient education and experience, or if you conclude that the reasons given in support of the opinion are not sound, or if you feel that the opinion is outweighed by other evidence, you may disregard the opinion in whole or in part.

## NUMBER OF WITNESSES

One more point about the witnesses.  Sometimes jurors wonder if the number of witnesses who testified makes any difference.  Do not make any decisions based only on the number of witnesses who testified.  What is more important is how believable the witnesses were, and how much weight you think their testimony deserves.  Concentrate on that, not the numbers.

## DEPOSITION TESTIMONY

During the trial, certain testimony was presented to you through depositions that were read into evidence or electronically played.  This testimony must be given the same consideration you would give it had the witness personally appeared in court.  Like the testimony of a live witness, the statements made in a deposition are made under oath and are considered evidence that may be used to prove particular facts.

## THE PARTIES AND THEIR CONTENTIONS

I will now review for you the parties in this action and the positions of the parties that you will have to consider in reaching your verdict.

Plaintiffs are ArcelorMittal France and ArcelorMittal Atlantique et Lorraine, which I will refer to as plaintiffs.

Defendants are AK Steel Corporation, Severstal Dearborn, Inc., and Wheeling-Nisshin, Inc., which I will collectively refer to as defendants.

Plaintiffs own the United States patent at issue in this case: U.S. Patent No. 6,296,805, which I will refer to as "the '805 patent." Plaintiffs manufacture steel products, including aluminum-coated boron steel sheet under the product name USIBOR.

AK Steel has manufactured aluminum-coated, cold-rolled boron steel sheet under the product names "AL StlT1 60 Heat Treat Boron TM (RAP)," and "Aluminized Steel Type 1 Secondary," which use the AXN chemistry.

Severstal has manufactured aluminum-coated, cold-rolled boron steel sheet known as "Aluminum Coated Boron Hardenable Steels" or "ACBHS." Wheeling coats Severstal's product with an aluminum alloy.

Plaintiffs contend that defendants' aluminum-coated, cold-rolled boron steel products infringe claims 1, 2, 5, 7 and 16 of the '805 patent. These claims may be referred to as the "asserted claims" of the '805 patent. Defendants deny plaintiffs' allegations of infringement. Defendants also assert that the '805 patent is invalid due to anticipation and obviousness.

You will be asked to determine the issues of infringement and validity according

13

to instructions I will give you in a moment.

## BURDENS OF PROOF

In any legal action, facts must be proven by a required standard of evidence, known as the "burden of proof." In a patent case such as this, there are two different burdens of proof that are used. The first is called "preponderance of the evidence." The second is called "clear and convincing" evidence.

Plaintiffs must prove their claims of patent infringement by a preponderance of the evidence. When a party has the burden of proof by a preponderance of the evidence, it means that you must be persuaded that what the party seeks to prove is more probably true than not true. To put it differently, if you were to put plaintiffs' and defendants' evidence of infringement on opposite sides of a scale, the evidence supporting plaintiffs' assertions would have to make the scale tip somewhat to plaintiffs' side.

Clear and convincing evidence is a higher burden of proof than a preponderance of the evidence. Defendants have the burden of proving that each one of the asserted claims of the '805 patent is invalid by clear and convincing evidence. Clear and convincing evidence is evidence that produces an abiding conviction that the truth of a fact is highly probable. You must decide whether defendants have proven, by clear and convincing evidence, that claim 1 of the '805 patent is invalid by reason of anticipation and/or obviousness in light of the prior art and the ordinary skill of one in the art in 1998. I will explain these concepts to you further in a moment. If you find that claim 1 is valid, then you cannot find that the asserted dependent claims are invalid. If you find that claim 1 is invalid, you must decide whether defendants have met their clear and convincing burden of proof with respect to the dependent claims.

15

Those of you who are familiar with criminal cases will have heard the term "proof beyond a reasonable doubt."  That burden does not apply in a civil case and you, therefore, should put it out of your mind in considering whether or not plaintiffs have met their "more likely than not" burden of proof or defendants have met their "clear and convincing" burden of proof.

