## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| ARCELORMITTAL FRANCE and ARCELORMITTAL ATLANTIQUE ET LORRAINE, | ) ) ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | ) Civ. No. 10-050-SLR |
| | ) |
| AK STEEL CORPORATION, SEVERSTAL DEARBORN, LLC, and WHEELING-NISSHIN, INC., | ) ) ) |
| | ) |
| Defendants. | ) |

Jeffrey B. Bove, Esquire of Novak Druce Connolly Bove + Quigg LLP, Wilmington, Delaware. Counsel for Plaintiffs. Of Counsel: David T. Pritikin, Esquire, Hugh A. Abrams, Esquire of Sidley Austin LLP.

Adam W. Poff, Esquire and Monté T. Squire, Esquire of Young Conaway Stargatt & Taylor, LLP, Wilmington, Delaware. Counsel for Defendant AK Steel Corporation. Of Counsel: Roderick R. McKelvie, Esquire, Christopher N. Sipes, Esquire, and Jeffrey H. Lerner, Esquire of Covington & Burling LLP.

Steven J. Balick, Esquire and Tiffany Geyer Lydon, Esquire of Ashby & Geddes, Wilmington, Delaware. Counsel for Defendants Severstal Dearborn, Inc. and Wheeling-Nisshin Inc. Of Counsel: David J. Simonelli, Esquire and Richard W. Hoffman, Esquire of Reising Ethington, P.C.

## MEMORANDUM OPINION

Dated: October 25, 2013
Wilmington, Delaware

ROBINSON, District Judge

## I. INTRODUCTION

This case has a convoluted history, one that illustrates the collision between the administrative and judicial remedies available to a patent owner. There are two patents at issue - U.S. Patent No. 6,296,805 ("the '805 patent")[1] and U.S. Patent No. RE44,153 E ("the RE153 patent")[2] - and two prior proceedings at loggerheads - the judicial proceeding, which resulted in a mandate issued by the United States Court of Appeals for the Federal Circuit after a jury trial in the above captioned litigation,[3] and the administrative proceeding, which resulted in the issuance by the Patent & Trademark Office ("the PTO") of the RE153 patent.[4] Although not the initial focus of the motion practice in this litigation,[5] the court must resolve the fundamental dilemma of how to reconcile the Federal Circuit's claim construction of the limitation "the steel sheet has a

---

[1]The '805 patent issued on October 2, 2001.

[2]The RE153 patent issued on April 16, 2013.

[3]*ArcelorMittal France v. AK Steel Corp.*, 700 F.3d 1314 (Fed. Cir. 2012), with the mandate issuing on March 27, 2013. (D.I. 264) Plaintiffs are ArcelorMittal France and ArcelorMittal Atlantique et Lorraine (collectively, "ArcelorMittal"). Defendants are AK Steel Corporation ("AK Steel"), Severstal Dearborn, Inc. ("Severstal"), and Wheeling-Nisshin Inc. ("Wheeling-Nisshin") (collectively, "defendants").

[4]ArcelorMittal filed its application for reissue of the '805 patent on August 8, 2011, months after the jury's verdict in this litigation and nearly ten years after the '805 patent issued in October 2001.

[5]On April 16, 2013, ArcelorMittal filed two new lawsuits against defendants, asserting infringement of the RE153 patent. *ArcelorMittal France, et al. v. AK Steel Corp.*, Civ. No. 13-685-SLR, and *ArcelorMittal France, et al. v. Severstal Dearborn, LLC and Wheeling-Nisshin, Inc.*, Civ. No. 13-686-SLR. Defendants have filed motions to dismiss in both of these cases, in which they specifically assert that the RE153 patent is invalid as a matter of law pursuant to 35 U.S.C. § 251(d). (Civ. No. 13-685, D.I. 5; Civ. No. 13-686, D.I. 8)

very high mechanical resistance" ("the limitation at issue") with the PTO's subsequent decision to reissue the '805 patent with new dependent claim 23, which effectively broadens the scope of the RE153 patent.

