# UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT

## NOTICE OF ENTRY OF
## JUDGMENT ACCOMPANIED BY OPINION

OPINION FILED AND JUDGMENT ENTERED: 05/12/2015

The attached opinion announcing the judgment of the court in your case was filed and judgment was entered on the date indicated above. The mandate will be issued in due course.

Information is also provided about petitions for rehearing and suggestions for rehearing en banc. The questions and answers are those frequently asked and answered by the Clerk's Office.

No costs were taxed in this appeal.

Regarding exhibits and visual aids: Your attention is directed Fed. R. App. P. 34(g) which states that the clerk may destroy or dispose of the exhibits if counsel does not reclaim them within a reasonable time after the clerk gives notice to remove them. (The clerk deems a reasonable time to be 15 days from the date the final mandate is issued.)

FOR THE COURT

/s/ Daniel E. O'Toole
Daniel E. O'Toole
Clerk of Court


cc: Jeffrey B. Bove
Benjamin Michael Flowers
Richard William Hoffmann
Jeffrey Howard Lerner
Tiffany Geyer Lydon
Roderick R. McKelvie
David T. Pritikin
David J. Simonelli
Christopher Neil Sipes
Rachel Heather Townsend
Constantine L. Trela Jr.

14-1189 - ArcelorMittal France v. AK Steel Corporation
United States District Court for the District of Delaware, Case No. 1:10-cv-00050-SLR

# United States Court of Appeals for the Federal Circuit

_____

**ARCELORMITTAL FRANCE, ARCELORMITTAL ATLANTIQUE ET LORRAINE, ARCELORMITTAL USA LLC,**
*Plaintiffs-Appellants*

v.

**AK STEEL CORPORATION, SEVERSTAL DEARBORN, INC., WHEELING-NISSHIN INC.,**
*Defendants-Appellees*

_____

2014-1189

_____

Appeal from the United States District Court for the District of Delaware in No. 1:10-CV-00050, Judge Sue L. Robinson.

-------------------------------------------------------------

**ARCELORMITTAL FRANCE, ARCELORMITTAL ATLANTIQUE ET LORRAINE, ARCELORMITTAL USA LLC,**
*Plaintiffs-Appellants*

v.

**AK STEEL CORPORATION,**
*Defendant-Appellee*

_____

2014-1190

---

Appeal from the United States District Court for the District of Delaware in No. 1:13-CV-00685, Judge Sue L. Robinson.

---

**ARCELORMITTAL FRANCE, ARCELORMITTAL ATLANTIQUE ET LORRAINE, ARCELORMITTAL USA LLC,**
*Plaintiffs-Appellants*

v.

**SEVERSTAL DEARBORN LLC, WHEELING-NISSHIN INC.,**
*Defendants-Appellees*

---

2014-1191

---

Appeal from the United States District Court for the District of Delaware in No. 1:13-CV-00686, Judge Sue L. Robinson.

---

Decided: May 12, 2015

---

CONSTANTINE L. TRELA, JR., Sidley Austin LLP, Chicago, IL, argued for plaintiffs-appellants. Also represented by DAVID T. PRITIKIN; RACHEL HEATHER TOWNSEND, Washington, DC; JEFFREY B. BOVE, Wilmington, DE.

CHRISTOPHER NEIL SIPES, Covington & Burling LLP, Washington, DC, argued for defendants-appellees. Defendant-appellee AK Steel Corporation also represented by JEFFREY HOWARD LERNER, RODERICK R. MCKELVIE. Defendants-appellees Severstal Dearborn, Inc., Wheeling-Nisshin Inc. represented by RICHARD WILLIAM HOFFMANN, DAVID J. SIMONELLI, Reising Ethington PC, Troy, MI.

---

Before DYK, WALLACH, and HUGHES, *Circuit Judges*.

HUGHES, *Circuit Judge*.

ArcelorMittal appeals from the decisions of the United States District Court for the District of Delaware granting summary judgment that U.S. Patent No. RE44,153E (the RE153 patent) is invalid because certain claims were broadened after two years of issuance in violation of 35 U.S.C. § 251.[1] Because the district court was bound by our construction of the original claims and the reissue claims broadened that construction, we affirm the district court's finding that claims 1 through 23 of the RE153 patent are invalid under § 251. However, because newly added claims 24 and 25 were not broadened during reissue, we reverse-in-part and remand for further proceedings.

