IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| ARCELORMITTAL FRANCE and ARCELORMITTAL ATLANTIQUE ET LORRAINE,<br><br>    Plaintiffs,<br><br>v.<br><br>AK STEEL CORPORATION, SEVERSTAL DEARBORN, INC., and WHEELING-NISSHIN, INC.,<br><br>    Defendants. | Civ. No. 10-050-SLR |
| ARCELORMITTAL FRANCE, ARCELORMITTAL ATLANTIQUE ET LORRAINE, and ARCELORMITTAL USA LLC,<br><br>    Plaintiffs,<br><br>v.<br><br>AK STEEL CORPORATION,<br><br>    Defendant. | Civ. No. 13-685-SLR |

**MEMORANDUM**

At Wilmington this 4th day of December, 2015, having reviewed the pending motions[1] filed by the parties[2] in both of the above captioned cases, and having heard

---

[1]The motions filed in Civ. No. 10-050 include defendants' motions for summary judgment (D.I. 323, 325) and to change the caption to remove Severstal Dearborn, Inc. (D.I. 320), and plaintiffs' motion to dismiss for lack of subject matter jurisdiction (D.I.

oral argument on the same, I will grant defendants' motions for summary judgment and deny plaintiffs' motion to dismiss in Civ. No. 10-050, and will grant plaintiffs' motion to amend in Civ. No. 13-685, consistent with the following reasoning.

1. **Background.**[3] The above captioned litigation has a convoluted procedural history. Plaintiffs asserted U.S. Patent No. 6,296,805 ("the '805 patent") against defendants by complaint filed in January 2010. The litigation proceeded to claim construction and trial, ending in a jury verdict in defendants' favor. On appeal, the Federal Circuit upheld the claim construction in part and reversed in part;[4] the Court also reversed the jury's verdict of anticipation. With respect to obviousness, the Court concluded that a new trial was required because the claim construction error prevented the jury from properly considering plaintiffs' evidence of commercial success. *See ArcelorMittal France v. AK Steel Corp.*, 700 F.3d 1314 (Fed. Cir. 2012) ("*ArcelorMittal I*").

---

321). The sole pending motion in Civ. No. 13-685 is plaintiffs' motion for leave to file a first amended complaint for patent infringement. (D.I. 31)

[2]Defendants (who may collectively be referred to as "defendants") include AK Steel Corporation ("AK Steel"), Severstal Dearborn, Inc. ("Severstal"), and Wheeling-Nisshin, Inc. in Civ. No. 10-050, and just AK Steel in Civ. No. 13-685. Plaintiffs (who may collectively be referred to as "plaintiffs") include ArcelorMittal France ("AM France") and ArcelorMittal Atlantique et Lorraine in Civ. No. 10-050; ArcelorMittal USA LLC was added as a plaintiff in Civ. No. 13-685.

[3]Given the robust record in this litigation, I recite only the facts necessary to the analysis.

[4]Specifically, the Federal Circuit reversed the construction for "hot-rolled steel sheet" and upheld the construction for "very high mechanical resistance," that is, "the flat-rolled steel has been subjected, after rolling, to additional controlled heating and cooling and has an ultimate tensile strength of 1500 MPs or greater."

2

2. During the appeal process, in order to "correct" the construction of "very high mechanical resistance," plaintiffs obtained U.S. Patent No. RE44,153E ("the RE153 patent"), which application issued on April 16, 2013 and added a number of dependent claims, including (1) claim 23, which recites "[t]he coated steel sheet of claim 1, wherein said mechanical resistance is in excess of 1000 MPa," (2) claim 24, which confined claim 1 to the construction affirmed in *ArcelorMittal I* by claiming "[t]he coated steel sheet of claim 1, wherein said mechanical resistance is in excess of 1500 MPa," and (3) claim 25, which depends on and further limits claim 24. *See ArcelorMittal France v. AK Steel Corp.*, 786 F.3d 885, 887-88 (Fed. Cir. 2015) ("*ArcelorMittal II*").

