01:12:40

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

ARCELORMITTAL FRANCE, et al.,)
                              )
            Plaintiffs,       )
                              ) C.A. No. 10-050(MN)
v.                            )
                              )
AK STEEL CORPORATION, et al.,)
                              )
            Defendants.       )


                    Tuesday, December 4, 2018
                    2:00 p.m.
                    Motion for Attorney's Fees


                    844 King Street
                    Wilmington, Delaware


BEFORE:  THE HONORABLE MARYELLEN NOREIKA
         United States District Court Judge


APPEARANCES:


             RATNER PRESTIA, P.C.
             BY:  JEFFREY B. BOVE, ESQ.
             BY:  KAREN RIESENBURGER, ESQ.

              -and-

             SHOOK HARDY & BACON
             BY:  HUGH A. ABRAMS, ESQ.


                    Counsel for the Plaintiffs

1    APPEARANCES CONTINUED:

2

3
              YOUNG CONAWAY STARGATT & TAYLOR, LLP
4             BY:  ADAM WYATT POFF, ESQ.

5             -and-

6             COVINGTON & BURLING, LLP
              BY:  JEFFREY LERNER, ESQ.
7
                        Counsel for the Defendants
8

9

10

11

12                      - oOo -

13               P R O C E E D I N G S

14                       _  _  _

15

16

01:52:52 17

01:56:50 18            THE COURT:  Good afternoon.  We're here today

01:57:05 19    for arguments in Civil Action Number 10-50 on defendant's

01:57:14 20    motion for attorney's fees.  Before we start, how about some

01:57:19 21    appearances.

01:57:21 22            MR. BOVE:  Good afternoon, Your Honor.  Jeff

01:57:25 23    Bove with RatnerPrestia for ArcelorMittal.  I have with me

01:57:29 24    my co-counsel from Shook Hardy, Hugh Abrams, who will be

01:57:33 25    doing the argument today.  And by way of introduction I have

01:57:38 1   my associate who hasn't entered an appearance in this case,

01:57:42 2   but is attending, Karen Poppel, and my paralegal, Jo Hurliy

01:57:44 3   will be running our PowerPoint.

01:57:46 4               THE COURT:  Welcome everybody.

01:57:48 5               MR. BOVE:  Thank you.

01:57:48 6               THE COURT:  Mr. Poff.

01:57:50 7               MR. POFF:  Good afternoon, Your Honor.  Adam

01:57:52 8   Poff from Young Conaway on behalf of AK Steel.  And with me

01:57:54 9   is Jeffrey Lerner from Covington.

01:57:57 10              MR. LERNER:  Good afternoon.

01:57:57 11              THE COURT:  So I have copies of slides, so let's

01:58:02 12  hear first from defendant, AK Steel.  And just so you know,

01:58:13 13  I have read all of the briefs and all of Judge Robinson's

01:58:18 14  opinions and the Federal Circuit opinions to the extent that

01:58:20 15  helps you shorten some background or time that you may want

01:58:25 16  to spend on other things.

01:58:26 17              MR. LERNER:  Thank you, Your Honor.

01:58:29 18              I'm Jeffrey Lerner for AK Steel.  This is a

01:58:34 19  unique case which became exceptional about five-and-a-half

01:58:37 20  years ago.  The case was originally filed by ArcelorMittal

01:58:42 21  in January of 2010 on a patent that we call the '805 patent.

01:58:46 22  The case proceeded to trial, a five-day jury trial, which AK

01:58:52 23  Steel won.  The jury found the claims not infringed,

01:58:55 24  anticipated and obvious.  And that was appealed to the

01:58:58 25  Federal Circuit by ArcelorMittal.  The Federal Circuit

01:59:02 1   affirmed in many respects, reversed one claim construction,

01:59:06 2   and vacated in part and issued a very limited remand for two

01:59:12 3   specific issues.  One issue was whether there was evidence

01:59:15 4   in the record of literal infringement under the affirmed

01:59:19 5   claim construction that requires steel sheet to have an

01:59:22 6   ultimate tensile strength or UTS of 1,500 or above.  And the

01:59:28 7   second was whether there was evidence of commercial success

01:59:31 8   having a nexus to the claims under the claim constructions.

01:59:37 9        Had the case proceeded to remand on the '805

01:59:43 10  patent, the case would have ended in April of 2013.  The

01:59:47 11  Federal Circuit's mandate issued, and from that time

01:59:51 12  forward, ArcelorMittal has never identified evidence of

01:59:55 13  record that AK Steel has steel sheet having the required

02:00:00 14  ultimate tensile strength or that there was evidence of

02:00:04 15  commercial success having a nexus to the claims.

02:00:06 16       Instead what ArcelorMittal sought to do and what

02:00:10 17  made this case exceptional is they sought to undo all of the

02:00:15 18  litigation by going to the patent office and after the

02:00:19 19  Federal Circuit's mandate issued, after their appeal had

02:00:22 20  been finalized, going and getting a broadening reissue that

02:00:26 21  deliberately expanded the scope of their claims to cover

02:00:30 22  product having ultimate tensile strength less than 1,500

02:00:35 23  which was adjudged non-infringing.

02:00:38 24       Under Section 251(d), a party, a patent holder

02:00:42 25  may not obtain a broadening reissue more than two years

02:00:46  1  after issuance.

02:00:47  2        The '805 patent issued in 2001.  ArcelorMittal

02:00:50  3  filed its petition for reissue in 2010, nearly a decade

02:00:55  4  later.  There was no legal basis for ArcelorMittal to

02:00:58  5  broaden its claims.  And as Judge Robinson recognized in her

02:01:03  6  opinions, and I think her frustration comes across in some

02:01:06  7  of the transcripts, what ArcelorMittal did was an attempt at

02:01:09  8  that point having lost at trial, having lost post-trial

02:01:14  9  motions, having essentially lost on appeal, to undo all of

02:01:18 10  what happened and to start afresh.

02:01:19 11        And Judge Robinson characterized that,

02:01:23 12  characterized the strategy that ArcelorMittal undertook as

02:01:30 13  an abusive process.  That's in DI-13, which is a hearing in

02:01:35 14  August 2013 on the initial remand.

02:01:36 15        THE COURT:  Can I ask you a question?  I was

02:01:39 16  trying to figure out how -- what happened after that first

02:01:44 17  remand.  As you said, the issues for remand were literal

02:01:48 18  infringement and commercial success.  And ultimately what

02:01:51 19  the court heard was AK Steel's motion for summary judgment

02:01:56 20  of no infringement.  And then decided the motion based on

02:02:00 21  the reissue.  What was the process by which that came about,

02:02:05 22  and why was the obviousness, the commercial success issue

02:02:09 23  not addressed?

02:02:10 24        MR. LERNER:  When ArcelorMittal obtained their

02:02:13 25  reissue, as a matter of law they surrendered the '805

02:02:18  1    patent.  And so what the parties faced at that point was the

02:02:21  2    '805 patent which was the subject of all the proceedings

02:02:24  3    before that no longer existed and what to do with this new

02:02:28  4    reissued patent RE153.

02:02:31  5         On the remand we thought that the motion for

02:02:32  6    summary judgment was the way to effectuate the court's --

02:02:37  7    the Federal Circuit's mandate.  And what we said was two

02:02:40  8    things should happen.  All of the claims substituted into

02:02:44  9    the case, and we said some claims were broadened, claims 1

02:02:48 10    through 23, and those are invalid for broadening.  There

02:02:51 11    were two claims that were not themselves broadened.  We

02:02:55 12    argued that those could not be infringed because there was

02:02:59 13    no evidence of literal infringement.  That would be to

02:03:02 14    effectuate the mandate.  And I candidly cannot recall why

02:03:07 15    the commercial success piece was not addressed as well, but

02:03:10 16    that would have disposed of the appeal.

02:03:13 17         THE COURT:  I think you said in your papers that

02:03:15 18    those two claims, 24 and 25, should be dealt with pursuant

02:03:18 19    to the remand on obviousness or the commercial success nexus

02:03:22 20    issue.  And you just don't recall why that didn't happen?

02:03:26 21         MR. LERNER:  Well, what happened was -- that was

02:03:31 22    our view of things.  ArcelorMittal took a different view.

02:03:34 23    And they came into the court for the remand and said we need

02:03:39 24    new claim construction.  And so what you will find in the

02:03:42 25    remand, which is procedurally unusual is dueling sets of

02:03:46 1   briefs.  We were briefing summary judgment.  ArcelorMittal

02:03:49 2   was briefing what they called claim construction.  The two

02:03:52 3   were largely addressing the same issues.

02:03:54 4        But in the ArcelorMittal view of the world, they

02:03:58 5   said that claim construction comes first and that determines

02:04:02 6   what comes after.  Our position was there could be no

02:04:06 7   broadening of the claims, therefore, the mandate is still in

02:04:09 8   effect and anything broader is invalid under 251(d).

02:04:13 9        Judge Robinson to deter this kind of conduct

02:04:18 10  ended up invalidating all of the claims including claims 24

02:04:22 11  and 25 under Section 251(d).  That was appealed to the

02:04:26 12  Federal Circuit and they roundly affirmed on claims 1 to 23,

02:04:32 13  that's important.  We'll get into what they said about that.

02:04:35 14  Because there has never been any court that looked at this

02:04:38 15  and said there was any legitimate basis for ArcelorMittal to

02:04:42 16  broaden.  The only question is for the two nonbroadened

02:04:45 17  claims, what happens to those.  We had proposed that they go

02:04:47 18  to summary judgment.  Judge Robinson had found them invalid

02:04:51 19  under 251(d).  The Federal Circuit thought that 251(d)

02:04:51 20  requires a claim by claim analysis so they vacated those two

02:04:58 21  claims which led to the second remand.

02:04:59 22       We then filed for summary judgment again on

02:05:02 23  non-infringement and invalidity and that was when

02:05:05 24  ArcelorMittal tried to pull the rug out by saying those

02:05:08 25  claims were never in the case in the first place.

02:05:10  1          THE COURT:  So one of the grounds on which you

02:05:13  2     seek this is a broadening reissue which you say anybody

02:05:17  3     should have known that you couldn't do a broadening reissue,

02:05:20  4     and they knew that they were doing something that they

02:05:23  5     shouldn't be doing and it was just dragging out and trying

02:05:26  6     to redo what the District Court and the Federal Circuit

02:05:29  7     said.  The Federal Circuit on the second appeal knew all

02:05:39  8     that.  Right?  And you briefed all of that to the Federal

02:05:43  9     Circuit and they considered it.  And the Federal Circuit

02:05:46 10     said in I think footnote three that there was no evidence or

02:05:52 11     allegation of bad faith with respect to the filing of the

02:06:00 12     reissue.  And then it noted that while they were cognizant

02:06:05 13     of the concerns that Judge Robinson and presumably AK Steel

02:06:09 14     had raised, they didn't think that seeking that broadening

02:06:12 15     reissue was sufficient to make them essentially rendered

02:06:19 16     unenforceable claims 24 and 25.

02:06:22 17          So when you're asserting that just the

02:06:25 18     broadening reissue as one sort of prong of getting

02:06:30 19     attorney's fees, what am I supposed to do with those kind of

02:06:34 20     comments from the Federal Circuit where the Federal Circuit

02:06:36 21     knew all of this was going on and specifically said there is

02:06:39 22     no evidence of bad faith and we have taken that into

02:06:44 23     account, but we don't think that that even merits this --

02:06:46 24     that that rises to the level where we should invalidate

02:06:50 25     these other claims?

02:06:52  1      MR. LERNER:  Your Honor, I think that there is

02:06:54  2  two pieces to this.  The Federal Circuit I believe found no

02:07:00  3  bad faith because they were looking at the question of

02:07:03  4  whether there was an ineffective reissue.  Was it done for

02:07:07  5  improper purpose and essential inequitable conduct type

02:07:12  6  unenforceable theory.  They found that that was not the

02:07:16  7  case.