# THE PATENT CLAIMS

## PATENT CLAIMS GENERALLY

Before you can decide whether or not any of the asserted claims are infringed or invalid, you will have to understand what patent "claims" are. Patent claims are the numbered paragraphs at the end of a patent.

The purpose of the claims is to provide notice to the public of what a patent covers and does not cover. The claims are "word pictures" intended to define, in words, the boundaries of the invention described and illustrated in the patent.

Claims are usually divided into parts, called "limitations." For example, a claim that covers the invention of a table may recite the tabletop, four legs, and the glue that secures the legs to the tabletop. The tabletop, legs and glue are each a separate limitation of the claim. A claim covering the invention of a table is called a product or an apparatus claim. A claim describing the steps required to make a table is called a process or a method claim.

17

## PRODUCT BY PROCESS CLAIMS

A "product by process" claim is a type of claim that recites a product made by a particular process. Using our example, a claim describing a table made with "milled wood" requires that the table have a tabletop, legs and glue, and also requires that the tabletop and legs were made on a milling machine. A table having a tabletop, legs and glue that is made by hand-carving the wood would not meet all of the claim limitations.

Claim 1 of the '805 patent is a product by process claim. It recites a steel sheet that is prepared by a specific process. The process terms of the claim serve as limitations for purposes of determining infringement and validity.

18

## DEPENDENT AND INDEPENDENT CLAIMS

There are two different types of claims in a patent. The first type is called an "independent" claim. An independent claim does not refer to any other claim of the patent. An independent claim is read alone to determine its scope.

For example, claim 1 of the '805 patent is an independent claim. You know this because claim 1 does not refer to any other claims. Accordingly, the words of this claim are read by themselves in order to determine what the claim covers.

The second type, a "dependent" claim, refers to at least one other claim in the patent and, thus, incorporates whatever that other claim says. Accordingly, to determine what a dependent claim covers, you must read both the dependent claim and the claim or claims to which it refers.

For example, claim 2 of the '805 patent is a dependent claim. If you look at claim 2, it refers to claim 1. Therefore, to determine what claim 2 covers, you must consider both the words of claims 1 and 2 together.

19

## CLAIM CONSTRUCTION

It is my duty under the law to define what the patent claims mean and to instruct you about that meaning. You must accept the meanings I give you and use the meaning of each claim for your decision on infringement and validity.

You must ignore any different interpretation given to these terms by the witnesses or by attorneys.

I instruct you that "hot-rolled steel sheet coated with an aluminum or aluminum alloy coating" means "a steel sheet that has been reduced to its final thickness by hot-rolling and coated with an aluminum or aluminum alloy coating." The claims require that the steel sheet is coated after achieving its final thickness by hot-rolling.

I further instruct you that the phrase "the steel sheet has a very high mechanical resistance after thermal treatment" means that "the flat-rolled steel has been subjected, after rolling, to additional controlled heating and cooling and has an ultimate tensile strength of 1500 MPa or greater."

If I have not provided a specific definition for a given term, you are to use the ordinary meaning of that term.

20

## PATENT INFRINGEMENT

## OVERVIEW

A patent owner has the right to stop others from using the invention covered by its patent claims during the life of the patent. If any person makes, uses, sells (within the United States), offers to sell (from within the United States), or imports what is covered by the patent claims without the patent owner's permission, that person is said to infringe the patent.

In this case, plaintiffs allege that defendants' aluminum-coated, cold-rolled boron steel sheet directly infringes the asserted claims under the doctrine of equivalents. Plaintiffs also assert that defendants contribute to or induce the infringement of the '805 patent by others.

You must decide whether or not plaintiffs have proven, by a preponderance of the evidence, that defendants have made, used, sold (within the United States), or offered for sale (from within the United States) a product covered by any of the claims at issue in this case. If defendants infringe one claim of the '805 patent, then defendants infringe the '805 patent, even if, in good faith, defendants believed that they did not infringe. Except as specifically set forth in connection with the instruction relating to inducing infringement, defendants' knowledge or intent to infringe is not relevant, except as specifically set forth in the instruction relating to inducing infringement.