Pending before the court are defendants' motions for summary judgment of "noninfringement implementing the mandate on remand" (D.I. 279, 281), with related briefing on ArcelorMittal's claim construction of the limitation at issue. For the reasons that follow, the court will grant the pending motions.

## II. BACKGROUND

The Federal Circuit affirmed the construction of the limitation at issue, which goes to the heart of this dispute: "Accordingly, both the intrinsic evidence and extrinsic evidence support the district court's conclusion that 'a very high mechanical resistance' means a mechanical resistance of 1500 MPa or greater." 700 F.3d at 1322. Subsequent to the Federal Circuit's decision, the PTO allowed the issuance of dependent claim 23 of the RE153 patent: "The coated steel sheet of claim 1, wherein said mechanical resistance is in excess of 1000 MPa." (RE153 patent, col. 6:50-51) Claim 1 of the RE153 patent was not amended during the reissue process, disclosing a "hot-rolled coated steel sheet" having "a very high mechanical resistance after thermal treatment." In other words, claim 1 of the RE153 patent includes the same claim limitations as claim 1 of the '805 patent, which limitations have already been construed by the Federal Circuit.

## III. STANDARD OF REVIEW

### A. Summary Judgment

2

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the burden of demonstrating the absence of a genuine issue of material fact. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 415 U.S. 574, 586 n. 10 (1986). A party asserting that a fact cannot be—or, alternatively, is—genuinely disputed must be supported either by citing to "particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for the purposes of the motions only), admissions, interrogatory answers, or other materials," or by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(A) & (B). If the moving party has carried its burden, the nonmovant must then "come forward with specific facts showing that there is a genuine issue for trial." *Matsushita*, 415 U.S. at 587 (internal quotation marks omitted). The Court will "draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000).

To defeat a motion for summary judgment, the non-moving party must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586–87; *see also Podohnik v. U.S. Postal Service*, 409 F.3d 584, 594 (3d Cir. 2005) (stating party opposing summary judgment "must present more than just bare assertions, conclusory allegations or suspicions to show the existence of a genuine issue") (internal quotation marks omitted). Although the "mere existence of

3

some alleged factual dispute between the parties will not defeat an otherwise properly

supported motion for summary judgment," a factual dispute is genuine where "the

evidence is such that a reasonable jury could return a verdict for the nonmoving party."

*Anderson v. Liberty Lobby, Inc.*, 411 U.S. 242, 247–48 (1986). "If the evidence is

merely colorable, or is not significantly probative, summary judgment may be granted."

*Id.* at 249–50 (internal citations omitted); *see also Celotex Corp. v. Catrett*, 411 U.S.

317, 322 (1986) (stating entry of summary judgment is mandated "against a party who

fails to make a showing sufficient to establish the existence of an element essential to

that party's case, and on which that party will bear the burden of proof at trial").

### B. Reissue

As provided under 35 U.S.C. § 251,

(a) Whenever any patent is, through error without any deceptive intention, deemed wholly or partly inoperative or invalid, by reason of a defective specification or drawing, or by reason of the patentee claiming more or less that he had a right to claim in the patent, the Director shall, on the surrender of such patent and the payment of the fee required by law, reissue the patent for the invention disclosed in the original patent, and in accordance with a new and amended application, for the unexpired part of the term of the original patent. No new matter shall be introduced into the application for reissue. . . .

(d) **No reissued patent shall be granted enlarging the scope of the claims of the original patent unless applied for within two years from the grant of the original patent.**

35 U.S.C. § 251(a) and (d) (emphasis added).

Once a reissue patent has issued, "[t]he surrender of the original patent" takes

effect. To the extent the claims of the reissue patent are "substantially identical" with

the claims of the original patent, the surrender of the original patent "shall not affect any

4

action then pending nor abate any cause of action then existing." 35 U.S.C. § 252.