I

The RE153 patent is a reissue of U.S. Patent No. 6,296,805 (the '805 patent), which we previously reviewed in *ArcelorMittal France v. AK Steel Corp.*, 700 F.3d 1314 (Fed. Cir. 2012) (*ArcelorMittal I*). The '805 and RE153

---

[1] This case is governed by the statutory provisions in effect before the Leahy-Smith America Invents Act, Pub. L. No. 112-29, 125 Stat. 284 (2011), because Appellants filed the RE153 patent before March 16, 2013.

patents share a specification and have identical lone independent claims directed toward a specific type of steel sheet that has "a very high mechanical resistance" after thermal treatment. *See* '805 patent col. 4. l. 64–col. 5 l. 15; RE153 patent col. 5 ll. 8–25.

On January 22, 2010, ArcelorMittal filed suit against AK Steel Corp., Severstal Dearborn, Inc., and Wheeling-Nisshin Inc., alleging infringement of the '805 patent. The district court construed the phrase "a very high mechanical resistance" as limited to steel with a tensile strength greater than 1500 MPa. *ArcelorMittal France v. AK Steel Corp.*, 755 F. Supp. 2d 542, 549 (D. Del. 2010). After a jury found the '805 patent not infringed and invalid as anticipated and obvious, ArcelorMittal appealed. On appeal, we affirmed the district court's construction of "a very high mechanical resistance," but reversed and remanded on other grounds. *ArcelorMittal I*, 700 F.3d at 1321–23, 1326.

While its first appeal was pending, ArcelorMittal prosecuted an application for reissue of the '805 patent to correct the district court's construction of "very high mechanical resistance." This application issued on April 16, 2013 as the RE153 patent and added a number of dependent claims, including: claim 23, which recites "[t]he coated steel sheet of claim 1, wherein said mechanical resistance is in excess of 1000 MPa"; claim 24, which confines claim 1 to the construction we affirmed in *ArcelorMittal I* by claiming "[t]he coated steel sheet of claim 1, wherein said mechanical resistance is in excess of 1500 MPa"; and claim 25, which depends on and further limits claim 24. RE153 patent col. 6 ll. 50–55.

On remand, ArcelorMittal amended its complaint to substitute the now-surrendered '805 patent for the RE153 patent (the Remand Action). ArcelorMittal also filed new suits for patent infringement against AK Steel (the 685

Action) and Severstal Dearborn and Wheeling-Nisshin (the 686 Action), alleging new acts of infringement of the RE153 patent.[2] Appellees moved for summary judgment in the Remand Action, arguing claims 1 through 23 of the RE153 patent were invalid because they were impermissibly broadened in the reissue proceedings. The district court granted the motion and applied its ruling across all three actions, invalidating claims 1 through 23 of the RE153 patent and sua sponte invalidating claims 24 and 25. ArcelorMittal appeals. We have jurisdiction under 28 U.S.C. § 1295(a)(1).

## II

We review the grant or denial of summary judgment under the law of the regional circuit. *Microstrategy, Inc. v. Bus. Objects, S.A.*, 429 F.3d 1344, 1349 (Fed. Cir. 2005). The Third Circuit reviews the grant or denial of summary judgment de novo. *Facenda v. N.F.L. Films, Inc.*, 542 F.3d 1007, 1013 (3d Cir. 2008). Whether amendments made during reissue enlarge the scope of the claim, and therefore violate § 251, is a matter of claim construction, which we review de novo, while giving deference to subsidiary factual determinations. *Teva Pharm. USA, Inc. v. Sandoz, Inc.*, 135 S.Ct. 831, 840–41 (2015); *see also N. Am. Container, Inc. v. Plastipak Packaging, Inc.*, 415 F.3d 1335, 1349 (Fed. Cir. 2005).