3. Chronologically, then, the Federal Circuit's mandate in *ArcelorMittal I* issued on March 27, 2013 and the RE153 patent issued on April 16, 2013. Also on April 16, 2013, plaintiffs filed a complaint for patent infringement of the RE153 patent in Civ. No. 13-685 against AK Steel. (Civ. No. 13-685, D.I. 1) On May 10, 2013, plaintiffs filed a motion for leave to file a second amended complaint in Civ. No. 10-050. (Civ. No. 10-050, D.I. 269) Like the complaint filed in Civ. No. 13-685, plaintiffs' infringement contentions in Civ. No. 10-050 reflected the procedural history of the litigation. Paragraph 14 of the proposed amended complaint asserted the following:

> The RE153 patent contains claims 1-16, which originally appeared in the '805 patent, as well as new claims 17-25. Claims 1, 2, 5, 7, and 16 of the '805 patent were previously asserted in this litigation, and appear in the RE153 patent in substantially identical form. Pursuant to 35 U.S.C. § 252, this Second Amended Complaint substitutes 1, 2, 5, 7, and 16 of the RE153 patent for the same claims in the now-surrendered '805 patent.

(D.I. 269, ex. A) In paragraph 23, plaintiffs generally alleged that "AK Steel's aluminum coated, boron-containing steel sheet products . . . have an ultimate tensile strength

3

greater than 1000 MPa, and at least some of the products have an ultimate tensile strength greater than 1500 MPa," thus "directly infring[ing] one or more of the claims of the RE153 patent." In connection with briefing on their motion to amend, plaintiffs argued that

> [t]he landscape of this case has changed dramatically since the earlier trial. The reissue patent (RE153) has replaced the original patent (the '805 patent). Defendants no longer contend that the claims are limited to steel having a UTS greater than 1,500 MPa. Instead, Defendants have now conceded that the claims of RE153 cover steel having a UTS of greater than 1,000 MPa. And, both Defendants are **now selling** into the market steel that is being hot stamped and delivered to customers that has a UTS that exceeds 1,500 MPa.
>
> Plaintiffs' proposed amendments in the Second Amended Complaint are directed to this new landscape. . . . . First, Plaintiffs' proposed amendments that allege . . . infringement by sales of steel having a UTS of 1,000 MPa or greater are based **on the agreed substitution** of [the RE153 patent] for the original ['805] patent, and Defendants' concession . . . that the RE153 patent must be reinterpreted to cover steel with a UTS greater than 1,000 MPa. There is only a single patent, RE153, and the parties agree that it covers steel having a UTS of "1,000 MPa or greater."

(D.I. 277 at 4)(emphasis added) (*See also* Civ. No. 13-685, D.I. 10 at 8-10)

4. With the substitution of the RE153 patent for the '805 patent, defendants moved for entry of summary judgment in Civ. No. 10-050,[5] arguing that the RE153 patent was invalid pursuant to 35 U.S.C. § 251(d). By memorandum opinion issued on October 25, 2013 (D.I. 297), I granted the motion, having concluded that the RE153 patent had been improperly broadened:

> There can be no doubt that ArcelorMittal pursued its reissue patent as an intentional strategy to avoid the consequences of this court's narrow claim construction, with the ultimate goal of capturing more acts of infringement under the broadening scope of new dependent claim 23 of

---

[5]AK Steel filed a similar motion to dismiss in Civ. No. 13-685. (D.I. 5)

the RE153 patent. Although such a strategy would have been perfectly
legitimate if pursued within two years from the grant of the '805 patent,[6]
the court concludes that ArcelorMittal's post-trial strategy offends the
fundamental purpose of § 251, that is, repose.

(D.I. 297 at 10-11)[7] On appeal, the Federal Circuit affirmed in part and reversed in part:

The district court properly concluded that claims 1 through 23 of the RE153
patent were improperly broadened under § 251 and therefore invalid.
However, the district court erred in invalidating claims 24 and 25, which the
parties concede maintain the same scope as the original claims. Because the
district court's summary judgment orders invalidated the entire RE153 patent,
we decline Appellees' invitation to reach the merits, and remand for further
proceedings consistent with this opinion and our mandate in *ArcelorMittal I*.

*ArcelorMittal II*, 786 F.3d at 892.