02:07:16  8      If we could go to slide seven, please.

02:07:19  9      The second quote is from the opinion, I think

02:07:22 10  this is something Your Honor just referenced.  The Federal

02:07:26 11  Circuit said, "And, while we are mindful of the concerns

02:07:29 12  over ArcelorMittal's attempts to modify the district court's

02:07:33 13  claim construction through the reissue process, we are not

02:07:36 14  persuaded that these policy concerns demand we part from our

02:07:38 15  precedent."

02:07:39 16      As a matter of invalidity that's what the court

02:07:42 17  was saying.  And so as we read this, what the court was

02:07:45 18  saying, we can go through on claims 1 to 23, claims 1 to 23

02:07:50 19  were undoubtedly invalid.  I don't think anyone can credibly

02:07:55 20  contend that ArcelorMittal didn't know this was an invalid

02:07:56 21  reissue, at least as to those claims.

02:07:57 22      For claims 24 and 25, Judge Robinson said as a

02:08:01 23  matter of policy, this is in DI-306, memorandum and order,

02:08:06 24  if she didn't invalidate claims 24 and 25, she said it would

02:08:10 25  encourage applicants to circumvent unfavorable litigation

02:08:13 1   outcomes, thereby burdening both the PTO and the courts with

02:08:16 2   competing administrative and judicial submissions.

02:08:21 3          The Federal Circuit was I think saying

02:08:23 4   specifically they're mindful of those concerns.  They're not

02:08:26 5   disagreeing that they're valid concerns, but that Section

02:08:31 6   251(d) is not the vehicle to address them.  We maintain

02:08:35 7   section 285(d) is the vehicle to address them.

02:08:38 8          As a matter of invalidity of those claims,

02:08:40 9   because there wasn't a quote unquote improper purpose, they

02:08:43 10  couldn't be rendered unenforceable.  But that's an

02:08:48 11  analytically different question from whether under Octane

02:08:51 12  this case stands out for the strength of the parties'

02:08:55 13  positions and for the way the case was litigated.  For that,

02:08:59 14  I'm going to go to slide six.

02:09:02 15         The Federal Circuit dealt with and disposed of

02:09:06 16  ArcelorMittal's arguments on claims 1 to 23 very sharply.

02:09:10 17  They say, "Permitting a reissue patent to disturb a previous

02:09:14 18  claim construction of the original claims would turn the

02:09:16 19  validity analysis under Section 251 on its head."

02:09:20 20         They say, "If the reissue claim itself could be

02:09:23 21  used to redefine the scope of the original claim, this

02:09:26 22  comparison would be meaningless."

02:09:28 23         They say they reject the argument ArcelorMittal

02:09:30 24  made in the reexamination context.  They soundly reject this

02:09:36 25  argument in the context of determining whether a re-examined

02:09:39  1    patent was improperly broadened during prosecution.

02:09:43  2            They go on to say, "We have never found that

02:09:44  3    such a reissue prosecution history is relevant to whether an

02:09:48  4    applicant broadened the scope of an original claim in the

02:09:51  5    251 analysis.  Nor could we, since such a finding would run

02:09:55  6    contrary to the plain language and purpose of 251."

02:09:58  7            As to claims 1 to 23, the Federal Circuit is

02:10:01  8    saying that this was clearly improper.  So in our view, the

02:10:06  9    impropriety of this, which is what spawned what followed it,

02:10:11 10    is a factor that warrants an exceptional case finding.

02:10:14 11            The public policy reasons that were of concern

02:10:16 12    to Judge Robinson, who very clearly found this to be --

02:10:22 13    let's go to slide four.  She calls what Arthur did asking me

02:10:29 14    to disregard two years of litigation.  She calls it

02:10:33 15    manipulative and says she thinks it's an abuse of process.

02:10:37 16    These are words of an exceptional case.  These are not words

02:10:41 17    that Judge Robinson would utter lightly.

02:10:43 18            The Federal Circuit simply disagreed with the

02:10:45 19    application of 251(d) to the claims 24 and 25, but it

02:10:50 20    doesn't negate that the conduct in obtaining the reissue in

02:10:53 21    the first place and attempting to broaden it was

02:10:57 22    exceptional.

02:10:59 23            The other part that the Federal Circuit didn't

02:11:01 24    reach because it wasn't before the court is that when

02:11:05 25    ArcelorMittal did this, it knew it had no evidence in the

02:11:08 1   record of literal infringement or commercial success with a

02:11:13 2   nexus, the two specific issues that were remanded.

02:11:16 3          And so we get down to the court here again on

02:11:19 4   the second remand, and we file for summary judgment then,

02:11:23 5   and what does ArcelorMittal do?  It never puts forward or

02:11:27 6   identifies evidence of record that there is some tribal

02:11:32 7   issue.  At that point, it takes a different tact and it

02:11:38 8   argues that the claims that it specifically asked the

02:11:41 9   Federal Circuit to remand in this case were never in this

02:11:46 10  case.

02:11:49 11         So if we go to slide nine, please.

02:11:53 12         Judge Robinson in multiple opinions has pointed

02:11:57 13  out that ArcelorMittal conceded the accused products did not

02:12:01 14  meet the limitation at issue.  This is the 1,500 megapascal

02:12:06 15  requirement.  That was true throughout the case.  If we go

02:12:10 16  to slide 8.

02:12:15 17         As early as August of 2013, Mr. Pritikin who was

02:12:20 18  arguing on behalf of ArcelorMittal said, "I think with

02:12:23 19  respect to AK, Your Honor, I don't think that there is proof

02:12:26 20  that there was infringing product."

02:12:28 21         The only basis they had to maintain suit was

02:12:32 22  this broadening, it wasn't claims 24 and 25 which they knew

02:12:36 23  there was no evidence were infringed, and they knew there

02:12:40 24  was no evidence of commercial success having a nexus.  All

02:12:44 25  they were relying on to maintain suit was something that was

02:12:49  1    clearly impermissible under the statute and under precedent.

02:12:53  2    There has never been a case that's been identified that has

02:12:56  3    provided any support for what ArcelorMittal did for claims 1

02:12:59  4    to 23.

02:13:00  5         THE COURT:  What was the statement made that the

02:13:03  6    plaintiff has pointed out where AK Steel's counsel

02:13:09  7    acknowledged or in the Federal Circuit argument that some

02:13:13  8    products met the 1,500 or greater megapascal?

02:13:22  9         MR. LERNER:  That was in the first appeal.  And

02:13:24 10    Judge Robinson has a footnote in one of her opinions, and I

02:13:28 11    can find it, that clarifies this.  The original case had

02:13:31 12    three defendants, AK Steel one, and then Severstal and

02:13:37 13    Wheeling-Nisshin were two separate companies that were sued

02:13:38 14    together.  Severstal is a steel company, Wheeling-Nisshin

02:13:44 15    provided the aluminum coating.

02:13:44 16         There was a difference between AK Steel's

02:13:47 17    product and Severstal's products in terms of their strength.

02:13:50 18    At the Federal Circuit, there was a combined oral argument.

02:13:53 19    And Mr. Sipes argued for all defendants.  And he made a

02:13:58 20    comment that there was evidence, but that was evidence as to

02:14:01 21    Severstal's product.

02:14:02 22         The Federal Circuit in its opinion in the first

02:14:06 23    case seems to have misinterpreted that comment which Judge

02:14:12 24    Robinson addressed in one of her later opinions.  There has

02:14:15 25    never been any evidence that AK Steel had product that was

02:14:19  1    above 1,500.  I think ArcelorMittal's counsel conceded that

02:14:24  2    in closing argument.  It was clear from the evidence at

02:14:28  3    trial.  And throughout the case, I think Mr. Pritikin's

02:14:33  4    comments reflect this.  There has never been an allegation

02:14:38  5    apart from this seeming misunderstanding by the Federal

02:14:42  6    Circuit because there was this oral argument that any AK

02:14:46  7    Steel had a strength above 1,500.

02:14:48  8              THE COURT:  Certainly not prior to that trial;

02:14:51  9    right?

02:14:52 10              MR. LERNER:  Correct.

02:14:53 11              THE COURT:  There are allegations I think

02:14:56 12    currently.

02:14:56 13              MR. LERNER:  There are allegations, and that's

02:14:58 14    part of the 685 case that is separate from this.  We're

02:15:03 15    seeking fees in the 050 case.  At various points the two

02:15:09 16    have been argued together because of the overlapping issues,

02:15:13 17    they diverge again.  This case ended with no infringement

02:15:17 18    and invalidity of the RE153, and ArcelorMittal has amended

02:15:21 19    the case in the 685 to assert a still reissue of

02:15:26 20    continuation and has argued that later conduct infringes,

02:15:30 21    making an argument, an allegation that there is products

02:15:33 22    over 1,500 now.  That patent didn't issue until 2014, and so

02:15:38 23    we're talking about different conduct there.

02:15:44 24              THE COURT:  And then one thing before I forget,

02:15:47 25    if at some point either today or in the next few days you

02:15:53 1    can find the cite that you were referring to that suggest

02:15:56 2    that what seems like an admission from AK Steel's counsel

02:16:03 3    during Federal Circuit argument was really just talking

02:16:06 4    about a different product, that would be helpful.

02:16:08 5            MR. LERNER:  Yes, Your Honor.

02:16:17 6            So there are really five basis on which we think

02:16:21 7    attorney's fees are appropriate here and the case is

02:16:24 8    exceptional.  It's not a case where the court has to find

02:16:27 9    any one independent and sufficient.  These are five factors

02:16:31 10   and it makes this case unique.  Certainly not common and one

02:16:34 11   that really does stand out.

02:16:36 12           The first is the broadening reissue that we have

02:16:39 13   been discussing.  If we could go to slide four, please.

02:16:49 14           We talked about Judge Robinson's reaction that

02:16:51 15   this is an abuse of process in DI-313, and in slide 5 in her

02:16:57 16   opinion, "The court concluded that ArcelorMittal post-trial

02:17:01 17   strategy offends the fundamental purpose of Section 251,

02:17:06 18   that is, repose."

02:17:09 19           We go to slide 7.  She also thought that the

02:17:14 20   conduct requires deterrents.  She was viewing it through the

02:17:18 21   lens of invalidating claims 24 and 25.  The Federal Circuit

02:17:22 22   disagreed based on the need to look at each claim

02:17:26 23   independently.  But we think the concerns that she voiced

02:17:30 24   which were acknowledged by the Federal Circuit certainly in

02:17:35 25   the 285 context support finding of exceptional case and

02:17:40  1   attorney's fees.

02:17:41  2           The second ground is that from the time of the

02:17:44  3   mandate forward, ArcelorMittal knew there was no evidence of

02:17:48  4   infringement by AK Steel, and no evidence of commercial

02:17:52  5   success having a nexus.  And that is seen in Judge

02:17:56  6   Robinson's opinions where she points out, slide 9, in DI-297

02:18:04  7   and DI-338, that ArcelorMittal concedes that, that there are

02:18:09  8   not accused products that meet the limitations of the 1,500

02:18:13  9   megapascals.

02:18:15 10           And then when the issue of commercial success

02:18:16 11   was briefed by AK Steel, ArcelorMittal never identified any

02:18:19 12   evidence in the trial record to show commercial success

02:18:23 13   having a nexus to the claims.

02:18:24 14           THE COURT:  You're talking about when the

02:18:28 15   commercial success issue was finally addressed at the second

02:18:32 16   remand?

02:18:33 17           MR. LERNER:  Correct.  The way we would look at

02:18:36 18   it, the only time it was substantively addressed, there was

02:18:39 19   never any evidence identified that would support there was a

02:18:43 20   finding of commercial success.  That was after the second

02:18:47 21   remand.  That led to the summary judgement of invalidity and

02:18:51 22   non-infringement that was ultimately affirmed.  So the lack

02:18:52 23   of evidence we think is another ground for an exceptional

02:18:56 24   case finding.  There was no reason for ArcelorMittal, no

02:19:00 25   basis for them to keep pressing this case when they knew

02:19:03 1    there was a limited remand and they had no evidence that

02:19:05 2    could support their claims.