21

## DIRECT INFRINGEMENT

In order to prove direct infringement, plaintiffs must prove that each limitation of the asserted claims is present in the accused product. Infringement must be determined with respect to each asserted claim individually by comparing the elements of the accused product to each of that claim's limitations. If the accused product omits any single limitation recited in a given claim, then you must find that defendants have not infringed that claim. You must determine infringement with respect to each asserted claim and each accused product individually.

A claim limitation may be present in an accused product in one of two ways: either literally or under the "doctrine of equivalents." I will explain the doctrine of equivalents to you momentarily.

A claim limitation is literally present if it exists in the accused product or method just as it is described in the claim language, either as I have explained that language to you or, if I did not explain it, as you understand its ordinary meaning.

The parties agree that the accused products meet all of the limitations of independent claim 1 except the two limitations the court has construed on page 20 of these instructions. Under the court's claim construction, steel sheet that has been hot-rolled and cold-rolled prior to coating cannot literally infringe the asserted claims. Likewise, steel sheet having a mechanical resistance less than 1500 MPa cannot literally infringe the asserted claims. Therefore, plaintiffs must prove infringement of the '805 patent by proving that the accused products meet these limitations under the doctrine of equivalents.

Under the doctrine of equivalents, a product or method can infringe an asserted

22

claim if it includes parts that are identical or equivalent to the limitations of the claim. Under the patent law, an infringing equivalent is not treated any differently than a product or method that literally infringes the claim limitations of the patent. In order for a product to infringe a product by process claim under the doctrine of equivalents, it must be made by an equivalent process to the one recited in the claim. Process terms in product by process claims serve as limitations in determining infringement.

You may find that a claim limitation is present in an accused product under the doctrine of equivalents if a person having ordinary skill in the art would have considered the differences between that claim limitation and a comparable element to be "insubstantial" or would have found that the structure or step: (1) performs substantially the same function; and (2) works in substantially the same way (3) to achieve substantially the same result as the requirement of the claim. In order for the structure or step to be considered interchangeable, the structure or step must have been known at the time of the alleged infringement to a person having ordinary skill in the art. Interchangeability at the present time is not sufficient. In order to prove infringement by "equivalents," plaintiff must prove the equivalency of the structure or steps to a claim limitation by a preponderance of the evidence.

## INFRINGEMENT OF DEPENDENT CLAIMS

As I have explained to you, a verdict of infringement is appropriate so long as every claim limitation is present either literally or by the doctrine of equivalents.  For example, certain limitations of independent claim 1 are not literally present in the accused products, but you may find that the accused products meet the limitation under the doctrine of equivalents.  You must determine as well whether the additional limitations required by dependent claims 2, 5, 7 or 16 are literally present in an accused product.

24

## INDIRECT INFRINGEMENT – INDUCING PATENT INFRINGEMENT

In addition to direct infringement, there are two types of indirect infringement: inducing infringement and contributory infringement. Plaintiffs assert that defendants contribute to and/or induce the infringement of the asserted claims by supplying aluminum-coated, cold-rolled boron steel sheet to third parties. I will explain contributory infringement to you momentarily.

Defendants induce patent infringement if they purposefully cause, urge or encourage another to infringe a patent. Inducing infringement cannot occur unintentionally. This is different from direct infringement which, as I have told you, can occur unintentionally. In order to prove inducement, plaintiffs must prove that it is more probable than not that defendants knew of the '805 patent and encouraged or instructed third parties to use their aluminum-coated, cold-rolled boron steel sheet in an infringing manner. Plaintiffs must also prove that it is more probable than not that the third parties, in using the accused products, infringed the '805 patent.

To prove that defendants induced patent infringement, plaintiffs must prove four things by a preponderance of the evidence:

First, that defendants encouraged or instructed third parties to use aluminum-coated, cold-rolled boron steel sheet in a manner that you, the jury, find infringes the asserted claims.

Second, that defendants knew of the '805 patent.

Third, that defendants knew or should have known that their encouragement or instructions would likely result in third parties infringing the '805 patent, in other words, using the patented product. You have heard evidence about defendants' intent in this

25

regard, including evidence about opinions of counsel.  Keep in mind that these opinions are relevant only to the determination of intent to induce infringement.  Keep in mind as well that such opinions are not required, nor do they necessarily prove that a party did not intend to induce infringement.  You should consider all of the circumstances when determining a party's intent.