However, failure to comply with any requirement of § 251 can result in a finding of

invalidity of a patent or any claim in suit. 35 U.S.C. § 282 (b)(3)(B).

According to the Manual of Patent Examining Procedure ("MPEP"), a dependent

claim is a claim "referring back to and further limiting another claim or claims in the

same application. . . Claims in dependent form shall be construed to include all the

limitations of the claim incorporated by reference into the dependent claim." MPEP

608.01(i). With respect to reissue patents,

> [a] broadened reissue claim is a claim which enlarges the scope of the
> claims of the patent, *i.e.*, a claim which is greater in scope than each and
> every claim of the original patent. . . .
>
> A claim in the reissue which includes subject matter not covered by the
> patent claims enlarges the scope of the patent claims. For example, if any
> amended or newly added claim in the reissue contains within its scope any
> conceivable product or process which would not have infringed the patent,
> then that reissue claim would be broader than the patent claims. . . . A claim
> which covers something that the original claims do not is a broadened claim.
> A claim would be considered a broadening claim if the patent owner would
> be able to sue any party for infringement who previously could not have been
> sued for infringement.

MPEP 1412.03 I.

## IV. ANALYSIS

Defendants[6] argue that "it would be appropriate not only to enter judgment of

non-infringement . . ., but to find as well that the broadened claims of the reissue patent

. . . are invalid under Section 251(d)." (D.I. 282 at 16) ArcelorMittal concedes (by not

---

[6]Although this argument is found in the opening brief in support of AK Steel's
motion for summary judgment, the court understands that Severstal and Wheeling-
Nisshin join said argument.

addressing) the fact that the trial record has no evidence of past infringement of claim 1 of the '805 patent as construed by the Federal Circuit. (D.I. 283) Instead, ArcelorMittal argues that the case is now governed by the RE153 patent, and that "[t]he allowance of new dependent claim 23 means that independent claim 1 is correctly understood to be broad enough to cover steel having a UTS of greater than 1,000 MPa." (D.I. 278 at 4) Indeed, ArcelorMittal contends that the court would be "justified in undertaking a reevaluation of the original claim construction in light of" the reissue prosecution history which provides "important new intrinsic evidence, which differs materially from the evidence of record when the claim construction was first decided." (D.I. 278 at 6) If given the opportunity on remand, ArcelorMittal would reopen the record to permit discovery of new acts of infringement, and would retry the issue of infringement based on a new claim construction for claim 1 of the RE153 patent. (D.I. 283)

It is well established that the "question of claim scope before and after [reissue] is a matter of claim construction." *Anderson v. Int'l Eng'g and Manf'g, Inc.,* 160 F.3d 1345, 1349 (Fed. Cir. 1998). Claim construction is a legal exercise, with the Federal Circuit being (for all intents and purposes) the final arbiter of such. The Federal Circuit has construed the claims of the '805 patent and, given the issuance of the RE155 patent and concomitant surrender of the '805, has done so finally. According to the Federal Circuit, the limitation at issue - "the steel sheet has a very high mechanical resistance" - has been construed narrowly to mean "a mechanical resistance of **1500 MPa or greater**." *ArcelorMittal*, 700 F.3d at 1322 (emphasis added). Dependent claim 23 of the RE153 patent discloses a broader limitation, that is, "a mechanical resistance

6

[that] is **in excess of 1000 MPa**." (Col. 6:50-51) (emphasis added)