On appeal, ArcelorMittal argues the RE153 claims are no broader than the original '805 claims because the

---

[2] These cases are: *ArcelorMittal France, ArcelorMittal Atlantique et Lorraine, and ArcelorMittal USA LLC v. AK Steel Corp.*, Civ. No. 1:13-CV-00685 (D. Del), and *ArcelorMittal France, ArcelorMittal Atlantique et Lorraine, and ArcelorMittal USA LLC v. Severstal Dearborn LLC and Wheeling-Nisshin*, Civ. No. 1:13-CV-00686 (D. Del).

successful prosecution of the RE153 patent demonstrates the Patent Office's belief that the term "very high mechanical resistance" in the '805 patent was broader than we had construed it to be. ArcelorMittal also argues the district court erred by invalidating all claims of the RE153 patent, including those that were not broadened.

Because the law-of-the-case doctrine prohibited the district court from revisiting the construction of "very high mechanical resistance" in the '805 patent, we agree that claims 1 through 23 were impermissibly broadened in violation of § 251. But we find that the district court erred by invalidating claims 24 and 25, which were not broadened. Accordingly, we affirm-in-part, reverse-in-part, and remand for further proceedings.

A

The law-of-the-case doctrine "posits that when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case." *Banks v. U.S.*, 741 F.3d 1268, 1276 (Fed. Cir. 2014) (quoting *Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 815–16 (1988)) (internal quotation marks omitted). "The mandate rule, encompassed by the broader law-of-the-case doctrine, dictates that 'an inferior court has no power or authority to deviate from the mandate issued by an appellate court.'" *Id.* (quoting *Briggs v. Pa. R. Co.*, 334 U.S. 304, 306 (1948)); *see also Bankers Trust Co. v. Bethlehem Steel Corp.*, 761 F.2d 943, 949 (3d Cir. 1985).

Under the mandate rule and the broader law-of-the-case doctrine, a court may only deviate from a decision in a prior appeal if "extraordinary circumstances" exist. *Pub. Interest Research Grp. v. Magnesium Elektron*, 123 F.3d 111, 116 (3d Cir. 1997). But "such departures are rare." *Toro Co. v. White Consol. Indus., Inc.*, 383 F.3d 1326, 1336 (Fed. Cir. 2004) (citations omitted). Arce-

lorMittal argues that the Patent Office's reissue of the RE153 patent is "new evidence" sufficient to constitute "extraordinary circumstances" to deviate from our clear mandate and construction of "very high mechanical resistance" in claim 1.

The "new evidence" exception permits courts to reconsider a previously decided issue in limited circumstances. "This exception . . . makes sense because when the record contains new evidence, 'the question has not really been decided earlier and is posed for the first time.'" *Hamilton v. Leavy*, 322 F.3d 776, 787 (3d Cir. 2003) (quoting *Bridge v. U.S. Parole Comm'n*, 981 F.2d 97, 103 (3d Cir. 1992)). "But this is so only if the new evidence differs materially from the evidence of record when the issue was first decided and if it provides less support for that decision." *Id.* That is not the case here.

The successful prosecution of the RE153 patent is not "new evidence" sufficient to trigger the extraordinary circumstances exception to the mandate rule and the law-of-the-case doctrine. Permitting a reissue patent to disturb a previous claim construction of the original claims would turn the validity analysis under 35 U.S.C. § 251 on its head. The basic inquiry under § 251 requires comparing the scope of the claims of the reissue patent to the scope of the original claims to determine if the reissue patent "contains within its scope any conceivable apparatus or process which would not have infringed the original patent." *Tillotson, Ltd. v. Walbro Corp.*, 831 F.2d 1033, 1037 n.2, 1039 (Fed. Cir. 1987). If the reissue claim itself could be used to redefine the scope of the original claim, this comparison would be meaningless.

Moreover, we have soundly rejected ArcelorMittal's argument in the similar context of determining whether a reexamined patent was improperly broadened during prosecution. *See Anderson v. Int'l Eng'g & Mfg, Inc.*, 160

F.3d 1345, 1349 (Fed. Cir. 1998); *see also* 35 U.S.C. § 305. In *Anderson*, we rejected the argument that changes to a claim during reexamination "simply clarified the scope of the claim as originally granted" and that "the claims have always encompassed" the broader meaning that resulted from the reexamination. *Anderson*, 160 F.3d at 1349. In doing so, we explained that "[t]he ultimate question of construction is not whether [the original] specification could have supported claims of the scope he now attributes to original claim 1 [i.e., the scope of the reissue claim]—although that would be a factor in determining the correct claim construction. The question is whether, objectively viewed, the original claims were, in fact and law, generic [i.e., as broad] as Anderson asserts." *Id*. Thus, the dispositive question is whether the original claim has the meaning sought by ArcelorMittal for the reissue claims—not what the original claim means in light of the reissue claims. *See id*. at 1347. And we have already determined the proper scope of claim 1 of the '805 patent in *ArcelorMittal I*.