5. Since the Federal Circuit's mandate in *ArcelorMittal II* issued in June 2015, the parties have filed multiple motions, with plaintiffs continuing their efforts to capture new acts of infringement and defendants continuing their efforts to enforce repose. In this regard, plaintiffs have filed a motion to amend in Civ. No. 13-685, seeking permission to assert yet another patent against AK Steel - U.S. Reissue Patent No. RE44,940 ("the RE940 patent"), a continuation of the patent application that issued as the RE153 patent and which itself issued on June 10, 2014.[8] Related to the above motion to amend, plaintiffs propose to file a covenant not to sue on the RE153 patent,

---

[6]The '805 patent issued on October 2, 2001. (D.I. 1, ex. A)

[7]By memorandum and order dated December 5, 2013, all claims of the RE153 patent were invalidated as violative of 35 U.S.C. § 251(d); judgment was entered in favor of defendants, thus mooting the pending motion to dismiss in Civ. No. 13-685. (Civ. No. 13-685, D.I. 19, 20, 21)

[8]The RE940 patent has two independent claims (claims 17 and 27) which disclose, *inter alia*, a hot-rolled coated steel sheet having a "very high mechanical resistance in excess of 1500 MPa . . . ."

5

the filing of which is conditioned on the approval of their pending motion to amend. In Civ. No. 10-050, plaintiffs have filed a motion to dismiss for lack of subject matter jurisdiction, based on their contentions that: (1) claims 24 and 25 were never at issue in Civ. No. 10-050; (2) all of the asserted claims of the RE153 patent have been held invalid; and (3) the absence of any case or controversy requires dismissal. (D.I. 322)

6. Defendants in Civ. No. 10-050 have moved for entry of judgment with respect to both invalidity and no infringement of the RE153 patent, arguing in general that because claims 24 and 25 of the RE153 patent have the same scope as claim 1 of the '805 patent,[9] the motions are appropriately resolved consistent with the 2011 trial record and the mandate of the Federal Circuit in *ArcelorMittal I*. Specifically, plaintiffs conceded "(by not addressing) the fact that the trial record has no evidence of past infringement of claim 1 of the '805 patent, as construed by the Federal Circuit." (D.I. 297 at 5-6)[10] There being no record evidence that the accused products have an ultimate tensile strength above 1500 MPa, entry of judgment is appropriate. As to invalidity, defendants argue that summary judgment of obviousness of claims 24 and 25 of RE153 should be granted pursuant to the Federal Circuit's mandate in *ArcelorMittal I* because ArcelorMittal's "purported evidence of commercial success is insufficient as a matter of law to overcome the prima facie case of obviousness of the claims." (D.I. 324 at 1)

7. Plaintiffs in Civ. No. 10-050 counter that the 2011 trial record is an insufficient

---

[9]*See ArcelorMittal II,* 768 F.3d at 891.

[10]The Federal Circuit, in *ArcelorMittal I*, affirmed the judgment that the accused products do not infringe under the doctrine of equivalents. 700 F.3d at 1321-22.

6

basis upon which to enter judgment, given that the RE153 patent did not issue until 2013; i.e., the record should be opened and defendants' "new acts of infringement" explored. (D.I. 331 at 11, 15) Plaintiffs also contend that

> [t]he Federal Circuit's decision in *ArcelorMittal I* held that the jury's decision in the first trial was supported by substantial evidence on the record presented to it. The Federal Circuit's decision does not establish a *prima facie* case of obviousness as a matter of law for claims that were not even before the court. A second jury that considers additional evidence based on a proper claim construction, the reissue prosecution history, the commercial success of the patented product, the copying of the patented product by Defendants, and other secondary considerations, with regard to different claims of different scope, may come to a different conclusion.

(D.I. 331 at 18)

8. **Analysis.**[11] Where to begin? In light of this procedural morass, I will begin with the original case, Civ. No. 10-050, and the statute invoked by plaintiffs when they pursued RE153 to avoid the consequences of the Federal Circuit's claim construction. Section 252 provides that when a patent is surrendered for reissue, "such surrender shall not affect any action then pending nor abate any cause of action then existing, and the reissued patent, to the extent that its claims are substantially identical with the original patent, shall constitute a continuation thereof and have effect continuously from the date of the original patent." 35 U.S.C. § 252. Claims 24 and 25 of the RE153 patent are "substantially identical" to claim 1 of the '805 patent, as established by the Federal Circuit in *ArcelorMittal II* and consistent with the parties' concession. *See* 786 F.3d at 892. Under these circumstances, I conclude, first, that claims 24 and 25 of the

---

[11]The court has jurisdiction pursuant to 28 U.S.C. § 1338.