02:19:07 3              THE COURT:  That was assuming that they were

02:19:10 4    acting in good faith on the broadening of reissue or on the

02:19:14 5    reissue, they didn't address those issues because their

02:19:17 6    position was that the claim construction had indeed changed;

02:19:21 7    right?

02:19:23 8              MR. LERNER:  That's right.  And that was their

02:19:25 9    position.

02:19:25 10             THE COURT:  So if they held that position in

02:19:29 11   good faith, that they thought the patent office gave us this

02:19:34 12   and it's presumed to be valid, we're good to go, then the

02:19:41 13   fact that they moved forward without evidence under the

02:19:43 14   prior claim construction doesn't add anything to the

02:19:46 15   assertion that you had about the broadening reissue?

02:19:51 16             MR. LERNER:  Well, on that issue it does not add

02:19:53 17   much, I would agree with that, Your Honor.  It does for the

02:19:56 18   last remand, though, where the Federal Circuit says claims 1

02:20:00 19   to 23 are invalid, all that is left are claims 24 and 25,

02:20:05 20   from that point forward they know there is nothing left.

02:20:08 21             But even before that, it is important we think

02:20:10 22   to separate good faith from exceptional case.  A party can

02:20:16 23   have a belief that they have a patent duly issued by the

02:20:20 24   patent office, but if that case on the patent is

02:20:23 25   exceptionally weak, it can still give rise to an exceptional

02:20:27 1    case.  The Eastern District of Texas has found that in the

02:20:31 2    context of Section 101, not a court that's going out of its

02:20:34 3    way to find exceptional cases.  And we think the same

02:20:37 4    applies here.  For claims 1 to 23, they can articulate a

02:20:41 5    basis, but it's important to recognize, Judge Robinson found

02:20:44 6    no support for it.  The Federal Circuit found no support for

02:20:47 7    it.  And the Federal Circuit we saw roundly said we rejected

02:20:52 8    that very argument in the analogous context of

02:20:54 9    reexamination, it's contrary to the statutory text, there is

02:20:55 10   no precedential support for it, so they made the argument,

02:20:59 11   but it's such a weak argument, we think that even though the

02:21:03 12   Federal Circuit didn't as a penalty invalidate claims 24 and

02:21:08 13   25, it still supports a finding of an exceptional case.

02:21:11 14           If we go to slide 10, one other very important

02:21:15 15   piece of the context here is at the same time this is going

02:21:18 16   on, ArcelorMittal is going to perspective customers of AK

02:21:23 17   Steel and threatening them.  This is a letter from DI-271,

02:21:30 18   Exhibit A, that says, "As our valid customer, we want to

02:21:33 19   inform you of the situation and potential risks associated

02:21:36 20   with using aluminum pre-coated hot rolled or cold rolled

02:21:41 21   steels with UTS of 1,000 megapascals or higher that is not

02:21:46 22   produced by ArcelorMittal.  This is an infringement of

02:21:50 23   ArcelorMittal's Usibor-AS patent, which may result in the

02:21:56 24   company recovering damages and other remedies."

02:21:59 25           So just after the Federal Circuit has affirmed

02:22:01 1    that the claims are limited to 1,500 or higher, issued its

02:22:01 2    mandate, ArcelorMittal is going out to AK Steel's

02:22:03 3    perspective customers, this is from their general counsel,

02:22:05 4    and saying don't buy from them because you may be liable for

02:22:08 5    a patent infringement.

02:22:09 6           This is all based on the 1,000 which there was

02:22:13 7    no legitimate basis for them to believe was supported given

02:22:17 8    that they sought to broaden the patent over a decade after

02:22:21 9    it issued, or approximately a decade after it issued.

02:22:24 10          The Court may appreciate that the past ten years

02:22:29 11   have not been good ones for the U.S. steel industry.  AK

02:22:32 12   Steel was making a product, was selling a product that it

02:22:36 13   gotten a jury verdict and a Federal Circuit judgment

02:22:40 14   supporting, and ArcelorMittal is going out and telling

02:22:43 15   people not to buy from them because they may face liability

02:22:46 16   for patent infringement.  That's again something that we

02:22:49 17   think fits into the analysis here and warrants deterrents.

02:22:53 18          If we go to the next slide, slide 11 --

02:22:56 19          THE COURT:  So you were giving me your five

02:23:00 20   basis.

02:23:00 21          MR. LERNER:  Yes.

02:23:01 22          THE COURT:  And broadening reissue, continuing

02:23:04 23   forward knowing lack of evidence, was the statements to the

02:23:07 24   customers part of that, or number three?

02:23:10 25          MR. LERNER:  That was number three, Your Honor.

02:23:12  1    Thank you.  Number three was improperly threatening

02:23:15  2    perspective customers with the specter of patent

02:23:18  3    infringement liability all the while.

02:23:21  4            And then number four is ArcelorMittal taking a

02:23:24  5    series of inconsistent litigation positions to try to

02:23:28  6    prolong the litigation.  One very clear example is in the

02:23:34  7    second appeal on the reissue patent, they go to the Federal

02:23:38  8    Circuit and say even if only reissue claims 24 and 25

02:23:42  9    remain, there is evidence that those claims were infringed

02:23:44 10    during the time period at issue in the '050 case.  This

02:23:48 11    isn't about later, this is they said the '050 case.  The

02:23:51 12    proper remedy they say is therefore to remand the '050 case

02:23:55 13    so that the district court can address infringement of

02:23:59 14    reissue claims 24 and 25.  The Federal Circuit does what

02:24:03 15    they ask.  They turn around and before this court say claims

02:24:07 16    24 and 25 of the RE153 patent which are the subject of the

02:24:11 17    defendant's motions, or motions for summary judgment, are

02:24:15 18    not and have never been part of the present case.  That yo

02:24:19 19    yo not only took up this Court's time, but was briefed

02:24:22 20    before the Federal Circuit.  The Federal Circuit rejected

02:24:25 21    it.  But this is the kind of inconsistency that just added

02:24:29 22    to the cost of and delay of the litigation.

02:24:32 23            Second is slide 12, with expect to a covenant

02:24:36 24    not to sue.  We talk about the 685 case which was filed in

02:24:42 25    parallel.  ArcelorMittal saw the writing on the wall and

02:24:44 1    wanted to -- wanted to amend the 685 case to put in a

02:24:49 2    different reissue patent, a continuation that they received.

02:24:53 3    They didn't want to moot that case by giving covenant on the

02:24:56 4    RE153, so they asked the court, they said, "Arcelor tenders

02:25:03 5    the covenant conditioned on resolution of its motion to

02:25:06 6    amend the 685 case.  As explained at the hearing, this

02:25:12 7    condition is necessary to avoid mooting the 685 case and

02:25:15 8    thereby divesting the Court of jurisdiction."

02:25:18 9          When the court grants summary judgment before

02:25:21 10   allowing the amendment, if you go to slide 13, on appeal

02:25:24 11   they tell the Federal Circuit the covenant was always

02:25:28 12   unconditional.  They say, "Where a covenant not the sue is,

02:25:32 13   like the covenant in this case, fully executed, 'facially

02:25:36 14   unconditional,' and delivered to the defendants, no

02:25:39 15   extrinsic circumstances, whether 'procedural gimmicks' or

02:25:43 16   otherwise, can vest a federal court with authority to

02:25:47 17   resolve a non-existent controversy."

02:25:47 18         Procedural gimmicks is the favorable dissent

02:25:50 19   that they were citing.  The dissenting judge who they say is

02:25:53 20   in their favor called this a gimmick by them.

02:25:57 21         So they're telling the courts two different

02:25:59 22   things, this Court and the Federal Circuit.  That's another

02:26:01 23   example of the inconsistent positions that have increased

02:26:05 24   costs.

02:26:05 25         THE COURT:  But that position, does the fact

02:26:08 1    that Judge Wallach in his dissent pretty strongly sided with

02:26:15 2    them saying facially that covenant by its terms was

02:26:21 3    unconditional, and recognizing that the letter had some

02:26:24 4    language that was conditional, but the letter also said it's

02:26:28 5    an -- here is an executed covenant that by its terms is not

02:26:33 6    conditional.  Does the fact that Judge Wallach said that in

02:26:37 7    his dissent suggest that maybe this position wasn't quite

02:26:46 8    as, I don't want to say frivolous, but as spurious as you're

02:26:52 9    suggesting?

02:26:52 10          MR. LERNER:  I don't think so.  If you go back

02:26:54 11   to slide 12.

02:26:55 12          THE COURT:  Because I'm not seeing where

02:26:57 13   ArcelorMittal said, specifically said look, this is a

02:27:00 14   conditional covenant, other than -- I get it with the

02:27:03 15   letter, but in the dissent, the judge wasn't seeing that

02:27:08 16   those as being two inconsistent positions.

02:27:12 17          MR. LERNER:  I think the first one there is a

02:27:14 18   dissent, the majority looked at it very differently.  The

02:27:17 19   majority explained that you have to consider all of the

02:27:20 20   evidence together and the cover letter has to be considered

02:27:22 21   together with the attachment to it if it was the covenant.

02:27:26 22          THE COURT:  Doesn't the fact that the dissent

02:27:28 23   tell you that the position was not necessarily unreasonable

02:27:31 24   unless you're telling me that the position in the dissent

02:27:34 25   was unreasonable.

02:27:38  1          MR. LERNER:  I think it's not inconsistent.

02:27:42  2   What the dissent was saying is what ArcelorMittal told this

02:27:46  3   Court was wrong.  The dissent essentially is saying

02:27:50  4   everything you said in this letter was untrue because it

02:27:53  5   wasn't conditioned.  You know, you said it was conditioned

02:27:57  6   but it wasn't.  I think the problem that the dissent doesn't

02:28:01  7   address is judicial estoppel.  They wanted the 685 complaint

02:28:06  8   amended and they couldn't do that if it was mooted.  The

02:28:08  9   only patent asserted at the time was the '153.  So if they

02:28:12 10   gave a covenant not to sue, it would have mooted that case,

02:28:15 11   too.  But they were asking the court to grant them an

02:28:17 12   amendment.

02:28:18 13          And so the only way to understand this is they

02:28:20 14   wanted the case to continue until such time as amendment of

02:28:24 15   the 685 case was granted.

02:28:26 16          THE COURT:  I understand that they were saying

02:28:36 17   we tender this on the condition that the motion to amend is

02:28:40 18   entered.  But could anyone have done anything with an

02:28:45 19   executed covenant that by its terms is not conditional, even

02:28:51 20   if that amendment hadn't been allowed?

02:28:56 21          MR. LERNER:  I'm not sure what position we would

02:28:59 22   have been in at that point.  But I think the fact here is if

02:29:04 23   you accept Judge Wallach, and we submit he was the dissent,

02:29:08 24   so it's less persuasive, it is inconsistent with what this

02:29:12 25   Court was told.  Either way one looks at it, Judge Wallach

02:29:16 1   was saying essentially whatever was said to the district

02:29:19 2   court, the covenant if you ignore the cover letter was

02:29:23 3   unconditional.

02:29:24 4             THE COURT:  He wasn't saying ignore the cover

02:29:26 5   letter.

02:29:26 6             MR. LERNER:  He was saying the cover letter is

02:29:29 7   not part of what you need to interpret to understand the

02:29:31 8   covenant.  But if that was the case then what this Court was

02:29:34 9   being told was incorrect because this Court would have not

02:29:37 10  have had authority to grant an amendment for the 685 case.

02:29:41 11  ArcelorMittal was trying to have it both ways.  And even he

02:29:45 12  had to call it a gimmick.  Again, whether it was successful

02:29:48 13  or not, it is the kind of conduct that prolonged the

02:29:51 14  litigation, led to further appeal, and increased the cost in

02:29:56 15  what the court had to do.