Fourth, that third parties in fact infringed the '805 patent.

You may find that defendants induced patent infringement only if you are persuaded that each of these four factors are met.

26

## INDIRECT INFRINGEMENT – CONTRIBUTORY INFRINGEMENT

Plaintiffs also assert that defendants' selling or supplying aluminum-coated, cold-rolled boron steel sheet is contributing to the infringement of the asserted claims.

Contributory infringement can occur when a supplier provides a part or a component to another for use in a patented method. In order to establish that defendants have contributorily infringed this claim, plaintiffs must prove five things by a preponderance of the evidence:

First, that defendants knew of the '805 patent.

Second, that defendants' aluminum-coated, cold-rolled boron steel sheet is a material component of the claimed invention and defendants sold or supplied that component. In other words, the aluminum-coated, cold-rolled boron steel sheet is especially made or adapted for use in a manner that infringes the patent.

Third, that defendants knew or intended that their aluminum-coated, cold-rolled boron steel sheet would be used in a manner infringing the '805 patent.

Fourth, that aluminum-coated, cold-rolled boron steel sheet is not a staple or commodity article, in other words, it has a substantial non-infringing use or, alternatively, a number of noninfringing uses. Providing a staple or commodity article is not contributory infringement.

Fifth, aluminum-coated, cold-rolled boron steel sheet was actually used in a manner that you, the jury, find infringes the asserted claims.

27

## VALIDITY

## INTRODUCTION

As I stated previously, defendants contend that the asserted claims are invalid.  I
will now explain to you each of the grounds for invalidity that were presented by
defendants at trial.  A party must meet its burden of proof on only one ground in order
to invalidate a claim.  In making your determination as to invalidity, you should consider
each claim separately.

## AFFIRMATIVE DEFENSE OF INVALIDITY GENERALLY

For a patent to be valid, the invention claimed in the patent must be new, useful and nonobvious. The terms "new," "useful" and "nonobvious" have special meanings under the patent laws. I will explain these terms to you as we discuss defendants' grounds for asserting invalidity.

Defendants have challenged the validity of the asserted claims on a number of grounds. Although the patent was granted by the Patent and Trademark Office, it is your job to determine whether or not the legal requirements for patentability were met; that is, it is your job to determine whether or not the patent is invalid.

I will now explain to you defendants' grounds for invalidity in detail. In making your determination as to invalidity, you should consider each claim separately.

## PRIOR ART

As I stated previously, under the patent laws, a person is granted a patent only if the invention claimed in the patent is new and not obvious in light of what came before. That which came before is referred to as the "prior art." Defendants must prove, by clear and convincing evidence, what constitutes the relevant prior art in this case. In order to do so, defendants must prove that the references they have relied upon were printed publications available anywhere in the world before July 9, 1998. The statutory phrase "printed publication" has been interpreted to mean that, before July 9, 1998, the reference must have been sufficiently accessible to the public interested in the art.

You must determine whether the '805 patent is invalid in view of the prior art and the ordinary skill in the art before July 9, 1998. The prior art relevant to each of defendant's claims will be listed for you in connection with the instructions relating to that claim.

## ANTICIPATION

### GENERALLY

In order for someone to be granted a patent, the invention must actually be "new." In general, inventions are new when they have not been made, used, or disclosed before. In this case, defendants contend that each of the asserted claims is not new as anticipated by the article titled "Heat Treated Boron Steels in the Automotive Industries" by Bano and Laurent (the "Bano/Laurent article") (DTX-6; DTX-17a).

Invalidity by anticipation requires the presence in a single prior art disclosure of all requirements, or limitations, of a claimed invention arranged as in the claim. For a claim to be anticipated, each claim limitation must be disclosed, either expressly or inherently, in a single prior art reference, and the claimed arrangement or combination of those limitations must also be disclosed, either expressly or inherently, in that same prior art reference.

If you find that the prior art includes all of the limitations in any of the asserted claims (all using "comprising"), the fact that it may also include additional elements is irrelevant. The presence of additional elements or components does not mean that the prior art does not invalidate a patent claim.