Courts that have addressed these circumstances have rejected ArcelorMittal's approach; that is, these courts have **not** construed the claims of the original patent in light of the reissue patent. For example, in concluding that a reissue claim enlarged the scope of the claims of the original patent, the Federal Circuit in *Brady Const. Innovations, Inc. v. Perfect Wall, Inc.*, 290 F. App'x 358 (Fed. Cir. 2008), held that "the accused products did not infringe the claims of the original patent as construed by this court [on appeal]. . . . Under the principles of stare decisis and the Supreme Court's guidance in *Markman*, this court follows the claim construction of prior panels absent exceptional circumstances." *Id.* at 363. In *Total Containment, Inc. v. Environ Products, Inc.,* 106 F.3d 427, 1997 WL 16032 (Fed. Cir. Jan. 17, 1997) (unpublished), the Federal Circuit affirmed the decision of the district court[7] to construe the original claims without reference to claims added during reexamination. More specifically, the Federal Circuit concluded that the patent holder could not

> invoke the doctrine of claim differentiation by relying on a claim added
> during reexamination to interpret language in one of the original claims
> in a way that would broaden the reach of that claim. To permit the use
> of claims added during reexamination for that purpose would invite
> manipulation of the reexamination process and would not be a reliable
> guide to the meaning of language used in the original claims.

1997 WL 16032, at *2.

"A claim of a reissue application is broader in scope than the original claims if it contains within its scope any conceivable apparatus or process which would not have

---

[7] *See Total Containment, Inc. v. Environ Products, Inc.*, 921 F. Supp. 1355, 1385-86 (E.D. Pa. 1995).

infringed the original patent." *Tillotson, Ltd. v. Walbro Corp.,* 831 F.2d 1033, 1037 n.2

(Fed. Cir. 1987); *see also Quantum Corp. v. Rodime, PLC,* 65 F.3d 1577, 1580 (Fed.

Cir. 1995) (in the context of reexamined claims, an "amended or new claim has been

enlarged if it includes within its scope any subject matter that would not have infringed

the original patent.").[8]  As conceded by ArcelorMittal, the accused products did not meet

the limitation at issue, as construed by the Federal Circuit.[9]  Therefore, new dependent

claim 23 of the RE153 patent (which includes subject matter not covered by the original

claim 1, i.e., coated steel sheet having a mechanical resistance of between 1,000 and

1500 MPa) necessarily broadens the scope of claim 1.

     In sum, the court declines to start its analysis, as does ArcelorMittal, with the

RE153 patent and work backwards as if on a clean slate, in order to justify expanding

the scope of claim 1 to accommodate the scope of new dependent claim 23.  The court

concludes, instead, that it is obligated, under § 251 and the case law arising

thereunder, to compare the scope of the original claim 1 (as construed by the Federal

_____

[8]Although this analysis involves the scope of claims after reexamination, the
statutory framework relating to reissue proceedings is analogous. *See generally
Quantum*, 65 F.3d at 1583 ("[D]espite that fact that the prohibition in section 251
against enlarging the scope of claims in reissue applications is analogous to the
prohibition in section 305 regarding broadening during reexamination, section 282 does
not specifically mention section 305 as an invalidity defense in a patent infringement
suit."). As further noted by the Federal Circuit in *Quantum*, "[t]he only difference
between the prohibitions against broadening in section 251 and section 305 is that
**reissued** patent claims can not be broadened more than two years after issuance of
the original patent, whereas claims in a **reexamined** patent can never be broadened."
*Id.* at 1583 n.7.

[9]The court notes that, although ArcelorMittal now claims that some of
defendants' products may infringe claim 1 of the '805 patent as construed by the
Federal Circuit, this issue of fact was not presented to the jury at the original trial and is
not part of the record at bar.

Circuit) to the reissued claim 1 (as it must be construed to accommodate new

dependent claim 23). That exercise leads inexorably to the determination that, rather

than "further limiting" claim 1, dependent claim 23 broadens the scope of claim 1 in

contravention of § 251.

Of course, finding a broadened reissue claim is only the first step of the analysis.

The court needs to determine

> the consequences of such a broadening[.] Are the claims
> entirely invalid, or is invalidity limited only to the broadened aspects of
> the claims, so that the original scope of the claims remains available to
> the patentee?