Under certain circumstances, the prosecution history of reissue or reexamination proceedings may be relevant to determine the scope of an original claim. *See, e.g.*, *Howes v. Med. Components, Inc.*, 814 F.2d 638, 645 (Fed. Cir. 1987) (finding that disclaimers made during a copending reissue prosecution to overcome prior art rejections were relevant to narrow the interpretation of a disputed term for infringement purposes); *E.I. Du Pont de Nemours & Co. v. Phillips Petroleum Co.*, 849 F.2d 1430, 1439 (Fed. Cir. 1988). But we have never found that such reissue prosecution history is relevant to whether an applicant broadened the scope of an original claim in the § 251 analysis. Nor could we, since such a finding would run contrary to the plain language and purpose of § 251.

Moreover, the prosecution history of a reissue claim can certainly be relevant to determine the scope of the

reissue claim, and it is entirely possible that the prosecution history includes disavowals of claim scope that could preserve the reissue claim in the face of an apparent broadening. *See, e.g.*, *Tillotson*, 831 F.2d at 1037. But that is not the case here. The only relevant change is the addition of a dependent claim which has the practical effect of expanding the scope of claim 1 to cover claim scope expressly rejected by a previous claim construction ruling, and ArcelorMittal makes no argument that the reissue claims are otherwise narrowed. To permit later-generated reissue prosecution history to inform the scope of the very same claim limitation from the original patent would run afoul of the basic inquiry laid out in *Anderson* and *Tillotson*.

Accordingly, the prosecution history of the reissue patent here is not "new evidence" of the scope of the original claims for the purposes of the § 251 inquiry. Under the law-of-the-case doctrine, therefore, the district court was bound by this court's prior construction of the original claims, which ArcelorMittal concedes was narrower than the scope of the reissue claims. Based on this prior construction, the district court correctly found that claims 1 through 23 of the reissue patent impermissibly broadened the original claims and are invalid under 35 U.S.C. § 251.

B

Having found claims 1 through 23 invalid under § 251, we must next determine the fate of claims 24 and 25, which both parties agree have the same scope as claim 1 of the '805 patent—that is, they were not broadened on reissue. For the reasons set forth below, we find that the district court improperly focused on whether the patent had been improperly broadened, instead of undertaking a claim-by-claim analysis as required by statute and our precedent.

We begin with the plain language of the relevant statutes. Section 251 provides that "[n]o reissued patent shall be granted enlarging the scope of the claims of the original patent unless applied for within two years from the grant of the original patent" and a reissue patent may only be issued absent "deceptive intention" by the applicant. 35 U.S.C. § 251.

Section 282 provides, in relevant part: "[e]ach claim of a patent . . . shall be presumed valid independently of the validity of other claims[.]" *Id.* § 282. And "[i]nvalidity of the patent or any claim in suit for failure to comply with any requirement of [35 U.S.C. §§ 100 et seq.] or 251" "shall be [a] defense[] in any action involving the validity of infringement of a patent . . . ." *Id.*

Section 282 plainly states that a patent's claims are presumed valid independent of one another. And § 282 uses the same language to reference § 251 as it does §§ 100 et seq., which we have long held to only apply on a claim-by-claim basis. 35 U.S.C. § 282 (listing "[i]nvalidity of the patent or any claim in suit on any ground specified in [35 U.S.C. §§ 100 et seq.]" as a defense); *see, e.g., Vandenberg v. Dairy Equip. Co., a Div. of DEC Int'l*, 740 F.2d 1560, 1568 (Fed. Cir. 1984) (reversing a decision invalidating an entire patent based solely on the ground that some claims were invalid as obvious). *Compare* 35 U.S.C. § 251 ("No reissued patent shall be granted . . . ."), *with id.* § 102 ("A person shall be entitled to a patent unless . . . ."), *and id.* § 103(a) ("A patent may not be obtained . . . ."). Moreover, the plain language of § 253 confirms that "[w]henever, without any deceptive intention, a claim of a patent is invalid the remaining claims shall not thereby be rendered invalid."