7

RE153 patent were asserted in Civ. No. 10-050 as a matter of law.[12] Therefore, plaintiffs' motion to dismiss for lack of subject matter jurisdiction is denied. My second conclusion follows from the first: Because the RE153 patent simply took the place of the '805 patent upon its surrender - with no independent effect on any action then pending[13] - the mandate of the Federal Circuit in *ArcelorMittal I*, based on the present record, governs the resolution of claims 24 and 25 of the RE153 patent. *See, e.g., Scripps Clinic & Research Found. v. Genentech, Inc.*, 678 F. Supp. 1429, 1433 (N.D. Cal. 1988) (explaining that under § 252, "the reissue of a patent does not affect preexisting infringement claims 'to the extent that [the reissued] claims are [substantially] identical with the original patent.'") (citation omitted).

9. The record as to literal infringement is not quite as clear-cut as characterized by AK Steel, starting with the Federal Circuit's observation in *ArcelorMittal I* that,

> **[a]t oral argument, AK Steel's counsel conceded that at least some accused products have a mechanical resistance of 1500 MPa or greater.** However, as a result of the district court's incorrect claim construction of "hot-rolled steel sheet," the jury was instructed at trial to consider direct infringement only under the doctrine of equivalents. . . . Thus, there has been no determination below regarding which accused products would or would not literally infringe under the correct claim construction. That infringement issue will need to be addressed in the first instance on remand, either by the court on summary judgment or by a jury in a new trial. Because the jury found no infringement under the doctrine of

---

[12]As opposed to the mechanics of filing an amended complaint. Indeed, the only reason plaintiffs filed an amended complaint in 10-050 was to assert new acts of infringement consistent with claim 23, which impermissibly broadened the scope of the '805 patent under the Federal Circuit's claim construction.

[13]Of course, to the extent plaintiffs tried to broaden the scope of the '805 patent through the reissue process in order to encompass new acts of infringement, their efforts were thwarted by the provisions of 35 U.S.C. § 251(d), as established by the Federal Circuit in *ArcelorMittal II*.

8

> equivalents, and ArcelorMittal has not challenged that aspect of the verdict, any infringement analysis found to be necessary on remand should be limited to literal infringement.

700 F.3d at 1322 (emphasis added). Rather than run with the ball put in play by the Federal Circuit, however, plaintiffs have tried to alter the playing field, first through the broadened RE153 patent, and now through assertion of the RE940 patent in Civ. No. 13-685.[14] Certainly in the first round of motions on remand from *ArcelorMittal I*, the focus of the litigation was whether the RE153 patent withstood scrutiny under 35 U.S.C. § 251(d) and I noted in that context that plaintiffs had conceded - by not addressing - the fact that the trial record had no evidence of past infringement of claim 1 of the '805 patent as construed by the Federal Circuit, i.e., hot-rolled coated steel sheet having an ultimate tensile strength of 1500 MPa or greater. (D.I. 297 at 5-6) Even in the current round of briefing, plaintiffs argue that genuine issues of material fact remain, but only as to "the new acts of infringement by defendants" occurring "[s]ince the time of the January 2011 trial." (D.I. 331 at 15) Given the fact that I would not allow the record to be opened on remand if the '805 patent were still at issue,[15] and given that plaintiffs are not asserting pre-trial acts of infringement, I find that there are no genuine issues of material fact as to infringement of claims 24 and 25 of the RE153 patent.

10. Likewise, with respect to the issue of invalidity, plaintiffs devote most of their current briefing to the proposition, rejected above, that claims 24 and 25 of the RE153

---

[14]Ironically, had plaintiffs simply litigated the '805 patent under the Federal Circuit's claim construction, they might have a verdict by now on the alleged "new" acts of infringement rather than the instant procedural quagmire, a classic case of being hoisted by one's own petard.

[15]And recall that the RE153 patent is simply a substitute for the '805 patent.