02:29:58 16            But the fifth point and the fifth reason for a

02:30:01 17  finding of exceptional case here is the covenant, setting

02:30:04 18  aside whether it was conditional or not.  This covenant

02:30:08 19  didn't come after trial, before the first appeal, on the

02:30:11 20  initial remand.  If one looks at the course of this

02:30:15 21  litigation, complaint filed 2010; jury trial; ArcelorMittal

02:30:20 22  takes an appeal; effectively loses it; gets a reissue

02:30:24 23  patent; most of that is invalidated; they ask for a remand

02:30:30 24  and they get that.  Only after summary judgment is briefed

02:30:33 25  and AK Steel has demonstrated non-infringement and

02:30:37  1   invalidity based on obviousness, do they come in say well,

02:30:41  2   maybe we'll give you a covenant and then only after the

02:30:45  3   briefing is done did they say whether conditional or not,

02:30:47  4   here is a covenant not to sue.  That itself gives rise to

02:30:51  5   exceptional case when you take into account the fact that

02:30:54  6   that covenant wasn't intended to bring peace to this

02:30:57  7   dispute, that covenant was intended once again through a

02:31:01  8   different procedural mechanism to undo the original case and

02:31:05  9   avoid the preclusive effects of the original judgment so

02:31:08 10   they could pursue the 685 case without estoppel effects.

02:31:14 11   That's what it was all about.

02:31:15 12           And that we think is a very serious misuse of

02:31:19 13   covenants.  If they wanted to give peace, that would be one

02:31:23 14   thing, but having done it on the cusp of summary judgment,

02:31:27 15   after a jury verdict, after multiple appeals, that's

02:31:30 16   something else that takes this case far outside the

02:31:33 17   mainstream.  And again, they only did it because they had no

02:31:36 18   substantive response to the summary judgment motion.

02:31:38 19           So for those five reasons we think this is an

02:31:41 20   exceptional case.  Whether or not any one independently

02:31:44 21   would make it exceptional the court need not decide if the

02:31:48 22   totality of the circumstances, this really is a special

02:31:50 23   case.  As I said, we're not seeking attorney's fees for the

02:31:54 24   time up through the first trial.  We got a jury verdict of

02:31:58 25   non-infringement of invalidity.  That was largely affirmed.

02:32:01 1    If that were where the case ended, we wouldn't be here

02:32:04 2    asking for attorney's fees.  It's all of the games that have

02:32:07 3    played since then to prolong the litigation while all of AK

02:32:13 4    Steel's customers have been threatened.

02:32:16 5         If we go to 15, a good place to end is

02:32:21 6    commentary from Judge Moore during the third appeal where

02:32:25 7    the court was being confronted with these issues of subject

02:32:31 8    matter jurisdiction.  She said, So, I don't know why the

02:32:34 9    heck you're standing here and taking up all this time on

02:32:36 10   these two claims, because they're clearly invalid.  So why

02:32:41 11   are we here?  Tell me why I'm spending my morning discussing

02:32:45 12   subject matter jurisdiction with you and you're fighting me

02:32:49 13   over these two claims which have not the sliverest of hope

02:32:54 14   of being held not obvious."

02:32:54 15        That's the finding, that's what they were trying

02:32:56 16   to avoid with the covenant not to sue.  That's going to have

02:32:57 17   an effect on the 685 case.  The estoppel effect of

02:33:02 18   invalidity is something that we think will be very

02:33:04 19   significant and probably determinative, although that's a

02:33:07 20   topic for another day, but all the while they were

02:33:10 21   litigating on these patents that the court recognized

02:33:13 22   haven't the sliverest chance of being held nonobvious.

02:33:17 23        So for all these reasons we think that after the

02:33:20 24   Federal Circuit's mandate in the original case issued and

02:33:24 25   ArcelorMittal tried to make an end run around that through

02:33:28 1    the improper reissue, from that time forward the case was an

02:33:34 2    exceptional one.

02:33:35 3                    Thank you.

02:33:36 4                    THE COURT:  Thank you.

02:33:38 5                    MR. ABRAMS:  Could you turn to your slide 2 for

02:33:41 6    me, please.

02:33:43 7                    Good afternoon, Your Honor, Hugh Abrams on

02:33:46 8    behalf of the plaintiffs.

02:33:47 9                    THE COURT:  Good afternoon.

02:33:48 10                   MR. ABRAMS:  I point to defendant's slide which

02:33:50 11   is a litigation timeline.  And what I find interesting is

02:33:55 12   that missing completely is the decision of the Federal

02:34:00 13   Circuit from last month in 2018.  The case as far as they're

02:34:06 14   concerned stopped in 2017.

02:34:08 15                   What's critical about the decision of the

02:34:11 16   Federal Circuit in what we have now called ArcelorMittal IV

02:34:15 17   on November 5th, is it confirms that ArcelorMittal has had

02:34:21 18   and still has a good faith basis for pursuing this

02:34:26 19   litigation.

02:34:26 20                   What the Federal Circuit said is that -- and I'm

02:34:30 21   going to turn over to our side.  The Federal Circuit said

02:34:34 22   that in the 685 case, there is evidence that AK Steel is

02:34:40 23   infringing.  They're saying you have a good faith basis to

02:34:44 24   go forward and you're entitled to discovery on it.  That

02:34:47 25   evidence that they're referring to was put forward in 2013.

02:34:53   1    In other words, we came to the court and we said there is

02:34:57   2    new evidence showing that now after the trial, AK Steel has

02:35:01   3    changed its process.

02:35:02   4          And I'll go through it in a second and explain a

02:35:05   5    little bit about the process differences, but AK at the time

02:35:08   6    of the first trial was only selling experimental product.

02:35:12   7    And then after the trial was over, AK then went and sold

02:35:17   8    commercial product to commercial hot stampers.  What we did

02:35:22   9    is we came in and we said to the court, we put in a

02:35:25  10    declaration which the Federal Circuit refers to from

02:35:28  11    Mr. Millius where he says there is evidence that steel from

02:35:31  12    AK is being hot stamped and it's ending up at General

02:35:36  13    Motors, automotive manufacturer, and the General Motors

02:35:39  14    slide which is attached to Mr. Millius' declaration says it

02:35:44  15    exceeds 1,500.

02:35:45  16          So we told the court look, there is now evidence

02:35:49  17    that they're doing something different.  And the whole

02:35:52  18    dispute what it came down to was this idea of oh, no, in

02:35:57  19    this first case, in the 050 case, Judge Robinson said, and

02:36:02  20    this was in her discretion, we're going to limit you to the

02:36:05  21    record that was at the first trial.  And we said fine, Your

02:36:08  22    Honor, but there is this new record and so when we talk

02:36:10  23    about commercial success and we talk about infringement, et

02:36:13  24    cetera, there is all this other stuff that's now going on in

02:36:16  25    the field.

02:36:17  1          What's important about what the Federal Circuit

02:36:19  2    says in the ArcelorMittal IV case is is that yes, Judge

02:36:24  3    Robinson said you can't do this, you can't do that, but her

02:36:27  4    concerns were all unfounded.  The court says specifically

02:36:30  5    you, ArcelorMittal, are entitled now today in 2018 to

02:36:35  6    discovery on this very issue of whether or not they're

02:36:40  7    selling steel above 1,500.

02:36:42  8          So I find it unfortunate that counsel for AK

02:36:47  9    Steel would stand up here and say -- I wrote down -- that

02:36:50 10    this case would have ended years ago.  No, it wouldn't have.

02:36:54 11    This case has gone on because in -- we put into the record

02:36:58 12    in 2013 this evidence of infringement that finally the

02:37:03 13    Federal Circuit is now saying, oh, hey, you were right,

02:37:07 14    you're entitled to discovery on that.

02:37:10 15          So the whole premise of AK's motion, this idea

02:37:15 16    that ArcelorMittal prolonged this litigation, we stretched

02:37:18 17    things out, we did this, we did that, is just not true based

02:37:22 18    on what the Federal Circuit is now saying in ArcelorMittal

02:37:24 19    IV.

02:37:24 20          And that's not discussed at all by AK Steel.

02:37:28 21          THE COURT:  With respect to what you just said,

02:37:33 22    it seems to me, and I'm looking at slide 11 of defendant's

02:37:41 23    presentation, that ArcelorMittal was telling the Federal

02:37:45 24    Circuit not what you just told me which is we think that

02:37:48 25    they changed their product later, but that during the time

02:37:55 1   period at issue in the earlier case, there was evidence of

02:38:02 2   infringement.  So how is that consistent with -- how is that

02:38:06 3   not -- how is that not untrue?

02:38:10 4           MR. ABRAMS:  Well, there was evidence of

02:38:14 5   infringement, we believe under the Doctrine of Equivalents

02:38:15 6   and that's where we are and we lost.

02:38:17 7           THE COURT:  Not on remand.  There was a remand

02:38:21 8   for talking about literal infringement and commercial

02:38:24 9   success.  And that's where Judge Robinson invalidated the

02:38:27 10  claims, all the claims for the reissue.  When that was

02:38:31 11  appealed, and maybe we can pull up, please, if we could,

02:38:38 12  defendant's slide 11.

02:38:41 13          MR. ABRAMS:  Sure.

02:38:41 14          THE COURT:  This is from your client's brief on

02:38:45 15  the left there on that second appeal.

02:38:48 16          MR. ABRAMS:  Correct.

02:38:48 17          THE COURT:  And it says even if only reissue

02:38:51 18  claims 24 and 25 remain, there is evidence that those claims

02:38:55 19  were infringed during the time period at issue in the 050

02:39:00 20  case.  And that doesn't sound like you're telling them oh,

02:39:03 21  we think there is evidence they changed their process later,

02:39:06 22  it sounds like you're saying no, we actually have evidence

02:39:10 23  that those claims were infringed at the time.  Isn't that

02:39:14 24  what that says?

02:39:15 25          MR. ABRAMS:  Well, what we were saying is that

02:39:17   1    reissued claims, we thought 24 and 25, would remain in the

02:39:21   2    casing regardless even if the Federal Circuit invalidated

02:39:24   3    them.   But yes, we felt there was evidence of infringement

02:39:27   4    and that was the evidence I'm talking about.   We gave that

02:39:30   5    evidence to the court.   This is dated in 2014.   You can see

02:39:33   6    on the brief.   As of 2013, we had given evidence to say

02:39:37   7    there is evidence that they're infringing.

02:39:40   8             The question was how are we going to be able to

02:39:43   9    get it into the record in 050.   What was happening is Judge

02:39:47  10    Robinson was saying I'm not going to let you reopen the

02:39:50  11    record in 050.   And we said wait a minute, now we have got

02:39:54  12    all this new evidence.   And so that's why we say here the

02:39:57  13    remedy is to remand --

02:39:58  14             THE COURT:   Wait.   Could I ask you one thing

02:39:59  15    before you continue.   Could you move the microphone away.

02:40:03  16    You're getting loud and it sounds like you're yelling.   It's

02:40:06  17    okay.

02:40:07  18             MR. ABRAMS:   Sorry.

02:40:08  19             THE COURT:   Does it not stay up?

02:40:12  20             MR. ABRAMS:   There it goes.

02:40:14  21             THE COURT:   I turned the volume down, now I

02:40:17  22    probably won't be able to hear you.

02:40:19  23             But what I'm not understand is what does the

02:40:22  24    phrase during the time period at issue in the 050 case mean?

02:40:27  25    And how is it consistent that you then later said, oh, yeah,

02:40:31 1    we never asserted those claims in the 050 case?

02:40:35 2            MR. ABRAMS:  Well, I would have to look at the

02:40:38 3    specific brief on this to be honest.  What I believe --

02:40:41 4            THE COURT:  You know this brief is at issue for

02:40:43 5    this argument today and they made this argument all over

02:40:47 6    their briefs.