The requirement that the prior art limitations themselves be "arranged as in the claim" means that claims cannot be treated as mere catalogs of separate parts, in disregard of the part-to-part relationships set forth in the claims and that give the claims their meaning.

You should consider that which is expressly stated or present in the item of prior

31

art, and also that which is inherently present. Anticipation by inherent disclosure is appropriate only when the reference discloses prior art that must necessarily include the unstated limitation. Inherency may not be established by probabilities or possibilities. The mere fact that a certain thing may result from a given set of circumstances is not sufficient.

The description provided in the prior art must be such that a person of ordinary skill in the art in the field of invention could, based on the reference, practice the invention without undue experimentation.

To prevail on their defense of invalidity by anticipatory prior art, defendants must prove, by clear and convincing evidence, that the asserted claims of the '805 patent are anticipated by the Bano/Laurent article (DTX-6; DTX-17a).

## OBVIOUSNESS

Defendants also contend that the asserted claims are invalid as being obvious. In order to be patentable, an invention must not have been obvious to a person of ordinary skill in the art at the time the invention was made. This is because granting patent protection to advances that would occur in the ordinary course, without real innovation, retards progress and may deprive prior inventions of their value or utility.

In this case, defendants contend that the following references are prior art and that each of the asserted claims is obvious in view of these references. Remember that it is defendants' burden to prove by clear and convincing evidence that these references are prior art:

The Bano/Laurent article (DTX-6; DTX-17a) in combination with French Patent No. 1,297,906 (the "French '906 patent") (DTX-173t); or

The Bano/Laurent article (DTX-6; DTX-17a) in combination with the French '906 patent (DTX-173t) and the 1992 Ford Specification (DTX-532).

The issue is not whether the claimed invention would be obvious to you as a layman, to me as a judge, or to a genius in the art, but whether it would have been obvious to one of ordinary skill in the art at the time the invention was made.

In arriving at your decision on the issue of whether or not the asserted claims would have been obvious to a person of ordinary skill in the art and, therefore, are invalid, you should first determine the scope and content of the prior art. This means that you should determine what prior art was reasonably pertinent to the particular problems the inventor faced.

Prior art must be "analogous art" to be relevant to your consideration of

33

obviousness.  Analogous art may be art from the same field of endeavor.  If the reference is not within the field of the inventors' endeavor, it may still be considered if the reference is reasonably pertinent to the particular problem that the inventors faced.

You must next consider the differences, if any, between the prior art and each asserted claim.  Although it is proper for you to consider differences between the claimed invention and the prior art, you should not focus on only the differences, because the test is whether the claimed invention as a whole would have been obvious over all of the prior art.

Next, you are to determine the level of ordinary skill in the art to which the claimed invention pertained at the time the claimed invention was made.  Factors to be considered in determining the level of ordinary skill in the pertinent art include:

    (1)    The educational level of the inventor and of others working in the field;

    (2)    The types of problems encountered in the art at the time of the invention;

    (3)    The prior art patents and publications;

    (4)    The activities of others;

    (5)    Prior art solutions to the problems encountered by the inventor; and

    (6)    The sophistication of the technology.

A person of ordinary skill in the art is presumed to have knowledge of the relevant prior art at the time of the claimed invention.  If you find that the available prior art shows each of the limitations of the asserted claims, you must determine whether it then would have been obvious to a person of ordinary skill in the art to combine or coordinate these limitations in the same manner as the asserted claims.  This is often referred to as "motivation to combine."  Defendants must show that a person of ordinary

34

skill in the art would have had motivation to combine the prior art references in the same manner as the asserted claims and would have had a reasonable expectation of success in doing so.