65 F.3d at 1582-83. ArcelorMittal argues in this regard that, if the RE153 patent is

deemed broader in scope than the '805 patent, the most equitable remedy is to find

only dependent claim 23 invalid, leaving the remainder of the RE153 patent available

for ArcelorMittal's beneficial use. Defendants argue claims 1-23 are invalid as

broadened, leaving only dependent claims 24 and 25 as valid claims.

In its decision in *Quantum*, the Federal Circuit observed that,

> [a]s with violations of other statutes in the Patent Act, claims that do not
> comply with section 305 cannot stand. Rodime agrees, but maintains
> that the proper recourse is for this court to exercise its inherent equitable
> powers by restricting the scope of the claims to their original terms,
> avoiding a holding of infringement against any devices that would not
> have been covered by any of the original claims as they existed prior
> to reexamination. We disagree. Although we construe claims, if
> possible, so as to sustain their validity, it is well settled that no
> matter how great the temptations of fairness or policy making, courts
> do not redraft claims. Moreover, even if we could consider
> equities, they do not favor Rodime; they broadened their claims during
> reexamination despite the explicit prohibition against doing so in section
> 305.
>
>    Likewise, the district court cannot remand the case to the PTO to
> have the broadening language deleted from the claims. To

9

> conclude otherwise would discourage instead of encourage compliance
> with section 305. If the only penalty for violating section 305 is a
> remand to the PTO to have the reexamined claims narrowed to be
> commensurate in scope with what the applicant was only entitled to
> in the first place, then applicants will have an incentive to attempt to
> broaden their claims during reexmaination, and, if successful, be
> able to enforce these broadened claims against their competitors.
> This result essentially renders the prohibition in section 305
> meaningless. The likelihood that improperly broadened claims
> will be held invalid will discourage applicants from attempting to
> broaden their claims during reexamination.

65 F.3d at 1584 (citations omitted).

Having given this matter considerable thought, the court concludes that the

mandate of the Federal Circuit has been insolubly devitalized by the reissue process.

The patent at issue before the Federal Circuit (the '805 patent) has been surrendered

and, as stated by ArcelorMittal, "once the original patent is surrendered, there is simply

no going back." (D.I. 278 at 5, quoting *Schreiber v. Eli Lilly*, No. 05-CV-2616, 2007 U.S.

Dist. LEXIS 40884, at \*13 (E.D. Pa. Mar. 19, 2007)). With "[t]he only patent at issue in

this case [being] the RE153 patent" (D.I. 278 at 5), and with said patent having been

improperly broadened in violation of § 251(d), the court declines to exercise its inherent

equitable powers to resurrect the original scope of the '805 patent as requested by

ArcelorMittal.[10]

There can be no doubt that ArcelorMittal pursued its reissue patent as an

intentional strategy to avoid the consequences of this court's narrow claim construction,

with the ultimate goal of capturing more acts of infringement under the broadening

scope of new dependent claim 23 of the RE153 patent. Although such a strategy would

---

[10]Especially given ArcelorMittal's inconsistent requests to reconstrue claim 1 in
light of the reissue proceedings and to reopen the record for purposes of discovery.

have been perfectly legitimate if pursued within two years from the grant of the '805

patent, the court concludes that ArcelorMittal's post-trial strategy offends the

fundamental purpose § 251, that is, repose.[11]

## IV. CONCLUSION

For the reasons stated, defendants' motions for summary judgment are granted

based on the court's invalidating the RE153 patent as violative of 35 U.S.C. §

251(d).[12,13]

An order shall issue.

---

[11]*See In re Youman*, 679 F.3d 1335, 1342 (Fed. Cir. 2012) ("[A]fter the two year period, the public can definitively rely on the scope of the patent claims.").

[12]"It is axiomatic that one cannot infringe an invalid patent." *Commil USA, LLC v. Cisco Systems, Inc.,* 720 F.3d 1361, 1368 (Fed. Cir. 2013).

[13]ArcelorMittal's motion for leave to file an amended complaint (D.I. 269) is moot.

11