Additionally, we have previously rejected the argument that a defective reissue application invalidates not only newly added reissue claims, but also original claims carried over from the original application. *Hewlett-*

*Packard Co. v. Bausch & Lomb, Inc.*, 882 F.2d 1556, 1566 (Fed. Cir. 1989).  There, we were presented with a stronger case for invalidating the entirety of a reissue patent than the case before us, but declined to do so.  We found newly added reissue claims invalid due to a defective reissue declaration, but declined to invalidate the original claims that were carried over in the reissue application despite a perception that the improper reissue application "infected" the entirety of the reissue patent.  *Id.* at 1566–67.[3]

In rejecting the argument that the entire reissue patent should be held invalid, we explained that "[t]here is no disagreement with the long-standing proposition that invalidation of a new claim (added during reissue) on prior art does not invalidate the other claims." *Id.* at 1566 (citation omitted).  "Nor could there be any disagreement, for the patent statute provides: 'Whenever, without any deceptive intention, a claim of a patent is invalid the remaining claims shall not thereby be rendered invalid.'"  *Id.* at 1566–67 (quoting 35 U.S.C. § 253 (1982)).  We noted that § 253 alone "offers little guidance, however, because the invalidity resulting from a defective reissue application may be viewed as affecting the entire patent and not merely any particular claim." *Id.*  However, we nevertheless "[found] support for upholding carry-over claims in *Gage v. Herring*.  There, the Supreme Court expressed its view that the inadequacy of the ground for reissuing a patent did not 'impair the validity of the original claim which is repeated and separately stated in the reissued patent.'" *Id.* (quoting *Gage v. Herring*, 107 U.S. 640, 646 (1883)) (citations omitted).

---

[3] Here, there is no allegation or evidence that ArcelorMittal acted with deceptive intent or submitted a defective reissue application.  Thus, we cannot say that the entire reissue application is tainted.

While claims 24 and 25 are not identical to the claims of the '805 patent since they identify the specific level "1500 MPa" as being the level of "mechanical resistance" rather than referring to "very high mechanical resistance," they nevertheless "repeat[ ] and separately state[ ]" the scope of claim 1 of the '805 patent as construed by the district court and later affirmed by this court. Appellees concede as much, and we are not persuaded to conclude otherwise. Appellee's Br. 42 ("Indeed, the only claims of the RE153 patent that were not themselves broadened were two dependent claims . . . ."). And, while we are mindful of the concerns over ArcelorMittal's attempts to modify the district court's claim construction through the reissue process, we are not persuaded that these policy concerns demand we part from our precedent. Accordingly, we find the district court erred in invalidating claims 24 and 25 of the RE153 patent.

### III

We conclude that the district court was bound by our construction of claim 1 of the '805 patent and that the RE153 patent does not constitute new evidence sufficient to meet the "extraordinary circumstances" exception to the mandate rule. The district court properly concluded that claims 1 through 23 of the RE153 patent were improperly broadened under § 251 and therefore invalid. However, the district court erred in invalidating claims 24 and 25, which the parties concede maintain the same scope as the original claims. Because the district court's summary judgment orders invalidated the entire RE153 patent, we decline the Appellees' invitation to reach the merits, and remand for further proceedings consistent with this opinion and our mandate in *ArcelorMittal I*.