9

patent are not in play in Civ. No. 10-050. (D.I. 331) Rather than address on a substantive basis defendants' position that the trial record fails to demonstrate commercial success, plaintiffs instead argue that, "[a]t a minimum, [the] additional prosecution history [resulting through reissue proceedings] creates genuine issues of material fact concerning claims 24 and 25, which were not part of the original trial or the first Federal Circuit appeal." (*Id.* at 18, citing *Interconnect Planning Corp. v. Feil*, 774 F.2d 1132, 1139 (Fed. Cir. 1985) ("Upon reissue the 'burden of proving invalidity [is] made heavier.'") (citation omitted). Plaintiffs contend as well that the Federal Circuit's decision in *ArcelorMittal I* "does not establish a prima facie case of obviousness as a matter of law for claims that were not even before the court." (D.I. 331 at 18) In this regard, plaintiffs suggest that "[a] second jury that considers additional evidence based on a proper claim construction, the reissue prosecution history, the commercial success of the patented product, the copying of the patented product by defendants, and other secondary considerations, with regard to different claims of different scope, may come to a different conclusion." (*Id.*)

11. The Federal Circuit in *ArcelorMittal I* upheld the jury's conclusion "that AK Steel had established a prima facie case of obviousness." 700 F.3d at 1324. Although the Court vacated the jury's obviousness verdict because of the erroneous claim construction, the Court remanded for a new trial "addressing only the commercial success aspect of obviousness. . . ." *Id.* at 1326. The Court declined to enter judgment in favor of AK Steel, as AK Steel's prima facie case was not "so strong that, as a matter of law, it would overcome ArcelorMittal's commercial success evidence." 700 F.3d at 1326. The Court also declined to address secondary considerations other than

commercial success, noting that plaintiffs had made "passing reference to other secondary considerations such as copying and unexpected results," but had "not briefed those issues sufficiently to preserve them." *Id.* at 1325, n.6.

12. The question once again is whether, under the circumstances at bar, I should allow plaintiffs to start with a clean slate, as though no trial and no appeal had ever occurred in Civ. No. 10-050. I decline to do so, and confine my analysis to the scope of the Federal Circuit's mandate in *ArcelorMittal I*. As explained by the *ArcelorMittal I* Court, "[a]bsent a demonstrated nexus, ArcelorMittal's commercial success evidence is not significant." 700 F.3d at 1326. To meet its burden of production as to nexus, plaintiffs would need evidence showing "that the product that is commercially successful is the invention disclosed and claimed in the patent." *Crocs, Inc. v. Int'l Trade Comm'n*, 598 F.3d 1294, 1311 (Fed. Cir. 2010). Defendants contend (and plaintiffs concede by not addressing) that plaintiffs only sell flat-rolled steel sheets that have not undergone additional heat treating and have not attained an ultimate tensile strength of 1500 MPa or higher, as required by claim 24. (D.I. 324 at 12-14)[16] On this record, I conclude that plaintiffs have not identified any genuine issues of material fact sufficient to overcome defendants' prima facie case of obviousness.

13. **Conclusion.** I believe that my decisions thus far bring repose to the dispute tried to a jury in 2011 and thereafter examined on appeal by the Federal Circuit, consistent with the mandates issued in *ArcelorMittal I* and *ArcelorMittal II*. I

---

[16]Dependent claim 25 of the RE153 patent requires that the coated steel sheet of claim 24 be composed "predominantly of martensite." Neither plaintiffs nor defendants address this limitation specifically with respect to invalidity.

acknowledge in this regard that plaintiffs may be precluded from asserting infringement in the future for hot-rolled steel sheets having an ultimate tensile strength of less than 1500 MPa, and that plaintiffs have exerted substantial resources since losing claim construction in December 2010 to achieve that very objective. Nevertheless, I conclude that defendants' motions for summary judgment in Civ. No. 10-050 should be granted and judgment of no infringement and invalidity of the RE153 patent be entered in Civ. No. 10-050, thus mooting plaintiffs' proposed covenant not to sue.[17] Plaintiffs' motion to file a first amended complaint in Civ. No. 13-685 is granted. An order shall issue.

_____
United States District Judge

---

[17]Of course, if plaintiffs had simply filed the covenant instead of making it conditional, they could have avoided the entry of judgment - once again, hoisted by their own petard.

12