02:40:48 7            MR. ABRAMS:  Our position is that when we're

02:40:50 8    talking about that evidence, we're saying we attempted to

02:40:52 9    put in, we have been attempting to put evidence into the 050

02:40:56 10   case which shows that there is still infringement of these

02:40:59 11   claims, which would be above 1,500.  So our point is even if

02:41:05 12   only 24 and 25 remain, which everyone I think agreed

02:41:10 13   required over 1,500, we were saying there is evidence that

02:41:13 14   those claims were infringed during the time period at issue.

02:41:17 15   In other words, not in the record, but saying when that --

02:41:20 16   during the period of time from the beginning up until today.

02:41:25 17           I mean, our point -- I mean, if you'll go back

02:41:27 18   and look at the position we took, they pointed to

02:41:30 19   Mr. Pritikin, he said -- we said to the court, there is no

02:41:33 20   evidence of AK Steel itself having something greater than

02:41:37 21   1,500.  And what is unfortunate is that they cut the rest of

02:41:40 22   that.  So what Mr. Pritikin then says is well, Your Honor,

02:41:44 23   we can either reopen the record in 050 and hear the new

02:41:48 24   evidence based on this, or we can just go to the new case,

02:41:52 25   the 685 case in which we brought a new case, so we can go

02:41:56  1    with that case.  We were saying we could go either way.

02:41:59  2           Now, what our point was in terms of claims 24

02:42:02  3    and 25 was they were not -- they never existed at the time

02:42:08  4    of the first trial.  In terms of the claims that were

02:42:11  5    asserted, it was claims 1, 2, 5, et cetera.  Claims 24 and

02:42:16  6    25 came later.

02:42:17  7           THE COURT:  But there was no dispute that those

02:42:19  8    had the same breadth as claims that were asserted.  I

02:42:25  9    thought that was agreed upon and even quoted in the Federal

02:42:29 10    Circuit opinion.

02:42:29 11           MR. ABRAMS:  There is a dispute on that in the

02:42:31 12    sense that we believe that those are different claims.  They

02:42:34 13    have additional requirements to them.  And so, I mean Judge

02:42:38 14    Moore can say it hasn't the sliverest chance of being held

02:42:44 15    valid.  The fact is those claims went before the patent

02:42:47 16    office, all the art was given to the patent office.  There

02:42:50 17    is no dispute, there is no allegation here that

02:42:52 18    ArcelorMittal withheld anything or did anything improper, so

02:42:55 19    those are presumptively valid and we believe we would

02:42:59 20    succeed in that.  Not only that, we believe we succeed on a

02:43:03 21    commercial success case because since the time of the first

02:43:06 22    trial, the hot stamping business has gone bananas as a

02:43:10 23    result of this patent and as a result of this technology.

02:43:13 24    In fact, AK Steel has even recently spent I think tens of

02:43:18 25    millions of dollars buying a big stamping operation so that

02:43:22 1   they can be involved in the stamping.  That all goes to the

02:43:25 2   commercial success.

02:43:26 3        So the problem we had was Judge Robinson was

02:43:28 4   saying to us, I'm going to limit you, or effectively saying

02:43:31 5   I think it's the original record, which as we said, that's

02:43:35 6   her discretion.  Our position was we should be able to if

02:43:38 7   judge, now on remand we're going to consider commercial

02:43:41 8   success, we ought to be able to put into evidence at least,

02:43:44 9   for example, this declaration from Mr. Millius that shows

02:43:48 10  that they are now selling steel that infringes.  And she

02:43:53 11  said effectively no.  And so we said fine, we would go with

02:43:57 12  the 685 case.

02:43:58 13       And then we went to the 685 case.  Judge

02:44:01 14  Robinson said no, I'm going to say that there is no evidence

02:44:07 15  in there of infringement.  We were like we have the same

02:44:10 16  Millius declaration, we have declaration of counsel saying

02:44:15 17  here is the discovery we should take.  She says no.  I'm

02:44:20 18  going to deny that.  That goes up on appeal and now the

02:44:23 19  Federal Circuit says no, ArcelorMittal was correct, you are

02:44:26 20  entitled to have some discovery and this is the discovery

02:44:29 21  that you can take and you brought it.

02:44:30 22       So my point is with ArcelorMittal IV, what it

02:44:33 23  tells us is that our position all along has been that this

02:44:39 24  evidence that we present in 2013, based on that we believe

02:44:44 25  we have a good faith basis to pursue a claim of

02:44:47  1    infringement.  And the Federal Circuit has said yes, you do.

02:44:50  2         So when counsel for AK says well, this case

02:44:53  3    would have ended, it all would have gone away, we spent all

02:44:58  4    this money, I find that amazing that he would make that

02:45:01  5    comment given that the Federal Circuit says we're still

02:45:05  6    going forward now and we're going to be going forward

02:45:08  7    because there is a remand coming.  And we expect Your Honor

02:45:11  8    will get the case given that it's related to this one.

02:45:16  9         And second, when counsel says well, you

02:45:20 10    ArcelorMittal, you went out and told the customers that they

02:45:22 11    were infringing.  Well, because we have the Millius

02:45:25 12    declaration which said you're selling to GM above 1,500.

02:45:30 13         THE COURT:  But that letter that was shown to me

02:45:32 14    didn't say and now they have product that meets the 1,500.

02:45:40 15         MR. ABRAMS:  No, it didn't.

02:45:41 16         THE COURT:  It said 1,000, and 1,000 was not

02:45:43 17    what the Federal Circuit had interpreted the claims to say.

02:45:46 18         MR. ABRAMS:  Absolutely, Your Honor.  You're

02:45:48 19    absolutely right.  I think that is correct.  But my point is

02:45:51 20    we certainly had a right to send a letter out and say look,

02:45:55 21    we're pursuing infringement of this patent.

02:45:57 22         THE COURT:  But you were saying you were

02:46:00 23    pursuing infringement for things that you knew from the

02:46:05 24    Federal Circuit weren't covered.

02:46:06 25         MR. ABRAMS:  Well, at the time, that was before

02:46:09 1   the second case.  What happened was on the remand, we never

02:46:12 2   argued to this Court that the claims are completely

02:46:15 3   different, the construction, what we said was there are

02:46:18 4   exceptions to the mandate rule and we said we gave Federal

02:46:22 5   Circuit and Third Circuit authority saying when there is new

02:46:27 6   evidence, then the mandate, there is an exception to the

02:46:29 7   mandate rule.

02:46:30 8       We then pointed out there are several cases we

02:46:33 9   cited, the Eolas case, the Fresenius case, where -- and even

02:46:38 10  the Golden Bridge case which is a case out of Delaware where

02:46:42 11  the courts have said subsequent prosecution history whether

02:46:45 12  the process -- whether there is a situation where things

02:46:49 13  have occurred subsequent to a Federal Circuit ruling, you

02:46:52 14  can consider that, or should consider it.

02:46:55 15      And so our position with the court we came in

02:46:58 16  and said, I don't think there is an exception to the mandate

02:47:02 17  rule.  We went in and we were entitled to go find -- go move

02:47:06 18  for a reissue.  What we did on the reissue, if I can put up

02:47:09 19  our slide here, jump ahead to, if I can get slide nine,

02:47:25 20  please.  The original claim said very high mechanical

02:47:29 21  resistance.  So we had a Federal Circuit ruling where in

02:47:34 22  dissent Judge Wallach said I agree with ArcelorMittal that

02:47:39 23  very high mechanical resistance is not limited to 1,500,

02:47:43 24  that there is evidence in the specification that says it can

02:47:46 25  support 1,000.  He was the dissent.

02:47:49 1          THE COURT:  But the majority said no, that's not

02:47:51 2     it.

02:47:52 3          MR. ABRAMS:  But we took that and we gave that

02:47:54 4     to the patent office along with -- what we did was we added

02:47:57 5     a new claim 23 and 24.  And in 23 we said 1,000 MPa and in

02:48:02 6     24 we said 1,500.  And there is -- and the Federal Circuit

02:48:05 7     has said that there is -- as you pointed out, there is no

02:48:09 8     allegation here that we did anything improper.

02:48:12 9          After we get the reissue, which I think we're

02:48:14 10    entitled to get a reissue, we came to the court and the

02:48:17 11    counsel for AK says, well, there is no reason, no one could

02:48:21 12    even possible allege that claims 1 through 23 are not

02:48:24 13    invalid.  I disagree.  Judge Robinson could have said claim

02:48:29 14    1 has been resolved with my construction, it's been

02:48:33 15    confirmed, it's limited to 1,500.  I'm not going to -- it's

02:48:37 16    not broader, it stays at 1,500.  Claim 23, that's invalid

02:48:42 17    because now claim 23 you have broadened.  Claim 24 and claim

02:48:47 18    25, those -- so Judge Robinson could have said claims 1

02:48:52 19    through 22 stay the same construction, the 1,500.  And, in

02:48:58 20    fact, I believe it was AK that actually put into a brief

02:49:01 21    that that is one option that the court had.  The.

02:49:04 22         Second option Judge Robinson could have done is

02:49:07 23    say okay, I'm going to reconsider this.  I'm going to take a

02:49:11 24    look at this, and based on what you have said, there are no

02:49:14 25    cases, none, that say that this is somehow improper.  What

02:49:18 1    the cases say is you don't look at necessarily a claim

02:49:22 2    differentiation issue such as 1,000 MPa, it doesn't

02:49:28 3    necessarily trump other claim construction points, but our

02:49:31 4    point was look, this claim construction was disputed,

02:49:34 5    strongly disputed.  In fact, we had a Federal Circuit judge

02:49:37 6    who came out on our side.  There is nothing in the claim

02:49:40 7    itself, claim 1 itself that says 1,000.  That was the

02:49:44 8    court's ruling, which we respect, but we think the judge

02:49:47 9    said no, I'm not going to reconsider that.

02:49:50 10        But then what Judge Robinson said is she said

02:49:52 11   I'm going to go and I'm going to invalidate claims 24 and 25

02:49:57 12   because I think what you're doing is an abuse of the

02:50:01 13   process.  These statements that the other side points to

02:50:04 14   relate to Judge Robinson saying the whole patent goes,

02:50:06 15   claims 1 through 25, it all goes.

02:50:09 16        Back to your very first question, Your Honor,

02:50:11 17   when you said why didn't AK pursue commercial success on

02:50:15 18   remand.  The reason was because AK came in with all guns

02:50:19 19   blazing saying this patent is invalid, they have broadened

02:50:22 20   all the claims, the whole thing is invalid.  And Judge

02:50:26 21   Robinson agreed.  And she wiped out claims 1 through 25.

02:50:30 22        THE COURT:  If they didn't come in and move for

02:50:32 23   summary judgment on invalidity based on the reissue, they

02:50:34 24   had a pretty straightforward brief and they said look, here

02:50:37 25   is the record evidence and we don't meet this element.

02:50:41  1          MR. ABRAMS:  Their first brief, when we filed

02:50:44  2     the new case, their first move was to file almost

02:50:48  3     immediately a motion to dismiss and it was a motion to

02:50:50  4     dismiss based on a broadening claim construction.

02:50:53  5          THE COURT:  But their summary judgment motion,

02:50:55  6     the one that you just said they were guns blazing and they

02:50:58  7     said this patent is invalid, their summary judgment motion

02:51:02  8     was a motion for non-infringement, summary judgment of no

02:51:05  9     infringement based on the record evidence saying there is no

02:51:08 10     evidence that you meet that 1,500 MPa limitation, so I'm

02:51:14 11     still not sure I understand how we never dealt with

02:51:16 12     commercial success.