A patent composed of several limitations is not proved obvious merely by demonstrating that each of its limitations was independently known in the prior art. You must determine whether a person of ordinary skill in the art has simply implemented a predictable variation of prior art elements or, conversely, whether he or she has made an improvement that is more than the predictable use of prior art elements according to their established functions. When there is a design need or market pressure to solve a problem and there are a finite number of identified, predictable solutions, a person of ordinary skill in the art has good reason to pursue the known options within his or her technical grasp. If this leads to the anticipated success, it is likely the product, not of innovation, but of ordinary skill and common sense. In that instance, the fact that a combination was obvious to try might show that it was obvious. Any need or problem known in the field of endeavor at the time of the invention and addressed by the patent can provide a reason for combining the elements in the manner claimed. A person of ordinary skill in the art, however, is also a person of ordinary creativity. In many cases, a person of ordinary skill in the art will be able to fit the teachings of multiple patents together like pieces of a puzzle. However, where the art is unpredictable, a focus on known elements may still present a difficult hurdle for one of skill in the art because the results of potential solutions may be unknown or unexpected.

In determining whether the asserted claims would have been obvious to a person of ordinary skill in the art and, therefore, are invalid, you should not apply any

rigid test or formula.  Rather, you should use your common sense to determine whether the claimed invention is truly innovative, or merely a combination of known limitations to achieve predictable results.

In your analysis, you must be aware of the distortion caused by hindsight bias, that is, of relying upon a hindsight combination of the prior art.  Rather, you must cast your mind back to the time of the invention and consider whether the invention as a whole would have been obvious to a person of ordinary skill in the art, taking into consideration any interrelated teachings of the prior art, the effects of demands known to the design community or present in the marketplace, and the background knowledge possessed by a person having ordinary skill in the art, all in order to determine whether there was an apparent reason to combine any known elements in the fashion claimed by the patents at issue.

To prevail on their defense of invalidity by obviousness to a person of ordinary skill in the art at the time the inventions of the patents in suit were made, defendants must prove, by clear and convincing evidence, that the asserted claims of the '805 patent were obvious in view of the prior art identified above.

## OBJECTIVE CRITERIA CONCERNING NON-OBVIOUSNESS

## (SECONDARY CONSIDERATIONS)

In making your decision **only** as to the obviousness or non-obviousness of the asserted claims, you should consider the objective evidence which may tend to show non-obviousness of the claims at issue, including the following:

(1)     Commercial success or lack of commercial success of products covered by the asserted claims;

(2)     A long-felt need in the art that was satisfied by the invention of the asserted claims;

(3)     The failure of others to make the invention;

(4)     Copying of the invention by others in the field;

(5)     Unexpected results achieved by the invention;

(6)     Praise of the invention by defendant or others in the field;

(7)     The taking of licenses under the patent by others;

(8)     Expressions of surprise or disbelief regarding the invention by those having ordinary skill in the art; and

(9)     Whether the inventor proceeded contrary to the accepted wisdom in the field.

In your determination of obviousness, then, you must consider whether plaintiffs have demonstrated not only that such secondary considerations exist, but also whether plaintiffs have proven that there is a sufficient nexus between the considerations and the claimed invention.  In other words, plaintiffs must show that the claimed inventions

37

of the '805 patent contributed to these secondary considerations, rather than the considerations being due to something else, such as other features of defendants' aluminum-coated, cold-rolled boron steel sheet, the general status of defendants as manufacturers, or any other actions taken by defendants in producing and marketing aluminum-coated, cold-rolled boron steel sheet.

For example, if commercial success is due to market position, advertising, promotion, salesmanship of the like, or is due to features of the products other than those described in the asserted claims, then any commercial success may have no relation to the issue of obviousness.

In this case, plaintiffs have the burden of proving any secondary consideration issues by a preponderance of the evidence. Should plaintiffs not meet this burden, you must make your obviousness determination based only on the scope and content of the prior art, any differences between the claimed invention and the prior art, and the level of ordinary skill in the art. Should plaintiffs demonstrate that there are secondary considerations of nonobviousness, these may also be considered. Ultimately, as I stated earlier, it is at all times defendants' burden to demonstrate obviousness by clear and convincing evidence.

38

## DELIBERATION AND VERDICT

### INTRODUCTION

Let me finish up by explaining some things about your deliberations in the jury room, and your possible verdicts.