**AFFIRMED-IN-PART, REVERSED-IN-PART, AND REMANDED**

UNITED STATES COURT OF APPEALS
FOR THE FEDERAL CIRCUIT

<u>Questions and Answers</u>

Petitions for Panel Rehearing (Fed. Cir. R. 40)
and
Petitions for Hearing or Rehearing En Banc (Fed. Cir. R. 35)

---

Q. *When is a petition for panel rehearing appropriate?*

A. Petitions for panel rehearing are rarely considered meritorious. Consequently, it is easiest to first answer when a petition for panel rehearing is not appropriate. A petition for panel rehearing should not be used to reargue issues already briefed and orally argued. If a party failed to persuade the court on an issue in the first instance, they do not get a second chance. This is especially so when the court has entered a judgment of affirmance without opinion under Fed. Cir. R. 36, as a disposition of this nature is used only when the appellant/petitioner has utterly failed to raise any issues in the appeal that require an opinion to be written in support of the court's judgment of affirmance.

Thus, as a usual prerequisite, the court must have filed an opinion in support of its judgment for a petition for panel rehearing to be appropriate. Counsel seeking panel rehearing must be able to identify in the court's opinion a material error of fact or law, the correction of which would require a different judgment on appeal.

Q. *When is a petition for rehearing en banc appropriate?*

A. En banc decisions are extraordinary occurrences. To properly answer the question, one must first understand the responsibility of a three-judge merits panel of the court. The panel is charged with deciding individual appeals according to the law of the circuit as established in the court's precedential opinions. While each merits panel is empowered to enter precedential opinions, the ultimate duty of the court en banc is to set forth the law of the Federal Circuit, which merits panels are obliged to follow.

Thus, as a usual prerequisite, a merits panel of the court must have entered a precedential opinion in support of its judgment for a petition for rehearing en banc to be appropriate. In addition, the party seeking rehearing en banc must show that either the merits panel has failed to follow decisions of the Supreme Court of the United States or Federal Circuit precedential opinions, or that the merits panel has followed circuit precedent, which the party seeks to have overruled by the court en banc.

Q. *How frequently are petitions for panel rehearing granted by merits panels or petitions for rehearing en banc granted by the court?*

A. The data regarding petitions for panel rehearing since 1982 shows that merits panels granted some relief in only three percent of the petitions filed. The relief granted usually involved only minor corrections of factual misstatements, rarely resulting in a change of outcome in the decision.

En banc petitions have been granted less frequently. Historically, the court has initiated en banc review in a few of the appeals decided en banc since 1982.

Q. *Is it necessary to have filed either of these petitions before filing a petition for certiorari in the U.S. Supreme Court?*

A. No. All that is needed is a final judgment of the Court of Appeals.

UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT

INFORMATION SHEET

FILING A PETITION FOR A WRIT OF CERTIORARI

There is no automatic right of appeal to the Supreme Court of the United States from judgments of the Federal Circuit. You must file a petition for a writ of certiorari which the Supreme Court will grant only when there are compelling reasons. (See Rule 10 of the Rules of the Supreme Court of the United States, hereinafter called Rules.)

Time. The petition must be filed in the Supreme Court of the United States within 90 days of the entry of judgment in this Court or within 90 days of the denial of a timely petition for rehearing. The judgment is entered on the day the Federal Circuit issues a final decision in your case. [The time does not run from the issuance of the mandate, which has no effect on the right to petition.] (See Rule 13 of the Rules.)

Fees. Either the $300 docketing fee or a motion for leave to proceed in forma pauperis with an affidavit in support thereof must accompany the petition. (See Rules 38 and 39.)

Authorized Filer. The petition must be filed by a member of the bar of the Supreme Court of the United States or by the petitioner representing himself or herself.

Format of a Petition. The Rules are very specific about the order of the required information and should be consulted before you start drafting your petition. (See Rule 14.) Rules 33 and 34 should be consulted regarding type size and font, paper size, paper weight, margins, page limits, cover, etc.

Number of Copies. Forty copies of a petition must be filed unless the petitioner is proceeding in forma pauperis, in which case an original and ten copies of the petition for writ of certiorari and of the motion for leave to proceed in forma pauperis. (See Rule 12.)

Where to File. You must file your documents at the Supreme Court.

Clerk
Supreme Court of the United States
1 First Street, NE
Washington, DC 20543
(202) 479-3000

No documents are filed at the Federal Circuit and the Federal Circuit provides no information to the Supreme Court unless the Supreme Court asks for the information.

Access to the Rules. The current rules can be found in Title 28 of the United States Code Annotated and other legal publications available in many public libraries.

Revised December 16, 1999