02:51:16 13          MR. ABRAMS:  I think the answer is when AK came

02:51:19 14     into court and argued this, they convinced Judge Robinson

02:51:22 15     that the broaden issue is that the broadening claims is the

02:51:25 16     more important issue and she decided she was going to

02:51:28 17     invalidate all the claims and she found everything else

02:51:31 18     moot.  So she never reached that commercial success in the

02:51:35 19     first case, she never reached the non-infringement.  We had

02:51:38 20     filed a motion to amend and she said that's moot because I'm

02:51:43 21     invalidating all the claims of all the patents.  We came

02:51:45 22     back -- actually there was a point when we came back and

02:51:49 23     said judge, are you sure you're invalidated 24 and 25,

02:51:54 24     because AK never asked for an invalidation of those two.

02:51:57 25     And she came back with a ruling and said I most certainly am

02:51:59 1    invalidating 24 and 25.  And that was went out on appeal in

02:52:03 2    the ArcelorMittal case.

02:52:05 3          THE COURT:  But when AK in its briefs before

02:52:10 4    Judge Robinson on the non-infringement issue, when they

02:52:12 5    mentioned claims 24 and 25, they said we think these claims

02:52:16 6    should be invalidated on the remand under the obviousness

02:52:20 7    portion of the remand, and ArcelorMittal didn't disagree

02:52:24 8    with that and didn't say oh, there is no jurisdiction or

02:52:28 9    anything like that.  Right?

02:52:30 10          MR. ABRAMS:  Correct.  Our only response I

02:52:34 11    believe was about the claim construction and everything

02:52:35 12    else.  I don't believe we ever argued on that.  What

02:52:37 13    happened then is when the case came back, we realized that

02:52:42 14    we, ArcelorMittal, realized we weren't going to get -- you

02:52:46 15    know, we decided we better go with the 685 case and we ought

02:52:50 16    to go with the RE940 patent.  We came into court and I stood

02:52:56 17    in Judge Robinson's courtroom in this hall, I'm the one who

02:53:00 18    said to her, Your Honor, we're the ones who are giving them

02:53:03 19    a free ride.  We are not going to assert claims 24 and 25.

02:53:07 20    Yes, those claims were part of the case because Judge

02:53:10 21    Robinson had made them part of the case.  And it went on

02:53:13 22    appeal.  So when judge Moore says, well, what the heck, what

02:53:16 23    are you talking about?  Of course it was before on the case,

02:53:20 24    because Judge Robinson had invalidated it.

02:53:21 25          Our position was, we said Your Honor, we had

02:53:24 1    never asserted those claims, we only asserted 1, 5, 7, 9.

02:53:29 2    That was in the pretrial order.  That's in the appeal,

02:53:32 3    everything.  So we came back in and we said look, we don't

02:53:36 4    want to go forward with 24 and 25.  We would like to go

02:53:39 5    forward with the other case.  I said we're going to give

02:53:42 6    them a free pass.  I said we'll get a covenant against suit,

02:53:46 7    we'll get one signed, we'll bring it in.  We got a draft.

02:53:49 8    The other side didn't like it.  They came back, we wanted

02:53:51 9    this or that.  If you look at Mr. Bove's letter it talks

02:53:55 10   about now we have added the customers and this and that.

02:53:57 11           And our point with that was just saying well,

02:54:00 12   judge -- and in retrospec we were wrong.  We thought well,

02:54:04 13   gosh, if you don't quote enter it, you can avoid mooting the

02:54:08 14   685 case, we said otherwise we'll just have to re-file the

02:54:12 15   case which we did do and we'll do, that's fine, we thought

02:54:15 16   administratively ironically in retrospect we're saving the

02:54:21 17   court problems.  It was Judge Robinson who said if you filed

02:54:24 18   the covenant it would have gotten the case opened.  So had

02:54:28 19   we just filed it and --

02:54:28 20           THE COURT:  Had you not told the Federal Circuit

02:54:30 21   to remand on claims 24 and 25.

02:54:32 22           MR. ABRAMS:  It had to remand on those claims,

02:54:34 23   Your Honor, because at that point in time those claims went

02:54:37 24   up there and the court was deciding that it wasn't going to

02:54:40 25   -- it was going to reverse on invalidity.  It had to do

02:54:43 1    something with that.  It couldn't just toss them aside.  And

02:54:46 2    at that point we had yet to move to amend to add the '940

02:54:50 3    patent, we hadn't decided what we were going to do.

02:54:53 4          THE COURT:  But you asked to have them remanded

02:54:54 5    to deal with the infringement issue.  I suppose you could

02:54:57 6    have just said we can't find them invalid because there is

02:55:01 7    no subject matter jurisdiction, you could have raised that

02:55:04 8    with the Federal Circuit, too; right?

02:55:06 9          MR. ABRAMS:  There certainly was, yes, we could

02:55:08 10   have.  I think our feeling at the time was the judge brought

02:55:11 11   them into the case with her motion, we did not argue

02:55:14 12   jurisdiction.  Our pitch on jurisdiction was just we never

02:55:17 13   asserted them, that's why we didn't see why we had to go

02:55:21 14   forward with them on the case.  When we came back, we said

02:55:24 15   look, we never asserted those claims.  We don't intend to

02:55:28 16   assert them.  We'll give them a covenant, but they were part

02:55:31 17   of the case, that's true.

02:55:33 18         THE COURT:  Is it true you didn't give them a

02:55:35 19   covenant until well into that remanded case and after all

02:55:39 20   the summary judgment briefing was done?

02:55:44 21         MR. ABRAMS:  I don't believe so, Your Honor.  I

02:55:47 22   believe that was the first point we raised.  The short

02:55:50 23   answer to the question is yes, in terms of the first -- I

02:55:52 24   think it was the first hearing where I stood up and said

02:55:56 25   we're not asserting them, we'll give them a covenant, we'll

02:55:59  1    resolve it that way.  I think it was Judge Moore in the

02:56:02  2    Federal Circuit said, we told Judge Moore, counsel said

02:56:05  3    we're not going to pursue this, and Judge Moore said lawyers

02:56:09  4    say some things one day and other things another day.

02:56:13  5          I don't know, to me when I stood in court saying

02:56:16  6    we're not asserting those claims, I thought it was a done

02:56:19  7    deal.  I thought it was over.  Covenant and not, I couldn't

02:56:23  8    see myself coming back in and saying changed my mind, we're

02:56:27  9    going to assert those claims.  It was just a question of

02:56:28 10    getting -- our client was in Europe, we had to get

02:56:31 11    signatures on it.  There was a whole fight about oh, well,

02:56:34 12    your covenant doesn't refer to the customers so we redrafted

02:56:38 13    and said okay, we'll put the customers in.  So in terms of

02:56:41 14    actually giving them a signed covenant laying it on the

02:56:45 15    table, that took some time.  But there was never at any

02:56:48 16    point during that -- I mean, our goal was to get rid of that

02:56:50 17    case.  It wasn't to extend it.  Our goal was we wanted to go

02:56:54 18    forward with the other case.  And so that was the point that

02:56:56 19    we were pursuing with that.

02:57:00 20          Your Honor, if I could give you a little bit,

02:57:03 21    maybe since -- I don't know how much versed you are in steel

02:57:08 22    processing and all that, maybe a couple of minutes on the

02:57:11 23    technology in the case.  If we could go to claim slide 2.

02:57:30 24          What these claims are effectively -- you have

02:57:33 25    the slides in front of you.  Slide 2 is the product by

02:57:37 1   process claim slide.  What we're showing here is that just

02:57:39 2   to give you a sort of 40,000 foot view or whatever, what

02:57:44 3   these claims are talking about is taking a processing steel

02:57:48 4   and then a stamping operation so that what you end up with

02:57:51 5   are components such as these frames.  They call them pullers

02:57:55 6   or frames or bumpers in the car such as what's in red.  This

02:57:58 7   is from the -- from the AK Steel brochure which is part of

02:58:03 8   the case and is discussed in the Federal Circuit.  And those

02:58:06 9   areas need to be very, very high strength so when you get

02:58:10 10  into a crash.

02:58:11 11       So what this -- what these claims are and this

02:58:14 12  technology is directed to providing steel for that.  If we

02:58:17 13  could go to the next slide.

02:58:18 14       What you'll find is there is a whole rack of

02:58:26 15  composition elements in the claim.  That's what's on the

02:58:29 16  left side.  Those are in all claims.  There are amounts for

02:58:34 17  manganese, silicon, et cetera.

02:58:35 18       AK, there is no dispute, AK makes that precise

02:58:41 19  product.  That make a steel that falls right within all

02:58:45 20  those levels.  From the brochure itself, I'll hand a copy of

02:58:48 21  that up in a bit, the brochure, they use boron which is the

02:58:52 22  key element here, and the other elements all fall within,

02:58:56 23  there is no dispute on that, that's been litigated.

02:58:58 24       As you may know, in steel operations what it

02:59:02 25  involves is you melt the steel and you pour it out in what's

02:59:06 1   called a hot rolling operation.  You cast it and then you

02:59:10 2   roll it down, so you're taking a big block of steel that's

02:59:13 3   on the left, you're making it much thinner and so you roll

02:59:17 4   it a number of times.  And then you end up with cold rolled

02:59:20 5   steel, you roll it on rollers when it's at room temperature.

02:59:24 6   This is how the steel is made by AK Steel, no question, no

02:59:28 7   dispute.  In the claim terms you find talk about hot rolling

02:59:31 8   and cold rolling, and there was a lot of dispute in this

02:59:34 9   first round about this.

02:59:35 10          Another aspect of the claim is there an aluminum

02:59:39 11  alloy coating.  What the patent talks about is putting a

02:59:44 12  coating over the steel before you do all the hot stamping

02:59:46 13  and that's because that helps prevent decarburization and

02:59:51 14  helps prevent oxidation of the steel.  And you'll find that

02:59:55 15  AK uses that.  And they have a metallic coating and they

02:59:59 16  actually in their brochure it says it prevents against

03:00:04 17  decarburization and oxidation.

03:00:05 18          So the next step is where the issue comes to

03:00:07 19  play is after AK makes that steel and makes it in a roll,

03:00:11 20  what they do is they have sold the steel.  It's not sold at

03:00:15 21  Home Depot or at a lumbar yard, it's sold specifically.  AK

03:00:20 22  will sell to a customer such as Ford and then they'll ship

03:00:25 23  to a particular hot stamper that Ford has picked out for

03:00:29 24  them.

03:00:29 25          So I can hand up one of the invoices.  What

03:00:32  1   you'll see is it says AK is selling for a bumper and it

03:00:37  2   ships for this hot stamper.  They're the ones, the hot

03:00:40  3   stampers, they take it and they do this hot stamping

03:00:44  4   operation that gets you to the coated sheath and this

03:00:49  5   martensitic structure.  In AK's own brochure they talk about

03:00:53  6   hot stamped parts.  This is what we do, we make hot stamped

03:00:56  7   parts.  This is how we form them.

03:00:58  8          And so the reason I point this out is because

03:01:01  9   it's interesting that Mr. Sipes who was the previous counsel

03:01:06 10   or co-counsel with Mr. Learner had repeatedly, repeatedly

03:01:10 11   told the court we don't make any steel, we don't make

03:01:14 12   anything that is above 1,500, nothing above 1,500.  In fact,

03:01:17 13   it turns out that the current specifications, for example,

03:01:21 14   for Ford, include steels above 1,500.

03:01:24 15          And when Mr. Sipes was before the Federal

03:01:27 16   Circuit argument on ArcelorMittal IV, the Federal Circuit

03:01:30 17   asked him and said well, does the AK Steel meet 1,500?  And

03:01:35 18   he said well, we don't know.  And he said well, but you sell

03:01:39 19   for these specifications.  And he said yes, we sell for

03:01:42 20   those specifications, so it has to meet that.  So what

03:01:45 21   you're saying, counsel for AK admitted that their steel is

03:01:50 22   capable of making it above 1,500.