Once you start deliberating, do not talk to the jury officer, or to me, or to anyone else except each other about the case. If you have any questions or messages, you must write them down on a piece of paper, sign them, and then give them to the jury officer. The officer will give them to me, and I will respond as soon as I can. I will have to talk to the lawyers about what you have asked, so it may take me some time to get back to you. Any questions or messages normally should be sent to me through your foreperson, who by custom of this Court is the juror seated in the first seat, first row.

One more thing about messages. Do not ever write down or tell anyone how you stand on your votes. For example, do not write down or tell anyone that you are split 4-4, or 6-2, or whatever your vote happens to be. That should stay secret until you are finished.

## UNANIMOUS VERDICT

Your verdict must represent the considered judgment of each juror. In order for you as a jury to return a verdict, it is necessary that each juror agree to the verdict. Your verdict must be unanimous.

It is your duty, as jurors, to consult with one another and to deliberate with a view towards reaching an agreement, if you can do so without violence to your individual judgment. Each of you must decide the case for yourself, but do so only after an impartial consideration of the evidence with your fellow jurors. In the course of your deliberations, do not hesitate to reexamine your own views and change your opinion, if convinced it is erroneous. But do not surrender your honest conviction as to the weight or effect of evidence solely because of the opinion of your fellow jurors, or for the purpose of returning a verdict. Remember at all times that you are judges – judges of the facts. Your sole interest is to seek the truth from the evidence in the case.

A form of verdict has been prepared for you. The verdict form asks you a series of questions about the parties' claims. Unless you are directed otherwise in the form of the verdict, you must answer all of the questions posed, and you all must agree on each answer. When you have reached a unanimous agreement as to your verdict, you will return your verdict to the courtroom deputy.

It is proper to add the caution that nothing said in these instructions and nothing in the form of verdict is meant to suggest or convey in any way or manner what verdict I think you should find. What the verdict shall be is the sole and exclusive duty and responsibility of the jury.

## DUTY TO DELIBERATE

Now that all the evidence is in and the arguments are completed, you are free to talk about the case in the jury room. In fact, it is your duty to talk with each other about the evidence and to make every reasonable effort you can to reach a unanimous agreement. Talk with each other, listen carefully and respectfully to each other's views and keep an open mind as you listen to what your fellow jurors have to say.

Try your best to work out your differences. Do not hesitate to change your mind if you are convinced that other jurors are right and your original position was wrong. But do not ever change your mind just because other jurors see things differently, or just to get the case over with. In the end, your vote must be exactly that – your own vote. It is important for you to reach unanimous agreement, but only if you can do so honestly and in good conscience.

If any member of the jury took notes, let me remind you that notes are not given any greater weight than the memory or impression of each juror as to what the testimony may have been. Whether you took notes or not, each of you must form and express your own opinion as to the facts of the case.

No one will be allowed to hear your discussions in the jury room, and no record will be made of what you say. So you should all feel free to speak your minds.

Listen carefully to what the other jurors have to say, and then decide for yourself.

We generally end our business day at 4:30 p.m. If we do not hear from you by 4:30, I will be sending you a note to see whether you are close enough to a verdict to want to deliberate after 4:30 or whether you are going to recess for the evening and resume your deliberations on the next business day. You will need to respond in writing

41

to that question.

I am going to remind you now, if you go home this evening and resume your deliberations on the next business day, you are not to talk about the case among yourselves or with anyone else during the evening recess. You may not read or listen to any news about the case in a newspaper, online or on television during the evening recess.

You may talk about the case only while you are in the jury room and everyone on the jury is present. Unless I hear from you that you have a different schedule in mind, I will expect you all to come back the next business day at 9:30. You are not to start deliberating until you are all present in the jury room and participating together.

Because the lawyers have to make themselves available to respond to questions or receive the verdict, I generally give them between 12:30 and 1:30 to step away from the phone. So whenever you are deliberating over the lunch hour, let me remind you, if you ask a question during this time, you probably will not get an answer right away because we are all going to be stepping away from our phones.

42

## COURT HAS NO OPINION

Let me finish up by repeating something that I said to you earlier.  Nothing that I have said or done during this trial was meant to influence your decision in any way. You must decide the case yourselves based on the evidence presented.

Finally, if I have read any of these instructions inconsistently with the written text, you are to rely on the written instructions in your deliberations.