03:01:51 23          So it's interesting when AK argues that all

03:01:55 24   these years this case would have gone away, would have gone

03:01:59 25   away, the reality is AK has been selling since late 2012

03:02:04  1    commercial steels to hot stampers where the hot stampers

03:02:08  2    stamp and it exceeds 1,500 and then they send it to the

03:02:13  3    automakers.  That is the infringement that has been going

03:02:16  4    on.  So it's our position that we have a good faith basis to

03:02:19  5    pursue that either -- and that's what we continue to pursue.

03:02:23  6    And we think that that is where the Federal Circuit's

03:02:27  7    decision is very telling from our standpoint.

03:02:30  8            But, Your Honor, let me just hit a couple of

03:02:33  9    other points if I could about the issue in terms of the

03:02:37 10    other points that were raised.  One was the fact that -- if

03:02:43 11    we could go to slide -- the next slide, please.  And the

03:02:51 12    next one.

03:02:54 13            In the ArcelorMittal II, which is the case that

03:02:57 14    was after the reissue, the Federal Circuit vacated the sua

03:03:04 15    sponte finding of invalidity and said there is no allegation

03:03:07 16    or evidence that ArcelorMittal acted with deceptive intent

03:03:10 17    or submitted a deceptive reissue application.  And the

03:03:14 18    Federal Circuit declined AK's invitation to reach the merits

03:03:18 19    of invalidity/non-infringement.

03:03:21 20            So to your point, Your Honor, when it went to

03:03:22 21    the Federal Circuit on appeal, AK said well, claims 24 and

03:03:26 22    25, you can still invalidate those or find non-infringement

03:03:30 23    based on the record, you can still do that.  And, in fact,

03:03:35 24    you know they have done all these bad things.  Even if

03:03:37 25    you're not going to invalidate them on the reissue point,

03:03:41  1   you can invalidate them or find non-infringement.  And the

03:03:44  2   Federal Circuit said no, we decline your invitation to reach

03:03:48  3   the merits on those issues.  So they sent it back.

03:03:52  4          I think our basic point on the reissue is that

03:03:56  5   we're entitled to seek a reissue and we did it properly.  We

03:04:00  6   prepared issues as to why we felt it was an exception to the

03:04:03  7   mandate rule.  We were wrong.  We lost that issue.  But we

03:04:08  8   did it in good faith and there -- and we good did it based

03:04:11  9   on legal precedent that allows us to do that.  And we think

03:04:14 10   that when -- when AK talks about deterrents, there shouldn't

03:04:18 11   be things that deter people from preceding to get a reissue

03:04:22 12   patent and proceeding promptly before the patent office and

03:04:25 13   giving the patent office the information and then once

03:04:27 14   getting that presumptively valid patent bringing it before

03:04:31 15   the court and saying here is what we think.  If it turns out

03:04:35 16   we were wrong, we were wrong, but it was a good faith effort

03:04:38 17   and a good faith basis.

03:04:40 18          If we go to the next slide, we get to

03:04:44 19   ArcelorMittal III, this is on the covenant and all the

03:04:45 20   things that went on.  Here the majority said that the

03:04:48 21   covenant is not effective taking into account all the

03:04:51 22   circumstances upon the particular and unusual facts of this

03:04:54 23   case.  So in this case -- and Judge Wallach in the dissent

03:04:57 24   said the covenant was effective to moot the dispute.

03:05:02 25          Our point on the covenant here is as Judge

03:05:05  1    Robinson said, had we just given it to the other side, the

03:05:07  2    whole case would have gone away right then.  That would have

03:05:10  3    solved the problem.  Instead it went up and the Federal

03:05:14  4    Circuit said well, we're not going to hold it effective

03:05:17  5    because of this and that.  We acted in good faith.  Like I

03:05:20  6    said, I came into the courtroom and said we're not going to

03:05:23  7    pursue these claims.  We'll get them a covenant.  We

03:05:26  8    certainly did.  It took some time.  But we don't believe

03:05:29  9    that's actionable or that gives you an exceptional case.

03:05:32 10            If we go to the next slide, please.

03:05:35 11            This is in ArcelorMittal IV, this is the one on

03:05:38 12    November 5th, which was absent from the AK timeline.  AK's

03:05:43 13    own brochure made after the verdict in 2010 lends support to

03:05:49 14    ArcelorMittal's contention that AK's conduct and has

03:05:52 15    changed.  It says it's significant in 2012 AK's products

03:05:55 16    achieved 1,500.  Our pitch was that that evidence should

03:06:00 17    have been made part of the 050 record, that we should be

03:06:04 18    considering commercial success, we should be considering

03:06:07 19    infringement on that.  Judge Robinson said no, and that was

03:06:10 20    within her discretion.  But our efforts to do that were in

03:06:15 21    good faith, and I don't think constitute exceptional

03:06:20 22    conduct.  And, in fact, we pursued it in the 685 case and

03:06:23 23    now the Federal Circuit says that we can go ahead with that,

03:06:27 24    and that's something you can do.

03:06:28 25            So, Your Honor, I think I have answered all of

03:06:32  1    the various points that I have raised.  If you have

03:06:36  2    questions, I'm certainly willing to answer those, but I

03:06:40  3    believe in summary just like you said, we believe we have

03:06:43  4    acted properly here and we have done our best and acted in

03:06:46  5    good faith and we lost, but that doesn't seem to me that

03:06:50  6    that merits the finding of an exceptional case.

03:06:53  7                  Thank you, Your Honor.

03:06:56  8                  THE COURT:  Mr. Learner, I'll let you say

03:07:00  9    whatever you want.  The one question I did have is we don't

03:07:07 10    need to get into all the background and arguments that may

03:07:10 11    be coming down the line on non-infringement or invalidity,

03:07:14 12    but is it AK's steel's position that there has or has not

03:07:18 13    been a change to its process?

03:07:20 14                  MR. LERNER:  It's AK Steel's position there has

03:07:24 15    been no change to its product.  I'm happy to address this,

03:07:27 16    Your Honor.

03:07:28 17                  The first point I was going to respond to is we

03:07:31 18    go to our slide 2 which is a timeline.  The reason we have

03:07:37 19    on this timeline the opinions that we have is because this

03:07:42 20    motion is in the 050 case.  This timeline is about the 050

03:07:47 21    case.  The 685 is a different case.  We can take that up

03:07:51 22    separately.  But the Federal Circuit's ruling in the 685

03:07:56 23    case does not change anything about the 050 case.  It does

03:08:00 24    not make any more reasonable the decisions and the actions

03:08:03 25    that ArcelorMittal has taken.  And we have Judge Robinson's

03:08:09  1    contemporaneous reactions to those that we have already gone

03:08:11  2    over.

03:08:11  3              THE COURT:  Part of your complaint in the

03:08:14  4    original brief was that the litigation had been extended

03:08:18  5    beyond what it should have been based in part on the filing

03:08:21  6    of the 685 case.

03:08:23  7              MR. LERNER:  That's right.  And it has.

03:08:25  8              THE COURT:  And the seeking of discovery that it

03:08:27  9    now ask for.

03:08:28 10              MR. LERNER:  Correct.  If things had proceeded

03:08:30 11    in their appropriate course, in our view if things had

03:08:36 12    proceeded appropriately, there would be no reissue.  A

03:08:39 13    decade had past since the issuance of the '805 patent.  The

03:08:43 14    only reason they got this subsequent reissue, this

03:08:45 15    continuation, is because of the improper '153, so in a

03:08:48 16    certain sense they're benefiting now from their

03:08:51 17    inappropriate actions, but that's just a quirk of the patent

03:08:55 18    law.

03:08:55 19              But the remand was in 2013.  The RE940 didn't

03:09:01 20    reissue until 2014.  If they wanted to file a new suit

03:09:06 21    later, that would have been a different matter.  But really

03:09:09 22    a lot of what was happening in this time period was

03:09:12 23    ArcelorMittal trying to avoid judgment on the merits,

03:09:16 24    because the RE940 patent is a child of the RE153 and it's

03:09:22 25    related to the original '805.

03:09:25  1          The fact findings, the rulings in the original

03:09:28  2     case have preclusive effect that's going to be a very

03:09:32  3     serious issue in the 685 case.  The Federal Circuit hasn't

03:09:38  4     addressed the issue of collateral estoppel for obviousness

03:09:42  5     under Ohio Willow Woods and other cases.  That wasn't

03:09:46  6     briefed because in our view there has been no change to AK

03:09:50  7     Steel's product.

03:09:51  8          And the Federal Circuit's opinion in our view

03:09:54  9     takes the wrong analysis.  I can explain briefly why.  AK

03:09:59 10     Steel makes steel sheet.  It doesn't make stamped parts.

03:10:02 11     The brochure that you were shown doesn't say AK Steel makes

03:10:07 12     stamped parts.  It so happens that stamped parts are the

03:10:09 13     application that people can make, can make from this steel.

03:10:12 14     And that's always been the case.  If you go back to the

03:10:16 15     original trial record, it was all about how this steel is

03:10:19 16     used for hot stamping.

03:10:21 17          This Ford specification that Mr. Abrams

03:10:25 18     mentioned about having a strength over 1,500.  It's an

03:10:28 19     interesting example because that same specification was put

03:10:32 20     forward as evidence by ArcelorMittal in the original case.

03:10:35 21     Which our point is all the arguments they're making, they

03:10:38 22     advanced and lost.  This is the second bite of the apple.

03:10:41 23          But the Federal Circuit said in their view the

03:10:43 24     accused product is a stamped product.  Even though AK Steel

03:10:47 25     doesn't make that, we make the underlying sheets, someone

03:10:51 1    else takes that and does what they want with it, they said

03:10:54 2    that accused product is that other thing and that at least

03:10:57 3    given the record before them, it was possible that there was

03:10:59 4    a change.  We don't believe there has been any change.  That

03:11:05 5    evidence that has been put forward is at best mysterious,

03:11:10 6    but that's an issue that we'll have to get taken up

03:11:14 7    separately.

03:11:14 8         But what hasn't been addressed and really part

03:11:18 9    of the reason this is so exceptional is they wanted a blank

03:11:23 10   slate.  All of these efforts have been about undoing the

03:11:26 11   jury verdict, undoing the Federal Circuit's affirmance of no

03:11:31 12   infringement, undoing the Federal Circuit's affirmance of

03:11:35 13   primi facia obviousness, and limiting the remand to a

03:11:38 14   question of whether commercial success can overcome that.

03:11:41 15   If commercial success couldn't overcome the prima fascia

03:11:44 16   obviousness in 2011, it's hard to imagine how later sales

03:11:48 17   could change that analysis.  It doesn't become less obvious

03:11:51 18   if they sell more product over time.  If it was obvious, it

03:11:55 19   was obvious.  And we have conclusive results on that.

03:11:57 20   That's all for a different way.

03:12:00 21        We were trying to focus on the 050 case because

03:12:03 22   that's what this case is.  The reason the 685 comes into

03:12:06 23   play is it is in our view an improper attempt to prolong

03:12:11 24   litigation.  And it really explains all of these efforts to

03:12:14 25   avoid findings on the merits which is really what's

03:12:17 1    happening before the district court.

03:12:19 2            THE COURT:  But if AK did change its product,

03:12:21 3    then that would have some, could have some responsibility

03:12:25 4    for prolonging the litigation; right?

03:12:28 5            MR. LERNER:  Not that litigation.  I mean, if AK

03:12:31 6    Steel had changed its product, which if it had, it would

03:12:35 7    justify --

03:12:35 8            THE COURT:  Part of what you're saying is

03:12:37 9    prolonging litigation is the filing of the 685 case?

03:12:40 10           MR. LERNER:  Correct.

03:12:41 11           THE COURT:  So to the extent that AK, if it did,

03:12:44 12   I understand, if it did change its product, then that would

03:12:48 13   also have contributed to the litigation continuing.

03:12:53 14           MR. LERNER:  That would.  Although it was on the

03:12:56 15   RE153 patent.  If the reissue strategy, which was clearly

03:13:04 16   inappropriate under 251(d) hadn't been taken, then the '805

03:13:09 17   patent's claims had all been held invalid.  So whatever AK

03:13:13 18   Steel had done commercially wouldn't matter because there

03:13:16 19   would be no valid claims that could be infringed.  All of

03:13:19 20   this has in various guises prolonged the litigation.

03:13:23 21           The RE153 was also invalidated.  And it's really

03:13:27 22   this '940 patent that hasn't had its validity tested yet,

03:13:31 23   that didn't issue until 2014.  So at least for a period of

03:13:34 24   time, AK Steel would be free and clear without this specter

03:13:39 25   of infringement claims and without ArcelorMittal going to

03:13:40  1   customers and saying hey, you're liable for infringement if

03:13:43  2   you buy product from someone else that's been a adjudged

03:13:47  3   non-infringing.

03:13:48  4           THE COURT:  Is that activity still occurring?

03:13:52  5           MR. LERNER:  We don't have letters the way we

03:13:55  6   did before.  I can't say for certain.  My understanding is

03:14:02  7   that the market has still been chilly for products that are

03:14:05  8   not by ArcelorMittal or licensees.  And I expect that may be

03:14:10  9   another issue that comes before this Court, because with

03:14:13 10   this later issued '940 patent, not only are there absolute

03:14:19 11   intervening rights, but there is going to be equitable

03:14:20 12   intervening rights.  This patent didn't issue until 2014.

03:14:23 13   They're telling you AK is making a different product from

03:14:26 14   2012.  And so all that investment even if they're right,

03:14:30 15   which they're not, had been made and then they get a new

03:14:34 16   patent that they say is infringed, that raises lots of

03:14:38 17   interesting questions that are for a different date.  These

03:14:39 18   questions before us today I think are clear-cut.

03:14:42 19           The 685 is a red herring and this notion that

03:14:46 20   ArcelorMittal is willing to give AK Steel a free pass or if

03:14:50 21   I took it down correctly, that they would -- the goal was to

03:14:56 22   get rid of the case, not extend it, that just doesn't pass

03:15:02 23   the red face test.

03:15:04 24           The goal is not to give a free pass, the goal

03:15:07 25   was to start over because they don't like the record that

03:15:09 1    was developed.  They don't like the preclusive effect of the

03:15:13 2    original judgement.  That's really what the goal was.

03:15:15 3    That's vexatious litigation, that's an improper purpose.

03:15:17 4    They can litigate the 685, we can see where that takes us.

03:15:22 5    But for this case, we think that Judge Robinson was clearly

03:15:25 6    correct that when a case is remanded for two issues, you

03:15:28 7    don't reopen the record and have a free for all about what

03:15:32 8    has happened in the following number of years.  That can be

03:15:35 9    taken up in a new case.

03:15:37 10           The record is clear there was no evidence of

03:15:40 11   infringement by AK Steel in the trial record despite what

03:15:44 12   they told the Federal Circuit which Your Honor addressed

03:15:46 13   with ArcelorMittal's counsel.

03:15:48 14           THE COURT:  But I'm still trying to figure out

03:15:50 15   why the issues on remand weren't addressed on remand, and

03:15:56 16   wouldn't that have just shortcut everything?

03:16:02 17           MR. LERNER:  It would have been more efficient

03:16:06 18   if things had proceeded differently.  I would say, I know

03:16:09 19   there is some confusion about this.  When the case was

03:16:11 20   remanded, when this reissue came out, the '805 didn't exist

03:16:16 21   anymore.  As a matter of operation of patent law, it was no

03:16:19 22   longer of effect.

03:16:20 23           So some of the arguments that have been made

03:16:22 24   here by ArcelorMittal's counsel conflate with '805 with the

03:16:28 25   reissue.  The '805 was done.  That had been construed.  That

03:16:31 1   was after the mandate was effectively set in stone.  They

03:16:35 2   then have a reissue patent.  They can say that the

03:16:38 3   prosecution of the reissue affects the interpretation of the

03:16:41 4   reissue, which is what Judge Robinson found, but that's an

03:16:45 5   entirely different issue from whether you can go back and

03:16:48 6   reinterpret the original patent.  There is absolutely no

03:16:50 7   support for that.  The case they cite lends no support to

03:16:53 8   that idea.

03:16:53 9          But the RE153 was there, and our initial

03:16:57 10  proposal was get rid of the broadened claims, we don't

03:17:03 11  infringe.  And then we can take up validity.  The big issue

03:17:07 12  for AK Steel was we wanted to be able to market free and

03:17:10 13  clear this issue because we had this product we invested in,

03:17:14 14  we thought we had a judgment in our favor, the Federal

03:17:16 15  Circuit had that statement -- we can get back to that --

03:17:19 16  about evidence in the record that was vague or confused.

03:17:26 17         THE COURT:  What you wanted was what you just

03:17:28 18  said was they get rid of the broadened claims and take up

03:17:32 19  validity later.  That's what you got; right?  You got rid of

03:17:37 20  the broadened claims in the first instance and then in the

03:17:40 21  second instance you dealt with the validity issue.  So isn't

03:17:44 22  that what you were asking for?

03:17:46 23         MR. LERNER:  I don't think so.  I mean, in an

03:17:52 24  ultimate sense we got the judgment of non-infringement and

03:17:55 25  invalidity we wanted.

03:17:56  1          THE COURT:  What you asked for originally, I

03:17:59  2   don't even know what you call these things anymore, but

03:18:00  3   after the remand, the original remand when Judge Robinson

03:18:05  4   looked at your motion for summary judgment of

03:18:09  5   non-infringement and invalidated all the claims, what you

03:18:12  6   had asked for would have left you with a situation where you

03:18:15  7   did not infringe claims 1 to 23, and you would have had to

03:18:21  8   have further proceedings whether briefing or whatever on

03:18:25  9   claims 24 to 25.  That's what you got.

03:18:28 10          And how do you -- I understand that you're upset

03:18:31 11   with some of the machinations that went on over here, but

03:18:35 12   you got essentially what you were asking for.  And so that's

03:18:38 13   where I'm having a little bit of a hard time tagging in with

03:18:43 14   all the costs.

03:18:44 15          MR. LERNER:  Sure.  A couple of things about

03:18:47 16   that.  We got it, but four years later.  And that was a long

03:18:50 17   time for our client given what we see in the marketplace.

03:18:53 18   ArcelorMittal was not out there saying we're happy to have

03:18:56 19   you buy from AK Steel, they're a delightful company, they

03:19:01 20   were quite to the contrary, making threats, don't buy from

03:19:05 21   them.  So that was a very serious commercial issue.  That's

03:19:08 22   why we were seeking an immediate judgment of

03:19:10 23   non-infringement.

03:19:11 24          And the invalidity would have been addressed

03:19:14 25   early, too.  We don't know where that would have taken us if

03:19:18 1   the patent office had known of these invalidity findings

03:19:22 2   would it have issued the RE940 patent and saved us this

03:19:25 3   additional work?  Maybe.  We wouldn't have had to brief

03:19:28 4   subject matter jurisdiction.  We wouldn't have had to brief

03:19:31 5   covenants not to sue.  And these games they were playing to

03:19:34 6   divest the court's jurisdiction, we wouldn't have known

03:19:36 7   without all these additional appeals that there is

03:19:40 8   preclusive effect that applies going forward.

03:19:42 9          So it's really the time and it has been having

03:19:45 10   to make these arguments again and again.  I think we have

03:19:50 11   now briefed summary judgment of non-infringement two or

03:19:53 12   three different times.  That would have been one.  And it

03:19:55 13   would have been very different from a commercial standpoint

03:19:58 14   if we could have put that aside and then moved on.

03:20:08 15          THE COURT:  You're just about out of time.

03:20:10 16   Maybe wrap it up.

03:20:11 17          MR. LERNER:  Of course.

03:20:14 18          The claims ended up being found not infringed,

03:20:17 19   not invalid, and ArcelorMittal even today has not identified

03:20:20 20   any evidence --

03:20:21 21          THE COURT:  Not infringed and invalid.

03:20:23 22          MR. LERNER:  Not infringed and invalid.  Thank

03:20:25 23   you, Your Honor.  That's an important correction.

03:20:28 24          ArcelorMittal has still never identified

03:20:30 25   evidence in the record or any basis to believe the trial

03:20:35 1    record for a basis to proceed except for their broadening

03:20:39 2    which has been roundly rejected as a violation of 251(d).

03:20:43 3            The 685 case can be taken up on its own.  We

03:20:46 4    don't agree with the description of technology that was

03:20:48 5    provided, but we can take that up separately.

03:20:51 6            But for this case, the best that one can say is

03:20:54 7    these are machinations.  Judge Robinson's reactions are

03:20:57 8    quite clear.  The Federal Circuit acknowledges that there

03:21:00 9    are sound policy reasons not to allow this.  And if nothing

03:21:04 10   else can be said, this case is not a normal common typical

03:21:08 11   case.  If any case stands out from the others, it will be

03:21:12 12   this case that should have ended in 2013.

03:21:15 13           Thank you, Your Honor.

03:21:16 14           THE COURT:  Thank you.

03:21:18 15           MR. ABRAMS:  Your Honor, if I could hand up two

03:21:23 16   exhibits that I mentioned.  One is the purchase order that I

03:21:27 17   mentioned that shows how AK sells its product directly for

03:21:34 18   particular parts.  And this is marked confidential so if

03:21:39 19   Your Honor could treat it accordingly.

03:21:41 20           And then second -- may I approach?

03:21:57 21           And then the other is the AK brochure, the

03:22:01 22   Ultralume brochure which is where some of the photos and

03:22:04 23   things came from.

03:22:14 24           Thank you, Your Honor.

03:22:15 25           MR. LERNER:  Your Honor, I apologize.  One more

03:22:17  1   thing.  You had asked about the citation.  I haven't found

03:22:23  2   it.  It's possible I was remembering something slightly

03:22:26  3   incorrectly.  There is a DI-338 is an opinion about Judge

03:22:34  4   Robinson.

03:22:34  5           THE COURT:  That's the one where she mentions

03:22:37  6   it.  I just didn't remember that she had explained it away.

03:22:40  7   I thought she more focused on the fact that plaintiff hadn't

03:22:44  8   put forward any evidence.

03:22:45  9           MR. LERNER:  If it's okay with you, we can

03:22:48 10   submit a very short one-paragraph letter.

03:22:50 11           The other thing is in DI-312, which is one of

03:22:55 12   the hearings, Mr. Sipes explains this on behalf of AK Steel.

03:23:00 13   It begins at page 17, line 21, with a question from the

03:23:04 14   court and then Mr. Sipes' explanation goes through page 18.

03:23:11 15           THE COURT:  Okay.  Hold on one second.  I just

03:23:14 16   want to make sure, some of the transcripts because it's old

03:23:17 17   weren't available to me, and so I just want to see if I --

03:23:21 18   actually I am not sure if I have that or not.  But if I

03:23:24 19   don't, I'll contact counsel and ask you to submit that for

03:23:27 20   me.

03:23:28 21           MR. LERNER:  Or if it would be easier when we

03:23:30 22   submit a paragraph, we could submit the attachments that are

03:23:33 23   cited with it.

03:23:33 24           THE COURT:  That's fine.  Run it by, any

03:23:36 25   attachments -- if there is something wrong with the

03:23:39  1    attachments you can have a paragraph.

03:23:40  2                    MR. LERNER:  Thank you, Your Honor.

03:23:41  3                    THE COURT:  Thank you.

03:23:42  4                    Was there anything else that we need to discuss?

03:23:45  5                    MR. ABRAMS:  No.

03:23:49  6                    THE COURT:  Thank you very much for your

03:23:50  7    arguments.  It's very helpful.  And we will get a decision

03:23:53  8    out.

03:23:53  9                    (Court recessed at 3:26 p.m.)

          10

          11

          12

          13

          14

          15

          16

          17

          18

          19

          20

          21

          22

          23

          24

          25