IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| ARCELORMITTAL and ARCELORMITTAL ATLANTIQUE ET LORRAINE, | ) ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) C.A. No. 10-050 (MN) ) |
| AK STEEL CORPORATION, SEVERSTAL DEARBORN, INC. and WHEELING-NISSHIN INC., | ) ) ) ) |
| Defendants. | ) ) |

## <u>MEMORANDUM OPINION</u>

Jeffrey B. Bove, RATNERPRESTIA, Wilmington, DE; Hugh A. Abrams, SHOOK, HARDY & BACON L.L.P., Chicago, IL – attorneys for Plaintiffs.

Adam W. Poff, Pilar G. Kraman, YOUNG CONAWAY STARGATT & TAYLOR, LLP, Wilmington, DE; Roderick R. McKelvie, Christopher N. Sipes, Jeffrey H. Lerner, COVINGTON & BURLING LLP, Washington, DC – attorneys for Defendants

February 7, 2019
Wilmington, Delaware

*Maryellen Noreika*

**NOREIKA, U.S. DISTRICT JUDGE:**

Presently before the Court is the motion of Defendants AK Steel Corp., Severstal Dearborn, Inc. and Wheeling-Nisshin, Inc. (collectively, "Defendants") to declare this case exceptional under 35 U.S.C. § 285 since at least April 16, 2013 and for an award of attorneys' fees and related costs incurred from that time forward. (*See* D.I. 354). For the reasons set forth below, Defendants' motion for attorneys' fees is DENIED.

## I.    BACKGROUND

Now more than nine years old, this case has a long and tortured history. Plaintiffs ArcelorMittal France and ArcelorMittal Atlantique et Lorraine (collectively, "Plaintiffs" or "ArcelorMittal") filed this action on January 22, 2010, alleging that Defendants[1] infringed U.S. Patent No. 6,296,805 ("the '805 Patent"). (*See* D.I. 1 ¶¶ 11-15). The '805 Patent, which issued on October 2, 2001 and is titled "Coated Hot- and Cold-Rolled Steel Sheet Comprising a Very High Resistance After Thermal Treatment," is directed to boron-containing steel sheets that have been hot-rolled and coated with an aluminum-based coating. ('805 Patent at 1:47-64; *see also id.* at 1:37-44, 2:37-40). Hot-rolling and cold-rolling of steel sheets are processing steps used to achieve a desired final thickness. (*Id.* at 2:37-40). After undergoing thermal treatment, the claimed steel sheets have "very high mechanical resistance." (*Id.* at 1:6-8, *see also id.* at 1:61-62). Claim 1 of the '805 Patent is the only independent claim and it recites:

> 1. A hot-rolled coated steel sheet comprising a hot-rolled steel sheet coated with an aluminum or aluminum alloy coating, wherein the steel in the sheet comprises the following composition by weight:
>
> $0.15\% < carbon < 0.5\%$

---

[1]    As originally filed, the Complaint included allegations of infringement against AK Steel Corp., Severstal Dearborn, Inc. and Wheeling-Nisshin, Inc. (*See, e.g.*, D.I. 1 ¶¶ 11-13). In September 2016, AK Steel Corp. acquired Severstal Dearborn, Inc. (*See* D.I. 355 at 1 n.1).

0.5%<manganese<3%

0.1%<silicon<0.5%

0.01%<chromium<1%

titanium<0.2%

aluminum<0.1%

phosphorus<0.1%

sulfur<0.05%

0.0005%<boron<0.08%, the remainder being iron and impurities inherent in processing, and the steel sheet has a very high mechanical resistance after thermal treatment and the aluminum or aluminum alloy coating provides a high resistance to corrosion of the steel sheet.

(*Id.* at Claim 1). The remaining fifteen claims of the '805 Patent ultimately depend from claim 1. Most of the dependent claims are directed to a steel sheet having a certain composition or made using certain conditions (*id.* at Claims 2-3, 5, 7, 9, 13, 16) or to a process of making a casting using the steel sheet (*id.* at Claims 4, 6, 8, 10-12).[2]

## A.    Trial on the '805 Patent and the First Appeal

At the outset of the case, Defendants urged the judge then handling the case, Judge Robinson, to engage in early claim construction, arguing that construction of the term "hot-rolled coated steel sheet comprising a hot-rolled steel sheet coated with an aluminum or aluminum alloy coating" would likely be dispositive of Plaintiffs' infringement claims. (D.I. 29 at 5). Although this proposal was initially rejected (*see, e.g.*, D.I. 31 at 1; D.I. 32 at 4), at Defendants' continued request (D.I. 45 at 2-4), the judge ultimately allowed early claim construction on the two terms that Defendants agreed would be "the sole bases for any non-infringement assertions with respect

---

[2]    There are also two claims directed to a "land motor vehicle" using the claimed "heat treated coated steel" or "coated steel sheet." ('805 Patent at Claims 14-15). These claims were never asserted against Defendants and are not relevant to the present motion.

to independent claim 1" (D.I. 68 ¶ 5).  On December 16, 2010, Judge Robinson issued a claim construction opinion construing those two terms – *i.e.*, "hot-rolled steel sheet coated with an aluminum or aluminum alloy coating," and "the steel sheet has a very high mechanical resistance after thermal treatment."  (D.I. 189; *see also* D.I. 70 (Defendants' election of the two terms for early construction)).

As to "hot-rolled steel sheet," the dispute between the parties was whether the term encompassed hot-rolled steel sheets that had undergone the additional step of cold-rolling ***prior*** to coating with aluminum.  Plaintiffs argued that optional cold-rolling to achieve a desired thickness prior to coating was not excluded by the claim (D.I. 126 at 11-13), whereas Defendants argued that the "hot-rolled steel sheet" of claim 1 was limited to steel sheets that only underwent hot-rolling prior to coating (D.I. 136 at 10-12).  Judge Robinson adopted the position advocated by Defendants, construing "hot-rolled steel sheet coated with an aluminum or aluminum alloy coating" to mean "a steel sheet that has been reduced to its final thickness by hot-rolling and coated with an aluminum or aluminum alloy coating."  (D.I. 189 at 11).  Excluded from the meaning of the term were sheets that had undergone "hot-rolling followed by cold-rolling" prior to coating with aluminum.  (*Id.*).

As to "very high mechanical resistance," the dispute between the parties was whether, after thermal treatment,[3] the resulting steel sheet must have an ultimate tensile strength in excess of 1000 MPa, as Plaintiffs proposed, or in excess of 1500 MPa, as Defendants proposed.

---

[3]     Plaintiffs also argued that claim 1 was directed to steel sheets that were merely capable of achieving mechanical resistance in excess of 1000 MPa after thermal treatment. (*See, e.g.*, D.I. 150; D.I. 126 at 18-19).  Plaintiffs did not pursue this "capability" argument on appeal. (*See* Corrected Opening Brief of Plaintiffs-Appellants ArcelorMittal France and ArcelorMittal Atlantique et Lorraine at 41-44, *ArcelorMittal France et al. v. AK Steel Corp. et al.*, 700 F.3d 1314 (Fed. Cir. 2012) (No. 2011-1638) (focusing only on numerical value of construction during appeal)).

(*See* D.I. 150).  Citing the specification, Plaintiffs argued that the whole purpose of the '805 Patent is to produce coated steel sheets having a mechanical resistance exceeding 1000 MPa.  (D.I. 126 at 17; *see also* '805 Patent at 1:37-42 ("The purpose of the invention is to produce a hot- or cold-rolled steel sheet . . . which, after thermal treatment performed on the finished casting, makes it possible to obtain a mechanical resistance in excess of 1000 MPa . . . .")).  In Plaintiffs' view, that the invention's purpose is to achieve this numerical resistance demonstrated that the "very high mechanical resistance" claim language must refer to 1000 MPa or greater.  (D.I. 126 at 17). Defendants, on the other hand, argued that the '805 Patent uses the word "high" in connection with mechanical resistance to refer to tensile strength that *may* exceed 1500 MPa.  (D.I. 136 at 18-19; *see also* '805 Patent at 2:50-54).  Therefore, according to Defendants, "very high mechanical resistance" referred to an ultimate tensile strength in excess of 1500 MPa.  (D.I. 136 at 18-19). The district court again adopted the position argued by Defendants, construing the term "the steel sheet has a very high mechanical resistance after thermal treatment" to mean "the flat-rolled steel sheet has been subjected, after rolling, to additional controlled heating and cooling and has an ultimate tensile strength of 1500 MPa or greater."  (D.I. 189 at 14).

The parties agreed to forego summary judgment motions, opting instead for an expedited jury trial, which began on January 10, 2011.  (*See* D.I. 68 ¶¶ 6, 12).  At trial, based on the construction of the "hot-rolled steel sheet" term, Plaintiffs were precluded from arguing that Defendants' steel sheet products literally infringed claims 1, 2, 5, 7 and 16 of the '805 Patent ("the Asserted Claims").[4]  (*See* D.I. 205 at 2 ("Cold-rolling . . . is a prerequisite to defendants' coating and thermal treatment steps.  Absent any indication that defendants provide a hot-rolled,

---

[4]     Plaintiffs elected claims 1, 2, 5, 7 and 16 as the Asserted Claims on July 20, 2010. (*See* D.I. 183 ¶ 8).  The theories of infringement tried to the jury were those set forth in the First Amended Complaint.  (*See* D.I. 123).

coated sheet product prior to cold-rolling, defendants cannot [literally] infringe.")). Although it appeared that Defendants' finished products had an ultimate tensile strength below the 1500 MPa required by the construction of the "very high mechanical resistance" term, Plaintiffs were permitted to argue that Defendants infringed under the doctrine of equivalents. (*Id.* at 1-2). On January 14, 2011, the jury returned a verdict finding that Defendants did not infringe the Asserted Claims of the '805 Patent and that the Asserted Claims were invalid as anticipated and obvious. (D.I. 215). Judgment was entered in favor of Defendants on January 24, 2011. (D.I. 218). After denial of Plaintiffs' renewed motion for judgment as a matter of law and motion for a new trial (*see* D.I. 248, 249), final judgment was entered in favor of Defendants on August 26, 2011 (D.I. 251). On September 21, 2011, Plaintiffs appealed, challenging the construction of both of the construed terms, as well as the jury verdict. (D.I. 253).

On November 30, 2012, the Federal Circuit issued its opinion, which affirmed-in-part, reversed-in-part, vacated-in-part and remanded on issues relating to infringement and to obviousness. *See ArcelorMittal France v. AK Steel Corp.* (*ArcelorMittal I*), 700 F.3d 1314 (Fed. Cir. 2012). As to claim construction, on the "hot-rolled steel sheet" term, the Federal Circuit reversed, finding that the district court's construction improperly excluded hot-rolled steel sheets that additionally underwent cold-rolling to achieve final thickness prior to coating with aluminum. *Id.* at 1320. Emphasizing the importance of the transition phrase "comprising" used in claim 1, the Federal Circuit found that the claim "expressly contemplates additional, unstated steps such as cold-rolling." *Id.* Moreover, the specification disclosed hot-rolled steel sheets that were also cold-rolled before coating – indeed, some of them must have been additionally cold-rolled to achieve the desired thickness. *Id.* at 1320-21 (citing '805 Patent at 1:47-48, 2:30-31, 2:37-40, 3:7-9, 3:44-

46, 4:8-9). Therefore, the correct construction of "hot-rolled steel sheet" is simply "a steel sheet that has been hot-rolled during its production." *ArcelorMittal I*, 700 F.3d at 1321.

As to "very high mechanical resistance," Plaintiffs argued on appeal that the stated purpose of the invention is to achieve a mechanical resistance in excess of 1000 MPa and, therefore, "very high mechanical resistance" in claim 1 must be keyed off this value. *See ArcelorMittal I*, 700 F.3d at 1321. The Federal Circuit rejected that argument and affirmed Judge Robinson's construction, finding it supported by the intrinsic evidence, as well as extrinsic evidence. *Id.* ("The specification does not define 'very high' mechanical resistance, but it implies that the 1500 MPa level is necessary for 'high' mechanical resistance. If 1500 MPa is high mechanical resistance, then very high resistance must be at least 1500 MPa."); *see also id.* at 1322 ("By defining 'high' mechanical resistance as greater than 1500 MPa, the prior art here suggests that 'very high' mechanical resistance would be understood to be at least that high."). Thus, the term "the steel sheet has a very high mechanical resistance" had been properly construed as "the flat-rolled steel has been subjected, after rolling, to additional controlled heating and cooling and has an ultimate tensile strength of 1500 MPa or greater." *Id.* at 1321-22. Judge Wallach dissented, focusing on the invention's purpose as highlighted by Plaintiffs and emphasizing the specification's interchangeable use of the terms "very high," "high" and "substantial." *Id.* at 1327 (Wallach, J., dissenting). For the dissent, there were no "technical distinctions as to varying resistance levels" in relation to these descriptors, and each was intended to refer to a mechanical resistance that improved upon the prior art – *i.e.*, one in excess of 1000 MPa. *Id.* at 1327-28. Thus, the dissent agreed with Plaintiffs that "very high mechanical resistance" means "mechanical resistance in excess of 1000 MPa." *Id.* at 1328.

Because the construction of "hot-rolled steel sheet" precluded Plaintiffs from arguing literal infringement at trial (D.I. 205), and because the Federal Circuit held that the term does not exclude products that optionally undergo cold-rolling prior to coating, the Federal Circuit vacated the jury's verdict of no infringement and remanded for a determination of literal infringement under the proper claim construction.[5] *See ArcelorMittal I*, 700 F.3d at 1322. Similarly, because the incorrect construction prevented the jury from considering the commercial success of Plaintiffs' product, which is cold-rolled prior to coating, the jury's verdict of obviousness was vacated and remanded for a determination of commercial success.[6] The Federal Circuit mandate issued on March 27, 2013. (D.I. 264-1 at 2).

**B. Remand After *ArcelorMittal I*, Invalidity of the Reissued Patent and the Second Appeal**

On August 8, 2011, while the post-trial motions were pending, Plaintiffs filed an application for reissue of the '805 Patent. With their initial filings, Plaintiffs submitted an Information Disclosure Statement ("IDS") that included the Final Jury Instructions, Jury Verdict Sheet and Plaintiffs' post-trial briefing from this litigation. (*See* D.I. 278, Ex. C at 106 (IDS

---

[5] The infringement issues to be addressed on remand were limited to literal infringement because Plaintiffs did not challenge the jury's finding of no infringement under the doctrine of equivalents and "AK Steel's counsel conceded that at least some accused products have a mechanical resistance of 1500 MPa or greater." *ArcelorMittal I*, 700 F.3d at 1322. It was later clarified that this statement was made by counsel for Defendants Severstal Dearborn and Wheeling-Nisshin, not AK Steel (*see* D.I. 312 at 17:21-18:17, 22:6-23:6), and it was not an admission that those Defendants made products with an ultimate tensile strength in excess of 1500 MPa (*see* D.I. 294 at 4 n.1).

[6] Although not relevant to the present motion, the Federal Circuit also reversed the denial of Plaintiffs' motion for judgment as a matter of law on anticipation, finding the jury's verdict unsupported by substantial evidence. *See ArcelorMittal I*, 700 F.3d at 1323.

submitted with application for reissue)).[7]  Then, on December 5, 2012, Plaintiffs submitted another

IDS, which included the November 30, 2012 opinion from the Federal Circuit in the *ArcelorMittal*

*I* appeal.  (*See* D.I. 278, Ex. C at 48, 50).  The reissue ultimately issued on April 16, 2013 as

U.S. Reissued Patent No. RE44,153 ("the RE'153 Patent"), with the same specification and initial

sixteen claims as the '805 Patent, but with nine new dependent claims.[8]  (*See* RE'153 Patent at

Claims 17-25).  Claims 17-22 of the RE'153 Patent recite limitations regarding the manufacturing

process of the claimed steel sheet – *e.g.*, hot-shaping and cooling at a rate that produces certain

features (claim 17), cold-rolling the hot-rolled sheet after pickling (claim 21), etc.  Of the new

claims, claims 23-25 are relevant here:

> 23.    The coated steel sheet of claim 1, wherein said mechanical
> resistance is in excess of 1000 MPa.
>
> 24.    The coated steel sheet of claim 1, wherein said mechanical
> resistance is in excess of 1500 MPa.
>
> 25.    The coated steel sheet of claim 24 that is composed
> predominantly of martensite.

(RE'153 Patent at Claims 23-25).

Although the *ArcelorMittal I* mandate directed the court on remand to address issues of

literal infringement and commercial success under the correct claim construction of the "hot-rolled

---

[7]    Plaintiffs submitted the prosecution history for the reissue patent as an exhibit to a brief
filed during the first remand proceedings.  (*See generally* D.I. 278, Ex. C).

[8]    Plaintiffs filed two new cases in this court on April 16, 2013, asserting the RE'153 Patent
against Defendants.  (*See* D.I. 1 in C.A. No. 13-685 (against Defendant AK Steel); D.I. 1
in C.A. No. 13-686 (against Defendants Severstal Dearborn and Wheeling-Nisshin)).
The case against Severstal Dearborn and Wheeling-Nisshin was dismissed on
February 22, 2017, and the case against AK Steel (C.A. No. 13-685) remains pending.  In
C.A. No. 13-685, the Federal Circuit recently vacated Judge Robinson's grant of summary
judgment of noninfringement and remanded for additional findings on AK Steel's current
product.  *See ArcelorMittal Atlantique et Lorraine v. AK Steel Corp.*, 908 F.3d 1267, 1277
(Fed. Cir. 2018).

steel sheet" term of the '805 Patent, the remand instead largely focused on the RE'153 Patent and

whether it was an improper broadening reissue in violation of 35 U.S.C. § 251(d).[9]  After receiving

submissions by the parties as to how to proceed on remand (*see* D.I. 271-73), Judge Robinson

directed the parties to focus on Defendants' noninfringement arguments in light of the mandate,

as well as Plaintiffs' argument that the construction of "very high mechanical resistance" should

be revisited in light of the reissued patent (*see* D.I. 312 at 43:8-46:5; *see also* D.I. 276).

With respect to the "very high mechanical resistance" term of the RE'153 Patent, as they

did previously for the '805 Patent, Plaintiffs argued that "very high mechanical resistance" in the

RE'153 Patent claims refers to an ultimate tensile strength in excess of 1000 MPa.  (*See* D.I. 278

at 4).  That proposed construction, they argued, was now supported by a dependent claim – the

new claim 23 in the RE'153 Patent – which specifically provided that the "very high mechanical

resistance" of claim 1 "is in excess of 1000 MPa."  (RE'153 Patent at Claim 23; *see also* D.I. 278

at 4).  Defendants agreed that, in light of this dependent claim, the "very high mechanical

resistance" in the RE'153 Patent must refer to ultimate tensile strength exceeding 1000 MPa.

---

[9]      It is unclear to this Court how the RE'153 Patent was ultimately added to the present case (C.A. No. 10-050) or properly before the court for its subsequent invalidation.  On May 10, 2013, Plaintiffs sought leave to amend the complaint to, *inter alia*, add the RE'153 Patent in place of the '805 Patent.  (D.I. 269).  Defendants opposed.  (D.I. 275).  Judge Robinson never ruled on that motion, instead declaring it moot after invalidating the RE'153 Patent in the ensuing summary judgment opinion.  (*See* D.I. 297 at 11 n.13).  Although § 251(a) provides that the original patent shall be surrendered in cases of reissue, it seems to this Court that some amendment to the operative pleading was necessary to bring the RE'153 Patent into the case in place of the original '805 Patent.  Moreover, because there was no operative pleading asserting the RE'153 Patent in the case, Defendants never filed an answer asserting invalidity under § 251 in a defense or counterclaim.  Therefore, it is unclear how invalidity of the RE'153 Patent under § 251 was properly at issue after the first remand.  Nevertheless, in the second appeal, the Federal Circuit stated that "ArcelorMittal amended its complaint to substitute the now-surrendered '805 Patent for the RE153 Patent ([in] the Remand Action)," and no party seems to dispute that the RE'153 Patent and claims of invalidity under § 251 were, in fact, added to this case.  *ArcelorMittal France v. AK Steel Corp.*, 786 F.3d 885, 888 (Fed. Cir. 2015).

(*See* D.I. 287 at 13 ("Defendants agree with Arcelor that the term 'very high mechanical resistance' in the RE153 patent should be construed to mean an ultimate tensile strength above 1000 MPa . . . .")). In Defendants' view, however, this new construction meant that claims 1-23 of the RE'153 Patent were invalid as improperly broadened in violation of § 251(d) because the RE'153 Patent was filed more than two years after the original '805 Patent issued – and the term in the '805 Patent had been definitively construed by the Federal Circuit to mean "in excess of 1500 MPa." (*Id.* at 14). Plaintiffs, on the other hand, argued that the new construction did not render claim 1 of the RE'153 Patent invalid because it remained identical to claim 1 of the '805 Patent and therefore could not be considered broadened. (*See* D.I. 291 at 7-9).

On remand, Defendants moved for summary judgment of noninfringement implementing part of the *ArcelorMittal I* mandate. (*See* D.I. 281, 282 (AK Steel's motion and opening brief); D.I. 279, 280 (Severstal Dearborn and Wheeling-Nisshin's motion and opening brief)). Defendants argued that there was no evidence that any of their products had an ultimate tensile strength in excess of 1500 MPa, as required by the affirmed construction of "very high mechanical resistance." (D.I. 282 at 8; *see also* D.I. 280 at 1).[10] Therefore, in Defendants' view, even under the corrected construction of "hot-rolled steel sheet" on remand, Plaintiffs could not prove literal infringement of the '805 Patent because Defendants' products still failed to meet the "very high mechanical resistance" limitation. Defendants also argued that any valid claim of the RE'153 Patent would have no broader scope than the '805 Patent and, therefore, would not be infringed

---

[10]     Severstal Dearborn and Wheeling-Nisshin joined in AK Steel's arguments, adding noninfringement arguments unique to their products where relevant. (*See, e.g.*, D.I. 280 at 2, 5-6). Severstal Dearborn and Wheeling-Nisshin sought to clarify that neither hot stamped (*i.e.*, thermally treated) steel sheets and that any evidence of their products having a mechanical resistance in excess of 1500 MPa was only the result of hot stamping in the testing done by Plaintiffs' expert. (*Id.* at 2-3).

for the same reason. (*See, e.g.*, D.I. 282 at 10; D.I. 280 at 7). In their briefs, Defendants also argued that claims 1-23 of the RE'153 Patent were invalid under § 251(d) as broadening the scope of the original '805 Patent outside the two-year window permitted under the statute.[11] (*See* D.I. 282 at 16 ("[I]t would be appropriate not only to enter judgment of non-infringement for AK Steel, but to find as well that the broadened claims of the reissue patent (Claim 1-23) are invalid under Section 251(d)."); *see also* D.I. 280 at 7). Plaintiffs opposed, arguing that fact issues existed as to infringement in light of the new (and agreed-upon) construction of "very high mechanical resistance" as used in the RE'153 Patent. (*See* D.I. 288 at 7 ("[E]vidence in the trial record confirms that [Defendants] made offers for sale of accused products having a [ultimate tensile strength] of 1,000 MPa or greater after hot stamping. In light of these admitted offers, genuine issues of material fact preclude a grant of summary judgment . . . ."). Plaintiffs also argued under Rule 56(d) that, even under the Federal Circuit's construction requiring 1500 MPa, summary judgment was inappropriate because there was evidence that Defendants had recently begun selling steel sheets that were hot-stamped to achieve a mechanical resistance in excess of 1500 MPa. (*See id.* at 12-15). Plaintiffs did not address Defendants' arguments as to noninfringement based on the original trial record.

On October 25, 2013, Judge Robinson granted Defendants' motions for summary judgment of noninfringement. (D.I. 298; *see also* D.I. 297). First addressing the RE'153 Patent claim construction issued raised by Plaintiffs, she compared the Federal Circuit's construction of "very

---

[11]    To be clear, Defendants moved for summary judgment of noninfringement – they did not move for summary judgment of invalidity under § 251(d) as to claims 1-23 of the RE'153 Patent. (*See* D.I. 279, 281). In their briefs on noninfringement, however, Defendants argued that claims 1-23 were improperly broadened in violation of § 251(d). They did not argue that claims 24 and 25 were invalid as broadened, but rather stated those claims would be left for a determination of obviousness under the *ArcelorMittal I* mandate. (*See* D.I. 282 at 16-17).

high mechanical resistance" as it appeared in claim 1 of the original '805 Patent with use of that term in the RE'153 Patent. (*See* D.I. 297 at 6-7). She found that the term "very high mechanical resistance" as used in claim 23 of the RE'153 Patent was of a broader scope than the scope definitively given to the term by the Federal Circuit, which was binding on remand. (*Id.* at 6). As such, she concluded that claim 23 was improperly broadened in violation of § 251(d) and therefore invalid. (*Id.* at 8-9). As to the remaining claims, Judge Robinson found those invalid as well, declining to apply the original scope of the '805 Patent to the remainder of the RE'153 Patent because "the mandate of the Federal Circuit ha[d] been insolubly devitalized by the reissue process." (*Id.* at 10). Because the RE'153 Patent was invalid as improperly broadened, and because there can be no infringement of an invalid patent, Judge Robinson granted summary judgment of noninfringement. (*Id.* at 11 n.12).

On October 31, 2013, judgment was entered in favor of Defendants (D.I. 299), but it was unclear which claims of the RE'153 Patent had been invalidated by the grant of summary judgment (*see* D.I. 297 at 11 (opinion stating the court was "invalidating the RE153 patent as violative of 35 U.S.C. § 251(d)"); *see also* D.I. 298 (order granting summary judgment because "the court has found reissued claim 1 broadened in light of reissued claim 23")). On November 6, 2013, Plaintiffs filed a motion to clarify or alter the judgment (D.I. 302), requesting that the judgment of invalidity not apply to claims 24 and 25 of the RE'153 Patent (*see, e.g.*, D.I. 303 at 1).[12] On

---

[12]    One of Plaintiffs' grounds for clarifying or amending the judgment was that claims 24 and 25 of the RE'153 Patent were not properly before the court (*see* D.I. 303 at 6-7). Because it is relevant later (*see infra* §§ I.C), this Court finds it important to note here that Plaintiffs' argument was based on the fact that Defendants had not argued invalidity of claims 24 and 25 under § 251, instead suggesting those claims be addressed on obviousness grounds. (*See, e.g.*, D.I. 303 at 6-7; D.I. 305 at 7-8). In seeking to clarify or amend the judgment, however, Plaintiffs did not argue that they had not ***asserted*** claims 24 and 25 in the present case. To the contrary, Plaintiffs argued that infringement of claims 24 and 25 was an issue that required further discovery and proceedings. (*See* D.I. 305 at 9 n.5 ("Moreover, what

December 5, 2013, Judge Robinson issued an opinion that invalidated "all claims of the RE153 patent as violative of 35 U.S.C. § 251(d)" as a matter of "policy." (D.I. 306 at 2). That same day, final judgment was entered in favor of Defendants (D.I. 308), and on December 30, 2013, Plaintiffs appealed (D.I. 309).

On appeal, Plaintiffs challenged the invalidity of claims 1-23 of the RE'153 Patent, arguing these claims were not improperly broadened in violation of § 251 but rather demonstrated the proper construction of "very high mechanical resistance" as used in the '805 Patent, and Plaintiffs also separately challenged the invalidation of claims 24 and 25 of the RE'153 Patent as a matter of policy. (*See, e.g.*, Opening Brief of Plaintiffs-Appellants ArcelorMittal France, ArcelorMittal Atlantique et Lorraine, and ArcelorMittal USA LLC at 21-25, *ArcelorMittal France et al. v. AK Steel Corp. et al.*, 786 F.3d 885 (Fed. Cir. 2015) (No. 2014-1191) [hereinafter *Plaintiffs' Opening Brief in ArcelorMittal II*]; *see also id.* at 54 ("The proper remedy is therefore to remand the 050 case so that the district court can address infringement of reissue claims 24 and 25.")).

On May 12, 2015, the Federal Circuit issued its opinion, which affirmed-in-part, reversed-in-part and remanded. *See ArcelorMittal France v. AK Steel Corp.* (*ArcelorMittal II*), 786 F.3d 885 (Fed. Cir. 2015). As to the invalidity of claims 1-23 of the RE'153 Patent, the Federal Circuit affirmed, finding that those claims were improperly broadened in violation of § 251(d). The Federal Circuit rejected Plaintiffs' argument that the reissued patent was "new evidence" that served as an "extraordinary circumstance" sufficient to deviate from the *ArcelorMittal I* mandate. *ArcelorMittal II*, 786 F.3d at 888-89. Rather, it determined that its construction of "very high mechanical resistance" was binding on remand and was properly applied in the context of the

is at issue now are the products sold by Defendants *since* the first trial, and whether those current products infringe claims 24 and 25 remains to be explored in discovery and assessed in proceedings directed to that issue." (emphasis in original))).

RE'153 Patent. That is, because "very high mechanical resistance" was finally construed in *ArcelorMittal I* to mean "in excess of 1500 MPa" in the '805 Patent, and because that same term must be construed as "in excess of 1000 MPa" in claims 1-23 of the RE'153 Patent, it necessarily followed that claims 1-23 of the RE'153 Patent were improperly broadened in violation of § 251(d). *ArcelorMittal II*, 786 F.3d at 890. As to claims 24 and 25, the Federal Circuit reversed and remanded, finding that invalidation was improper because there had been no claim-by-claim analysis as to broadening – and the parties agreed claims 24 and 25 were of no broader scope than claim 1 of the original '805 Patent. *Id.* Thus, the case was remanded for further proceedings on claims 24 and 25 of the RE'153 Patent consistent with the opinion, as well as the *ArcelorMittal I* mandate. *Id.* at 892. The *Arcelor Mittal II* mandate issued on June 18, 2015. (D.I. 315-1 at 2).

C.    **Remand After *ArcelorMittal II*, Plaintiffs' Covenant Not to Sue and the Third Appeal**

The *ArcelorMittal II* mandate required the court to revisit the issues set forth in the *ArcelorMittal I* mandate as applied to claims 24 and 25 of the RE'153 Patent – *i.e.*, the remand was to focus on literal infringement and commercial success for these two claims. After the *ArcelorMittal II* mandate issued, Judge Robinson held a status conference with the parties to discuss how to proceed. (*See* D.I. 346). Defendants wanted to file motions for summary judgment of noninfringement and invalidity for claims 24 and 25 of the RE'153 Patent in light of the *ArcelorMittal II* mandate (*id.* at 6:5-7:21), whereas Plaintiffs argued those claims were not at issue (and never were) and the case should simply be terminated (*id.* at 3:21-4:6, 8:17-9:12).[13] The parties agreed on a schedule for motions to address their respective positions. (*See* D.I. 319).

---

[13]    The parties also discussed how to proceed in the other cases pending at that time – C.A. Nos. 13-685 and 13-686 – in light of the *ArcelorMittal II* mandate and a second reissue patent obtained by Plaintiffs that had not yet been added to those cases. (*See, e.g.*, D.I. 346 at 4:7-5:23, 7:22-8:13).

Thereafter, Plaintiffs moved to dismiss the case pursuant to Rule 12(b)(1) and 12(h)(3) on the grounds that the court lacked subject matter jurisdiction because there was no longer a case or controversy. (*See* D.I. 321, 322). Relying on the claims of the '805 Patent asserted in the first trial (*see supra* n.4), as well as the fact that the judge denied their motion to amend after the first remand, Plaintiffs argued that claims 1, 2, 5, 7 and 16 of the RE'153 Patent were the only claims ever at issue in this case. (D.I. 322 at 4-6). According to Plaintiffs, once those claims had been invalidated under § 251(d) and that finding had been affirmed by the Federal Circuit in *ArcelorMittal II*, any controversy between the parties ceased to exist as to those claims, and none could exist for claims 24 and 25 because they were never asserted. (*Id.* at 8-9). Plaintiffs also said they would be willing to grant a covenant not to sue to Defendants "for all claims of the RE153 patent in order to resolve any remaining issue regarding claims 24 and 25 of the RE153 patent" (*id.* at 7), but no such covenant was included with the motion. Defendants opposed Plaintiffs' motion to dismiss, arguing that claims 24 and 25 had always been at issue in the case. (*See* D.I. 330). In support, Defendants pointed to Plaintiffs' request that the Federal Circuit (in *ArcelorMittal II*) remand in this case to address infringement of claims 24 and 25. (*Id.* at 7). Defendants also highlighted their argument during the first remand proceedings that claims 24 and 25 of the RE'153 Patent should be addressed under the *ArcelorMittal I* mandate in the event that claims 1-23 were invalidated under § 251(d) – and Plaintiffs did not disagree (or argue claims 24 and 25 were not asserted). (*Id.* at 8). Finally, Defendants noted that their counterclaims of noninfringement and invalidity necessarily meant that claims 24 and 25 were still (and always had been) at issue in this case. (*Id.* at 10). In their reply, Plaintiffs attached an unsigned draft covenant and stated that they were "prepared to deliver" the covenant to Defendants. (D.I. 332 at 6; *see also id.*, Ex. A).

At the same time Plaintiffs filed their motion to dismiss, Defendants moved for summary judgment of invalidity (D.I. 323, 324) and summary judgment of noninfringement (D.I. 325, 326) of claims 24 and 25 of the RE'153 Patent in light of the *ArcelorMittal II* mandate (which directed the court to address these claims under the *ArcelorMittal I* mandate). As to invalidity, Defendants argued that Plaintiffs' evidence of commercial success was insufficient to overcome the *prima facie* case of obviousness from the first trial, which was affirmed by the Federal Circuit and therefore controlling as applied to claims 24 and 25 after the second remand. (D.I. 324 at 1-3). Pointing to evidence from the first trial, Defendants argued that Plaintiffs did not thermally treat their steel sheets after rolling to achieve the desired tensile strength, instead leaving that to customers. (*Id.* at 11). Moreover, evidence showed that even after heat treating, Plaintiffs' product had a mechanical resistance below the 1500 MPa required by the claims. (*Id.* at 12-13). Therefore, according to Defendants, there was no evidence of the required nexus between Plaintiffs' product and claims 24 and 25 such that commercial success could overcome the *prima facie* case of obviousness. (*Id.* at 15).

As to noninfringement, Defendants largely reiterated the same arguments they had made after the first remand,[14] explaining that there was no evidence in the record that any of their products had an ultimate tensile strength in excess of 1500 MPa, as required by claims 24 and 25. (D.I. 326 at 9-12). Plaintiffs' opposition was based primarily on their contention that the court lacked subject matter jurisdiction over claims 24 and 25, repeating many of the same arguments as in their motion to dismiss. (*See* D.I. 331 at 6-11). Plaintiffs also argued that, because claims 24 and 25 of the RE'153 Patent did not exist at the time of the 2011 trial, the *ArcelorMittal I*

---

[14]     Defendant AK Steel also added an argument that there was no evidence AK Steel thermally treated its steel sheets, which is also required by claims 24 and 25. (D.I. 326 at 10).

mandate did not apply to those claims and neither did claim or issue preclusion. (*Id.* at 11-14). Thus, in Plaintiffs' view, there should be additional discovery into Defendants' activities since 2011, and there should be further factfinding as to obviousness for claims 24 and 25 because those were not part of the *prima facie* case of obviousness upheld in *ArcelorMittal I*.[15] (*Id.* at 15-19).

On October 27, 2015, Judge Robinson heard argument on the pending motions. (*See* D.I. 347). The parties argued about whether claims 24 and 25 of the RE'153 Patent were actually at issue in the present case, and Plaintiffs continued to emphasize their willingness to provide Defendants with a covenant not to sue on all claims of the RE'153 Patent. (*See, e.g.*, *id.* at 4:1-5). Defendants countered that the proposed covenant was insufficient because it was unsigned, too narrow for failing to cover acts of customers and too late because there had already been a jury verdict in the case. (*Id.* at 11:6-12:15). Plaintiffs assured Defendants that the covenant did cover acts of customers and that it was in the process of being executed, but Plaintiffs also requested the covenant be conditioned on resolution of the motion to amend in the related C.A. No. 13-685 case.[16] (*Id.* at 32:17-22).

Several weeks later, Plaintiffs filed a letter with the court attaching a signed covenant not to sue, which had been revised to extend to Defendants' customers. (*See* D.I. 336; *see also* D.I. 336, Ex. A at 2). In that letter, Plaintiffs stated:

> As stated at the hearing, ***Arcelor tenders the covenant conditioned on resolution of its motion to amend (D.I. 31) in the 685 case***. As

---

[15]    Plaintiffs also pointed out that claim 25 of the RE'153 Patent contained an additional limitation not in any of the claims of the original '805 Patent. (*See* D.I. 331 at 19).

[16]    At that time, the only patent asserted in C.A. No. 13-685 was the RE'153 Patent, but Plaintiffs had moved to amend the complaint to substitute the new U.S. Reissue Patent No. RE44,940 in place of the RE'153 Patent. (*See* D.I. 31, 32 in C.A. No. 13-685). Plaintiffs apparently wanted to condition tender of the covenant on resolution of that motion to amend so that the C.A. No. 13-685 action would not be mooted by extinguishing the controversy as to the only asserted patent (*i.e.*, the RE'153 Patent). (*See* D.I. 347 at 21:9-18 in C.A. No. 10-050).

> explained at the hearing, this condition is necessary to avoid mooting the 685 case and thereby divesting the Court of jurisdiction. Consequently, Arcelor stands ready to deliver the covenant unconditionally upon resolution of that motion.

(D.I. 336 (emphasis added)).  Defendants responded on November 30, 2015, arguing that the covenant could not moot the case because Plaintiffs had made clear that it was not unconditional. (D.I. 337 at 1).  Moreover, in Defendants' view, the covenant had come too late to divest the court of jurisdiction as it was offered after the jury verdict (*id.* at 1-2), and it was also still too narrow because it did not cover Defendants' "indirect customers" (*id.* at 2).  Defendants argued the court should proceed with resolution of their motions for summary judgment.  (*Id.* at 4).

On December 4, 2015, Judge Robinson denied Plaintiffs' motion to dismiss and granted Defendants' motions for summary judgment of invalidity and noninfringement.  (*See* D.I. 338, 339).  First, addressing Plaintiffs' contention that claims 24 and 25 of the RE'153 Patent were never at issue in the case, the judge disagreed.  She found that, because claims 24 and 25 were "substantially identical" to claim 1 of the original '805 Patent, which was undisputedly asserted in the present case, it followed that claims 24 and 25 of the RE'153 Patent were asserted "as a matter of law" pursuant to 35 U.S.C. § 252.  (D.I. 338 at 7-8).  Judge Robinson also found that Plaintiffs' proposed covenant was not sufficient[17] to divest the court of jurisdiction as it was conditional on resolution of the motion to amend in the related case.  (*Id.* at 5-6, 12 & n.17).  Therefore, because claims 24 and 25 of the RE'153 Patent were in fact asserted, and because they were "substantially identical" to claim 1 of the '805 Patent, the *ArcelorMittal I* mandate was applicable to resolution of Defendants' motions for summary judgment as to claims 24 and 25.  (*Id.* at 8).  Applying that mandate, Judge Robinson granted summary judgment of noninfringement because Plaintiffs did

---

[17]    Judge Robinson ultimately found Plaintiffs' proposed covenant "moot" in light of the grant of summary judgment of noninfringement and invalidity.  (D.I. 338 at 12).

not dispute that the original trial record lacked evidence of Defendants' products having a mechanical resistance above 1500 MPa, as required by claims 24 and 25.[18]  (*Id.* at 9).  She found that summary judgment of invalidity was also appropriate because Plaintiffs did not dispute that the trial record showed their own product had a mechanical resistance below 1500 MPa and thus lacked the requisite nexus for commercial success to overcome the *prima facie* obviousness case.  (*Id.* at 11).

On December 4, 2015, final judgment was entered in favor of Defendants (D.I. 340), and Plaintiffs appealed (D.I. 343) on December 21, 2015.  In their appeal, Plaintiffs argued that the judge erred in granting summary judgment of noninfringement and invalidity as to claims 24 and 25 of the RE'153 Patent because the court lacked subject matter jurisdiction over those claims.  (*See* Brief of Plaintiffs-Appellants ArcelorMittal and ArcelorMittal Atlantique et Lorraine at 27-28, *ArcelorMittal et al. v. AK Steel Corp. et al.*, 856 F.3d 1365 (Fed. Cir. 2017) (No. 2016-1357)).  Plaintiffs did not challenge the grant of summary judgment of noninfringement on the merits, but argued that the judgment of invalidity for claims 24 and 25 was improper because those claims did not exist at the time of the original trial and, therefore, the district court should have allowed "full secondary considerations evidence" on those claims.  (*See, e.g.*, *id.* at 44).

On May 16, 2017, the Federal Circuit issued its opinion, which affirmed judgment of noninfringement and invalidity of claims 24 and 25 of the RE'153 Patent.  *See ArcelorMittal v. AK Steel Corp.* (*ArcelorMittal III*), 856 F.3d 1365 (Fed. Cir. 2017).  As to Plaintiffs' argument that the district court lacked subject matter jurisdiction over those claims because they were never at issue or because Plaintiffs' covenant mooted any case or controversy, the Federal Circuit

---

[18]     As they had in the summary judgment briefing after the first remand (*see supra* § I.B), Plaintiffs focused their opposition on a request for new discovery as to Defendants' post-verdict activities. (*See* D.I. 331 at 15-19).

disagreed. *ArcelorMittal III*, 856 F.3d at 1369-72. Those claims were at issue in the case as evidenced by Plaintiffs' actions – *e.g.*, not disputing that claims 24 and 25 of the RE'153 Patent would be left for an obviousness determination under *ArcelorMittal I* if the other claims were invalidated under § 251(d) and specifically requesting the Federal Circuit remand "the 050 case" in *ArcelorMittal II* to address infringement of claims 24 and 25. *Id.* at 1369; *see also id.* ("We find that ArcelorMittal's statements to this court and its tacit acceptance of Defendants' representations about the litigation status of claims 24 and 25 reflect ArcelorMittal's continued attempt to assert those claims in the 050 case."). As to the covenant, the Federal Circuit held that, even when Plaintiffs ultimately executed the facially unconditional covenant, its tender to Defendants was expressly conditioned on resolution of the motion to amend in the related case. *Id.* Thus, the Federal Circuit agreed that subject matter jurisdiction was not divested because "[a]t no time before the court entered summary judgment did ArcelorMittal **unconditionally** assure Defendants and their customers that it would never assert RE'153 claims 24 and 25 against them." *Id.* at 1370 (emphasis in original). The Federal Circuit then rejected Plaintiffs' arguments that obviousness of claims 24 and 25 needed to be addressed anew and that additional discovery on commercial success was necessary because the claims issued after the *ArcelorMittal I* mandate. *Id.* at 1372. Thus, summary judgment of invalidity was proper. *Id.*

Judge Wallach again dissented, finding that Plaintiffs' covenant was unconditional on its face and, once executed, was sufficient to divest the court of subject matter jurisdiction as to claims 24 and 25 of the RE'153 Patent. *See ArcelorMittal III*, 856 F.3d at 1372-81 (Wallach, J., dissenting). As to the condition set forth in Plaintiffs' cover letter, the dissent explained that the terms of the covenant should control – and the covenant on its face was unconditional and irrevocable. *Id.* at 1378. Thus, according to the dissent, the covenant mooted the controversy

between the parties and the case should have been dismissed prior to entry of summary judgment. *Id.* at 1381.

The Federal Circuit mandate from *ArcelorMittal III* issued on August 21, 2017. (*See* D.I. 351). On September 5, 2017, Defendants filed the present motion (D.I. 354), seeking attorneys' fees under § 285 from April 16, 2013 forward – *i.e.*, from the date the RE'153 Patent issued through the end of litigation. Briefing was completed as of October 17, 2017 (*see* D.I. 355, 359, 360, 362) and, after reassignment to the undersigned judge on September 26, 2018, the Court heard oral argument on Defendants' motion on December 4, 2018 (D.I. 370).

## II.     **LEGAL STANDARDS**

Section 285 of the Patent Act provides that a "court in exceptional cases may award reasonable attorney fees to the prevailing party." 35 U.S.C. § 285. An exceptional case within the meaning of the statute is "one that stands out from others with respect to the substantive strength of a party's litigating position (considering both the governing law and the facts of the case) or the unreasonable manner in which the case was litigated." *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 572 U.S. 545, 554 (2014). Whether a case is exceptional is a question committed to the Court's discretion, and the Court must consider the totality of the circumstances in reaching its conclusion. *Id.* In assessing the totality of the circumstances, the Court may consider, *inter alia*, "frivolousness, motivation, objective unreasonableness (both in the factual and legal components of the case) and the need in particular circumstances to advance considerations of compensation and deterrence." *Id.* at 554 n.6. A party seeking attorneys' fees must show the case is exceptional by a preponderance of the evidence. *Id.* at 557-58. The Court may award attorneys' fees in "the rare case in which a party's unreasonable conduct – while not necessarily independently sanctionable – is nonetheless so 'exceptional' as to justify an award of fees." *Id.* at 555.

## III.    DISCUSSION

Defendants argue that the present case has been exceptional within the meaning of § 285 since April 16, 2013 and that attorneys' fees should be awarded from that time forward. Defendants assert three grounds that, in their view, provide a sufficient basis for a finding of exceptionality.  (*See, e.g.*, D.I. 355 at 9).  The Court will address each of these in turn.

### A.    Plaintiffs' Pursuit of the Broadening RE'153 Patent

First, Defendants argue that the pursuit of the RE'153 Patent is sufficient on its own to render this case exceptional.  (*See* D.I. 355 at 10).  That is, Plaintiffs deliberately – and without informing any of the affected courts or parties – prosecuted a reissue patent to cover steel sheets with a mechanical resistance of 1000 MPa even though the original '805 Patent was clearly limited to a mechanical resistance of 1500 MPa.  (*Id.*).  According to Defendants, not only was the RE'153 Patent prosecuted outside the two-year window allowed by § 251, but Plaintiffs also "obtained" this broadening reissue after "claim construction, after a five-day jury trial resulted in a verdict for [Defendants], and after an appeal in which the Federal Circuit affirmed the critical claim construction of the term 'very high mechanical resistance' in the '805 patent . . . ."  (*Id.*).  In Defendants' view, Plaintiffs sought the RE'153 Patent in a deliberate attempt to circumvent the district court's construction of "very high mechanical resistance" in the '805 Patent and to undo the Federal Circuit mandate affirming that construction.  (*Id.* at 10-12).

As evidence suggesting that the RE'153 Patent on its own makes this case exceptional, Defendants point to comments from Judge Robinson after the first remand, in which she chastised Plaintiffs for pursuing a reissue patent "with the purpose of basically asking [the court] . . . to disregard two years of litigation and a final decision by the Federal Circuit in terms of claim construction."  (*Id.* at 12 (quoting D.I. 313 at 28:3-6); *see also* D.I. 297 at 10 ("[Plaintiffs] pursued

[the] reissue patent as an intentional strategy to avoid the consequences of this court's narrow claim construction, with the ultimate goal of capturing more acts of infringement under the broadening scope of new dependent claim 23 of the RE153 patent.")). Defendants also emphasize that the Federal Circuit "unanimously" rejected Plaintiffs' argument that the RE'153 Patent was evidence that the prior construction of "very high mechanical resistance" from the original '805 Patent was incorrect. (D.I. 355 at 12-13; *see also* D.I. 362 at 3-4). In Defendants' view, this argument was frivolous in view of Federal Circuit precedent and its subsequent rejection in *ArcelorMittal I* demonstrates exceptionality. (D.I. 362 at 3 ("ArcelorMittal's Frivolous Argument to Re-construe the Original Claims of the '805 Patent Renders This Case Exceptional."); *see also id.* at 3-6).[19] In sum, to Defendants, the pursuit of the RE'153 Patent makes this case stand out from others because it was "plainly inconsistent" with the text and purpose of § 251(d), as well as the *ArcelorMittal I* opinion. (D.I. 355 at 13). Thus, they argue, attorneys' fees are appropriate both as a penalty and to deter future litigants from rearguing "the same claim construction arguments upon which it has already lost . . . ." (*Id.* at 14).

Plaintiffs argue that issuance of the RE'153 Patent does not render this case exceptional, and neither does Plaintiffs' attempt to enforce the RE'153 Patent. (*See* D.I. 359 at 14-16). Plaintiffs emphasize that the reissue application was not defective and there is no allegation – let alone evidence – that Plaintiffs misled or deceived the Patent Office in obtaining the RE'153 Patent. (*Id.* at 14). Rather, the Patent Office was informed of the district court's and the Federal

---

[19] Defendants' first asserted basis for exceptionality evolved between its opening brief and reply brief. (*Compare* D.I. 355 at 10 ("Fees Should Be Awarded Due to ArcelorMittal's Intentional Broadening of Its Claims in Violation of 35 U.S.C. § 251(d) and *ArcelorMittal I*."), *with* D.I. 362 at 3 ("ArcelorMittal's Frivolous Argument to Re-construe the Original Claims of the '805 Patent Renders This Case Exceptional.")). For the sake of completeness, the Court will evaluate both asserted grounds.

Circuit's construction of "very high mechanical resistance" to mean in excess of 1500 MPa, and the Patent Office nevertheless granted the RE'153 Patent with a claim covering steel sheets having a mechanical resistance down to 1000 MPa. (*Id.*). In Plaintiffs' view, the Patent Office is presumed to do its job properly and, therefore, the RE'153 Patent was granted with a presumption of compliance with § 251. (*Id.*).

Moreover, according to Plaintiffs, that the Patent Office granted the RE'153 Patent with claims covering mechanical resistance down to 1000 MPa provided a good-faith basis to argue that the prior construction of "very high mechanical resistance" was unduly narrow. (*Id.* at 15). Thus, although the *ArcelorMittal I* mandate issued a few weeks before the RE'153 Patent was granted, Plaintiffs assert that they believed the reissue proceedings "justified a reconsideration of the prior claim construction under the new evidence exception to the mandate rule." (*Id.*). Plaintiffs point out that, although this argument was ultimately unsuccessful and claims 1-23 of the RE'153 Patent were invalidated under § 251(d), the Federal Circuit did not find Plaintiffs' "new evidence" argument to be frivolous or made in bad faith. (*Id.*). Further, the Federal Circuit reversed the policy-based invalidation of claims 24 and 25 of the RE'153 Patent, instead remanding for further proceedings because those claims were no broader than the original patent and the broadened claims did not "taint" the entire reissue application. (*Id.*). Therefore, in Plaintiffs' view, neither the issuance of the RE'153 Patent nor its assertion are a basis for a finding of exceptionality.

Here, the Court accepts Plaintiffs' argument that the pursuit of the RE'153 Patent does not alone make this case exceptional. As an initial matter, the Court notes that the timing of Plaintiffs' prosecution of the RE'153 Patent is not quite as Defendants suggest relative to the ongoing litigation of the '805 Patent. Plaintiffs filed the application for reissue on August 8, 2011, before

the first appeal was filed and even before the district court ruled on Plaintiffs' post-trial motions after the original jury verdict.  (*See, e.g.*, D.I. 248, 249, 253; *see also supra* § I.B).  The Patent Office issued a notice of allowability for the RE'153 Patent on February 19, 2013 – roughly three weeks before the *ArcelorMittal I* mandate issued on March 27, 2013.[20]  Thus, Plaintiffs may have "obtained" the RE'153 Patent after claim construction, an unfavorable verdict and a Federal Circuit mandate (*see* D.I. 355 at 10), but the reality is that Plaintiffs initiated the reissue process long before the *ArcelorMittal I* mandate – indeed, long before the *ArcelorMittal I* opinion issued and even before a final judgment was entered in the trial court.  The timing of the reissue proceedings does not suggest to this Court that Plaintiffs were simply attempting to "frustrate the remand proceedings."  (*Id.* at 10).

Additionally, Plaintiffs were consistent in their claim construction positions in the parallel proceedings and the construction of "very high mechanical resistance" in the '805 Patent remained subject to modification while Plaintiffs prosecuted the RE'153 Patent.  As mentioned above, Plaintiffs filed the application for reissue while waiting for a ruling on their post-trial motions.  In those post-trial motions, Plaintiffs had challenged the construction of "very high mechanical resistance" for the '805 Patent, maintaining that it should extend to steel sheets with a mechanical resistance of 1000 MPa.  (*See, e.g.*, D.I. 229 at 16 ("ArcelorMittal respectfully requests a new trial under the proper construction of 'hot-rolled steel sheet' and 'the sheet has a very high mechanical resistance' claim terms."); *see also* D.I. 227 at 20 n.11).  And the primary ground for Plaintiffs'

---

[20]     In the Court's view, that the RE'153 Patent issued about five months after the *ArcelorMittal I* opinion is not especially noteworthy – parties regularly petition the Federal Circuit for rehearing (and rehearing *en banc*) after an unfavorable opinion issues and that process takes time.  Indeed, Plaintiffs requested rehearings in this case after the *ArcelorMittal I* opinion issued, and it remained a possibility that the court could adopt Plaintiffs proposed claim construction for "very high mechanical resistance" until the petitions were denied and the mandate issued.

appeal was that the jury verdict should be set aside because it was based on erroneous claim constructions. Thus, although Plaintiffs pursued claims in the RE'153 Patent that ended up having a broader reach for "very high mechanical resistance," they did so while continuing to challenge the construction of "very high mechanical resistance" in the '805 Patent. As noted above (*supra* n.20), throughout most of the reissue prosecution, the '805 Patent claim construction remained subject to revision, and it was possible that Plaintiffs could obtain a construction that covered hot-rolled steel sheets with a mechanical resistance down to 1000 MPa.[21]

Moreover, as the Federal Circuit noted in *ArcelorMittal II*, there is no evidence that Plaintiffs misled or deceived the Patent Office in prosecuting the RE'153 Patent. *See ArcelorMittal II*, 786 F.3d at 891 n.3. To the contrary, on the day the reissue application was filed, Plaintiffs provided the Patent Office with materials from this litigation that set forth the construction of "very high mechanical resistance." (*See* D.I. 278, Ex. C at 106). And when the Federal Circuit issued its opinion in *ArcelorMittal I* affirming that construction – *i.e.*, limiting the claims to steel sheets with a mechanical resistance in excess of 1500 MPa – Plaintiffs provided that opinion to the Patent Office as well. (*See* D.I. 278, Ex. C at 48, 50).

The Court also finds it worth noting that the Federal Circuit did not uphold the invalidation of claims 24 and 25 of the RE'153 Patent as a sanction. *See ArcelorMittal II*, 786 F.3d at 891 ("[W]hile we are mindful of the concerns over ArcelorMittal's attempts to modify the district court's claim construction through the reissue process, we are not persuaded that these policy concerns demand we part from our precedent."); *see also id.* at 891 n.3 ("Here, there is no allegation or evidence that ArcelorMittal acted with deceptive intent or submitted a defective

---

[21]     Indeed, the dissent would have construed the term to reach 1000 MPa, as Plaintiffs proposed. *See ArcelorMittal I*, 700 F.3d at 1328 (Wallach, J., dissenting).

reissue application. Thus, we cannot say that the entire reissue application is tainted."). Although Plaintiffs may have sought reissue claims that were broader than the construction afforded in litigation, the Court believes the Federal Circuit's reversal as to claims 24 and 25 further suggests Plaintiffs' pursuit of the RE'153 Patent is not sufficient on its own to render this case exceptional.

In terms of Plaintiffs asserting the RE'153 Patent on remand, the Court does not agree that Plaintiffs were attempting to assert "an obviously weak patent." (D.I. 362 at 6; *see also id.* at 3-6). Plaintiffs' broadening to cover mechanical resistance down to 1000 MPa ultimately resulted in the invalidation of claims 1-23 of the RE'153 Patent. *See ArcelorMittal II*, 786 F.3d at 890. But claims 24 and 25 of the RE'153 Patent survived the § 251 analysis because those claims required a mechanical resistance in excess of 1500 MPa and, as a result, were undisputedly no broader than the claims of the original '805 Patent. *Id.*; *see also id.* at 891-92. Thus, no matter the outcome for claims 1-23 of the RE'153 Patent under § 251, Plaintiffs possessed two claims in the RE'153 Patent that were not violative of § 251 such that they were asserting an "obviously weak patent" after the first remand.[22]

As to Plaintiffs' attempt to use the RE'153 Patent to revisit (*i.e.*, broaden) the Federal Circuit's construction of "very high mechanical resistance" in the original '805 Patent, however, the Court is more troubled. (*See* D.I. 362 at 3-6). At the time the RE'153 Patent issued, there may

_____

[22]    Defendants implicitly acknowledged this when they stated that claims 24 and 25 would require disposition under the *ArcelorMittal I* mandate even if claims 1-23 were invalid under § 251(d). (*See* D.I. 282 at 17 ("This would leave claims 24-25 of the RE153 patent for the limited determination on obviousness remanded by the Federal Circuit.")). And although claims 24 and 25 of the RE'153 Patent were very similar to the claims of the '805 Patent that the Federal Circuit agreed were *prima facie* obvious, the first remand was to address literal infringement and commercial success under the correct construction of "hot-rolled steel sheet." *See ArcelorMittal I*, 700 F.3d at 1322, 1326. Commercial success as applied to the RE'153 Patent was never addressed in the first remand. Thus, this Court does not believe that Plaintiffs were asserting claims 24 and 25 knowing they were invalid.

not have been precedent foreclosing that argument, but the language of § 251(d) should have been a strong indicator to Plaintiffs that their approach would likely fail. Section 251(d) provides that "[n]o reissued patent shall be granted enlarging the scope of the claims of the original patent unless applied for within two years from the grant of the original patent." 35 U.S.C. § 251(d). As the Federal Circuit pointed out in *ArcelorMittal II*, determining whether a reissue has broadened the original claims requires a comparison between the scope of the original claims and the reissued claims. *See ArcelorMittal II*, 786 F.3d at 890. As a matter of common sense, if claims in a reissue patent could be used to ***redefine*** the scope of the original claim, there would be no inquiry necessary under § 251(d) – indeed, it is doubtful there would even be such a thing as a broadening reissue patent. *See id.* at 889 ("Permitting a reissue patent to disturb a previous claim construction of the original claims would turn the validity analysis under 35 U.S.C. § 251 on its head.").

Moreover, it was not only the language of the statute itself, but also the precedent in the related context of reexaminations that should have signaled to Plaintiffs they were unlikely to prevail in setting aside the Federal Circuit's construction using the reissue patent. *See, e.g.*, *Anderson v. Int'l Eng'g & Mfg., Inc.*, 160 F.3d 1345, 1349 (Fed. Cir. 1998) (rejecting argument that reexamined claim "simply clarified the scope of the claim as originally granted" and reiterating that the proper inquiry is whether the original claims were as broad when issued, not whether specification could have supported claim as broadened in reexamination). Considering the language of § 251 and the analogous case law, the Court is not persuaded that this argument was as "reasonable" as Plaintiffs urge. (*See* D.I. 359 at 15). But nor is the Court convinced that it was entirely "frivolous" either. (*See* D.I. 362 at 3; *see also id.* at 3-6).

B.     Plaintiffs Continuing to Litigate the RE'153 Patent after the First Remand

Defendants next argue that, after the first remand, Plaintiffs continued to litigate in bad faith because there was no evidence of infringement under the *ArcelorMittal I* mandate, nor was there evidence of commercial success to overcome the *prima facie* obviousness case upheld in *ArcelorMittal I*.  (*See* D.I. 355 at 14-16).  That is, Defendants assert that Plaintiffs ignored the lack of evidence and pressed forward with litigating the RE'153 Patent instead.   As examples demonstrating how Plaintiffs sought to prolong litigation, Defendants point to (1) Plaintiffs' assertion of "improperly broadened claims," (2) Plaintiffs' repeated requests for discovery into Defendants' post-2011 activities and (3) Plaintiffs' filing of the C.A. No. 13-685 action.  (*Id.* at 14).  Defendants argue that Plaintiffs not only prolonged this litigation without basis, but they also used the "improperly-maintained litigation" to dissuade customers from purchasing products from Defendants.   (*Id.* at 15; *see also id.* at 16 ("ArcelorMittal thus used the specter of litigation, however meritless in light of the decision in *ArcelorMittal I* and the clear prohibitions in §251(d), to obtain a competitive advantage by threatening Defendants' customers as well.")).  Defendants argue that Plaintiffs advertising that the RE'153 Patent covered mechanical resistance down to 1000 MPa after the *ArcelorMittal I* mandate is evidence of "bad faith" sufficient to render this case exceptional.  (*Id.* at 15).  Moreover, that Plaintiffs "maintain[ed] claims that had no merit further rendered this case exceptional."  (*Id.* at 14).

Plaintiffs now agree that there was no evidence in the original trial record to support a finding of infringement or commercial success under the *ArcelorMittal I* mandate.  (D.I. 359 at 16).   Instead, they argue that they "reasonably believed" they had a "right to enforce the presumptively valid RE153 Patent" and that there was evidence that Defendants had begun selling products "that met the 1500 MPa limitation after hot stamping" after the 2011 trial.  (*Id.* at 16).

According to Plaintiffs, it was not unreasonable – or exceptional – to seek leave to amend their complaint and to supplement the record with discovery into Defendants' post-verdict activities. (*Id.*; *see also id.* at 17 ("[Plaintiffs'] effort to seek discovery was reasonable and legally justified.")). Moreover, in Plaintiffs' view, that Judge Robinson denied the additional discovery necessarily means that the proceedings were not prolonged. (*Id.* at 17). And as to C.A. No. 13-685, Plaintiffs argue that case is not relevant to the motion for attorneys' fees in this case, nor is it evidence that Plaintiffs unnecessarily prolonged litigation or needlessly multiplied proceedings. (*Id.*). Rather, in C.A. No. 13-685, Plaintiffs were permitted to "pursue [AK Steel]'s post-2011 actions," thereby suggesting that those further proceedings were "reasonable." (*Id.*).

As an initial matter, and as touched upon above, the Court does not believe that Plaintiffs' mere assertion of the RE'153 Patent on remand renders this case exceptional. (*See supra* § III.A). The Court does not agree that, after the first remand, Plaintiffs knowingly asserted "improperly broadened claims" (*i.e.*, in violation of § 251(d)) in a way that prolonged this litigation. (*See* D.I. 355 at 14). The Patent Office issued the RE'153 Patent after being provided litigation materials showing the construction of "very high mechanical resistance" as used in the original '805 Patent, and the reissue was presumptively valid. Moreover, two claims of the RE'153 Patent were no broader than the original claims – a point that Defendants conceded. In fact, Defendants were the ones who asserted that the validity of claims 24 and 25 of the RE'153 Patent would have to be addressed under the *ArcelorMittal I* mandate even if claims 1-23 were invalid as broadened in violation of § 251(d). (*See* D.I. 282 at 16-17). Setting those claims off to the side to address later would necessarily prolong litigation. The reality appears to be that Plaintiffs obtained a reissue patent that changed the landscape of litigation after the first remand, and both sides were

attempting to navigate a path to address the new claims in the context of the *ArcelorMittal I* mandate.

As to the other conduct that purportedly prolonged litigation – requesting discovery in this case and filing the C.A. No. 13-685 case – the Court generally agrees with Plaintiffs that the filing of the C.A. No. 13-685 case is not particularly relevant to the motion for attorneys' fees in this case, nor is it evidence that Plaintiffs needlessly multiplied proceedings. That being said, the Court is troubled by Plaintiffs' attempt to reopen the record in this case on the first remand, particularly in light of that new case. The Court can discern no sound reason why Plaintiffs attempted to amend their complaint to substitute the RE'153 Patent in this case – after a jury verdict and first appeal – when they had filed new cases (*i.e.*, C.A. Nos. 13-685 and 13-686) asserting the same patent. Plaintiffs would have had an opportunity to try infringement in the new cases, and Plaintiffs could presumably seek discovery into activities beyond the original trial record in those cases. Indeed, that is precisely what happened in C.A. No. 13-685, as Plaintiffs themselves point out. (*See* D.I. 359 at 17). The most logical conclusion, of course, is that Plaintiffs sought to amend the complaint in this case to undo the prior claim construction of "very high mechanical resistance" and to avoid a final judgment that may have a preclusive effect in the new cases. And as to Plaintiffs' specific requests for additional discovery well after the jury verdict, the law of the Third Circuit is clear that evidence coming into existence after a trial is not "new evidence" sufficient to justify relief from judgment. *See, e.g.*, *Betterbox Commc'ns Ltd. v. BB Techs., Inc.*, 300 F.3d 325, 331 (3d Cir. 2002). Although Plaintiffs had a right to assert the RE'153 Patent once it issued, the Court is dubious that any attempt to use it to reopen the record in this case was a prudent path forward.

C.  Plaintiffs Securing a Remand in *ArcelorMittal II* to Address Claims 24 and 25 of the RE'153 Patent and Subsequent Inconsistencies

Finally, Defendants argue that Plaintiffs securing a second remand for claims 24 and 25 of the RE'153 Patent in *ArcelorMittal II* only to then argue those claims were never asserted is additional grounds for declaring this case exceptional.  (*See* D.I. 355 at 16-20).  In support, Defendants point to the statement made in Plaintiffs' briefing before the Federal Circuit in *ArcelorMittal II*, in which Plaintiffs requested a remand for "non-broadened" claims 24 and 25: "there is evidence that those claims were infringed during the time period at issue in the 050 case. The proper remedy is therefore to remand the 050 case so that the district court can address infringement of reissue claims 24 and 25."  (*Id.* at 16-17 (quoting *Plaintiffs' Opening Brief in ArcelorMittal II* at 54-55)).  Then, Defendants assert, on remand, Plaintiffs "attempted to reversed [sic] course and argued that this Court did not have subject matter jurisdiction . . . because [Plaintiffs] supposedly had never asserted claims 24 and 25 in this case."  (D.I. 355 at 17). According to Defendants, this litigation tactic further prolonged litigation.  (*Id.* at 16).  Moreover, in Defendants' view, the "flat inconsistency" between specifically requesting a remand to address infringement of claims 24 and 25 of the RE'153 Patent only to be followed by arguments that those claims were never asserted is evidence of "subjective bad faith" and "exceptionally meritless claims."  (*Id.* at 16, 17).

Defendants also take issue with Plaintiffs' attempt to moot this case with a covenant not to sue.  (*See* D.I. 355 at 17).  That covenant was always conditional, Defendants explain, because Plaintiffs were unwilling to make it unconditional in fear that it would moot the C.A. No. 13-685 case before a second reissue was substituted into the case.  (*Id.*).  On appeal in *ArcelorMittal III*, Plaintiffs argued to the Federal Circuit that their covenant not to sue was "unconditional on its face," which Defendants contend is at odds with the representation to Judge Robinson that the

covenant was conditioned on resolution of a motion to amend in the related case.  (*See id.* at 17-18; *see also* D.I. 336 ("Arcelor tenders the covenant conditioned on resolution of its motion to amend (D.I. 31) in the 685 case.")).  According to Defendants, these additional inconsistencies regarding the nature of the covenant are further evidence of exceptionality, and so is the "improper purpose" of attempting to moot this case with the covenant to avoid a final preclusive judgment that may affect the later-filed cases.  (*See* D.I. 355 at 17-19; *see also* D.I. 362 at 8-9).

Plaintiffs argue that claims 24 and 25 of the RE'153 Patent were at issue in this case only because Judge Robinson *sua sponte* invalidated those claims under § 251(d).  (*See* D.I. 359 at 17, 18).  Plaintiffs emphasize that they simply "sought to vacate that ruling" in *ArcelorMittal II* and they were successful in doing so.  (*Id.* at 17).  Plaintiffs argue that, on remand, they believed "in good faith" that their statements at the October 2015 hearing were effectively a covenant to Defendants on the RE'153 Patent and therefore sufficient to divest the court of jurisdiction.  (D.I. 359 at 18; *see also* D.I. 347 at 17:19-23 ("There has been no jury trial on claims 24 and 25.  They've never been asserted in that case.  And our covenant against suit says, we're not going to assert them.  He's getting a free ride on that patent.  It's gone.")).  Moreover, per Plaintiffs, once the written covenant was filed with the court, it was "executed and facially unconditional" – the cover letter merely requested that the covenant "not be deemed entered" until the court ruled on the motion to amend in the related C.A. No. 13-685 case.  (D.I. 359 at 18).  Plaintiffs thus argue that the covenant was not conditioned on the grant of their motion to amend, but rather upon its resolution.  (*Id.*).  Although the Federal Circuit rejected this argument, Plaintiffs note that the dissent agreed the covenant was unconditional, thereby extinguishing any controversy as to the RE'153 Patent.  (*Id.*).  In Plaintiffs' view, the covenant was tendered "in good faith" and the related arguments were "reasonable."  (*Id.*).

As to inconsistent arguments made to the district court and the Federal Circuit, Plaintiffs contend that Defendants have not shown any arguments were made in bad faith or "altered the case in any material way." (D.I. 359 at 18). For example, on whether claims 24 and 25 of the RE'153 Patent were asserted in the present case, Plaintiffs focus on the fact that neither Judge Robinson nor the Federal Circuit found Plaintiffs' arguments to be "frivolous or unfounded." (*Id.* at 19). Moreover, in Plaintiffs' view, those arguments "did not materially change or add to the proceedings." (*Id.*). That is, if claims 24 and 25 were not asserted in this case, *ArcelorMittal II* should have resulted in a reversal of invalidity under § 251 for those claims and this litigation would have ended. (*Id.*). If, however, claims 24 and 25 were asserted, further proceedings after *ArcelorMittal II* were necessary, which Plaintiffs attempted to end with a motion to dismiss (and covenant). (*Id.*). Thus, according to Plaintiffs, whether they said the claims were asserted or not is essentially unimportant – under either scenario, Plaintiffs were not responsible for prolonging litigation. Plaintiffs do not address the fact that they requested a remand from the Federal Circuit in *ArcelorMittal II* for claims 24 and 25 to address infringement, only to argue to Judge Robinson on remand that those claims were never asserted.

First addressing Plaintiffs' proposed covenant on the RE'153 Patent and the allegedly inconsistent arguments about its conditional nature, the Court does not find the bad faith Defendants suggest. (*See* D.I. 355 at 18). As an initial matter, it is not the case that only "when Defendants briefed summary judgment, [Plaintiffs] offered a contingent covenant not to sue." (*Id.* at 17). Rather, on remand from *ArcelorMittal II*, Plaintiffs offered a covenant not to sue during briefing of their motion to dismiss, which proceeded in parallel with Defendants' motions for summary judgment of noninfringement and invalidity. (*See* D.I. 322; *see also* D.I. 332, Ex. A (attaching draft covenant to reply brief)). That is, the covenant was not an abrupt about-face in

response to summary judgment motions that Plaintiffs "could not defend," as Defendants seem to argue. (D.I. 355 at 17). Moreover, once Plaintiffs filed an executed covenant with the court to address concerns raised by Defendants (*see* D.I. 347 at 11:6-12:15), the covenant itself was facially unconditional (s*ee* D.I. 336, Ex. A).[23] Although the accompanying cover letter cast doubt on whether Plaintiffs were unconditionally promising not to sue Defendants on the RE'153 Patent (*see* D.I. 336), the Court does not agree that Plaintiffs were being "flatly contradictory" in their positions before Judge Robinson and the Federal Circuit (D.I. 355 at 18). As Defendants point out, Plaintiffs argued to the Federal Circuit that the covenant was "unconditional on its face" (*see* D.I. 355 at 18), which is supported by the terms of the covenant itself. That the cover letter conditioned tender of the covenant on resolution of a motion in the related C.A. 13-685 case does not change the fact that the covenant was, in fact, unconditional on its face.

As to conditions imposed by the cover letter, it certainly would have been more prudent for Plaintiffs to tender the facially unconditional covenant without the cover letter and then simply file a new case asserting the second reissue patent. Plaintiffs seem to concede as much now. (*See, e.g.*, D.I. 370 at 41:12-17 ("[I]n retrospec[t] we were wrong. We thought well, gosh, if you don't quote enter it, you can avoid mooting the 685 case, we said otherwise we'll just have to re-file the case which we did do and we'll do, that's fine, we thought administratively ironically in retrospect

---

[23]    The Federal Circuit majority and dissent both found that the covenant was unconditional on its face. *See ArcelorMittal III*, 856 F.3d at 1368 ("Although the covenant was facially unconditional, ArcelorMittal said in its enclosing letter that it was 'tender[ing] the covenant conditioned on resolution of its motion to amend (D.I. 31) in the 685 case.'" (citation omitted)); *see also id.* at 1377 (Wallach, J., dissenting) ("An analysis of the Covenant's terms reveals that it contains no conditional terms, as the majority concedes. Although Appellants conditionally tendered the Covenant to the District Court, the Covenant itself contained no conditions precedent and was fully executed." (citation omitted)). The disagreement between the majority and the dissent focused on the impact of the accompanying cover letter.

we're saving the court problems.")).  This Court, however, does not believe that the path Plaintiffs

pursued at the time – *i.e.*, the covenant and the accompanying arguments along the way – rises to

the level of "bad faith" that Defendants urge.

Plaintiffs securing the second remand on claims 24 and 25 of the RE'153 Patent only to

turn around and contend that those claims were not asserted (and never had been) is, however, a

different matter.  The Court is concerned by Plaintiffs' conduct – in fact, the Court finds itself

troubled by Plaintiffs' present-day characterizations of that conduct.  Judge Robinson invalidated

claims 24 and 25 of the RE'153 Patent under § 251, and Plaintiffs did not simply seek to "vacate

that ruling" in *ArcelorMittal II* as they contend.  (D.I. 359 at 17).  Rather, Plaintiffs argued in their

appellate brief that the Federal Circuit should ***remand*** as to those claims to address ***infringement***.

(*See Plaintiffs' Opening Brief in ArcelorMittal II* at 54-55 ("[T]here is evidence that [claims 24

and 25] were infringed during the time period at issue in the 050 case.  The proper remedy is

therefore to remand the 050 case so that the district court can address infringement of reissue

claims 24 and 25.")).  This was not a situation where Plaintiffs were only attempting to reverse (or

vacate) an invalidity ruling and do nothing else with the claims.  Plaintiffs represented to the

Federal Circuit that there was evidence of infringement as to claims 24 and 25 and a remand was

necessary to take that issue up (*id.*), particularly because Judge Robinson had only addressed

invalidity of the RE'153 Patent (under § 251).

Then, after receiving the remand they requested to address claims 24 and 25 of the RE'153

Patent, Plaintiffs abruptly changed course and told Judge Robinson at a status conference that those

claims were never asserted and that this case should simply be terminated.  (*See* D.I. 346 at 3:21-

4:6, 8:17-9:12).  The Court finds it telling that Plaintiffs largely ignore this sequence of events in

their opposition to the motion for attorneys' fees.  Instead, Plaintiffs contend that whether claims

24 and 25 were asserted is essentially unimportant because no court found Plaintiffs' arguments to be frivolous or made in bad faith and, in any event, there was no prolongation of litigation from Plaintiffs' conduct.

This Court, however, is not entirely convinced that Plaintiffs' request for a remand and immediate about-face is not responsible for prolonging litigation. Had Plaintiffs not represented to the Federal Circuit that issues of infringement remained for claims 24 and 25, this case may very well have ended after *ArcelorMittal II*. Then again, those claims had not been addressed under the obviousness part of the *ArcelorMittal I* mandate as required, and Defendants arguably had declaratory judgment counterclaims of invalidity for all claims of the RE'153 Patent.[24] It is therefore also possible that this litigation would have played out the same way even without Plaintiffs' misleading request for a remand. In any case, Plaintiffs provide no explanation for their inconsistent arguments to the Federal Circuit and Judge Robinson in this regard, and this Court is skeptical that Plaintiffs could offer any legitimate explanation.

D.    Totality of the Circumstances

The Court must view all of the conduct set forth in detail above, along with the conduct of Defendants and any other relevant factors, in assessing the totality of the circumstances to determine whether this case is exceptional. *See Octane Fitness*, 572 U.S. at 554 ("District courts may determine whether a case is 'exceptional' in the case-by-case exercise of their discretion, considering the totality of the circumstances."); *see also Gaymar Indus., Inc. v. Cincinnati Sub-Zero Prod., Inc.*, 790 F.3d 1369, 1373 (Fed. Cir. 2015) ("[T]he conduct of the parties is a relevant

---

[24]    The Court says "arguably" only because Defendants did not amend their pleadings to direct their counts of invalidity to the RE'153 Patent in place of the original '805 Patent. If, however, infringement of the RE'153 Patent was at issue without a proper amendment of pleading, so were Defendants' claims of invalidity under § 103.

factor under *Octane*'s totality-of-the-circumstances inquiry, including the conduct of the movant . . . ." (footnote omitted)). Here, there are instances in which Plaintiffs advanced weak arguments or presented inconsistent positions to the courts, some of which may be examples of the type of litigating positions or manner of litigation that could make this case stand out from others.[25] There are, however, more examples where Plaintiffs' positions were not objectively unreasonable at the time and were litigated in a reasonable manner. *See Stone Basket Innovations, LLC v. Cook Med. LLC*, 892 F.3d 1175, 1180 (Fed. Cir. 2018) ("[A] strong or even correct litigating position is not the standard by which we assess exceptionality."). Overall, the Court does not believe Plaintiffs engaged in a consistent pattern of unreasonable conduct or substantively weak positions that makes this case stand out from others. The Court thus concludes that the factors weighing against finding this case exceptional outweigh those that favor such a finding.

This Court is mindful that district judges are given discretion in determining whether a case is exceptional under § 285 because it is that judge who lives with the case as it proceeds. *See Highmark Inc. v. Allcare Health Mgmt. Sys., Inc.*, 572 U.S. 559, 564 (2014) ("[T]he district court 'is better positioned' to decide whether a case is exceptional . . . because it lives with the case over a prolonged period of time."). Although this case was only assigned to the undersigned judge after the motion for attorneys' fees was fully briefed, this Court has undertaken a painstaking

---

[25] As should be clear above, the Court is most troubled by Plaintiffs' request for a remand to address infringement of claims 24 and 25 of the RE'153 Patent only to then argue for the first time on remand that those claims had never been asserted. Although that conduct is disturbing, the Court is not wholly convinced that those events evidence an unreasonable manner of litigation sufficient to support a finding of exceptionality – rather than suggesting bad lawyering on the part of Plaintiffs. *See Gaymar Indus.*, 790 F.3d at 1377 ("While such sloppiness on the part of litigants is unfortunately all too common, it does not amount to misrepresentation or misconduct. In view of the serious consequences of a finding of misconduct, it is important that the district court be particularly careful not to characterize bad lawyering as misconduct.").

review of the entire record in this case and the related appeals to be able to assess the totality of the circumstances. As part of that review, this Court considered Judge Robinson's frustration with Plaintiffs for initiating reissue proceedings and for the impact their RE'153 Patent ultimately had on remand proceedings after *ArcelorMittal I*. (*See, e.g.*, D.I. 297 at 10; D.I. 313 at 28:3-6). This Court is sensitive to Judge Robinson's frustration,[26] but it appears limited to Plaintiffs obtaining the RE'153 Patent – *i.e.*, there is no similar expression of frustration with Plaintiffs for the rest of the litigation. Moreover, momentary frustration with litigation positions – and even litigants – is not the standard by which exceptionality is assessed. Rather, the relevant inquiry is whether the substantive strength of Plaintiffs' litigating positions or their manner of litigating makes this case stand out from others. On balance, as stated above, this Court does not believe that to be true here.

Additionally, in this Court's view, there were steps along the way in this litigation where the parties, and even the court, attempted to bypass issues for the sake of expediency and efficiency, but in retrospect the net effect of these attempts was to further complicate this case and likely resulted in piecemeal litigation that may have otherwise been avoided. In short, the circuitous route taken in this litigation, which is part of the totality of circumstances, is not solely attributable to Plaintiffs. For example, Defendants opposed Plaintiffs' motion to amend the complaint in this case to substitute the RE'153 Patent during the first remand, but represented they were "willing to stipulate to [its] substitution." (D.I. 275 at 2). No stipulation was ever filed with the court and, the motion to amend was not granted (D.I. 297 at 11 n.13), which is a fact that

---

[26] The Court also reviewed the recording of the Federal Circuit proceedings and recognizes the frustration expressed by Judge Moore regarding Plaintiffs' argument that claims 24 and 25 of the RE'153 Patent were never asserted – and that the district court lacked subject matter jurisdiction over them – despite requesting a remand for those claims. (*See* D.I. 355 at 18, 19 (quoting *ArcelorMittal III* oral argument available at http://oralarguments.cafc.uscourts.gov/default.aspx?fl=2016-1357.mp3)). As noted above, this Court agrees that that conduct is troubling. (*See supra* § III.C & n.25).

Plaintiffs later relied on to argue that claims 24 and 25 were never asserted in this case (*see* D.I. 322 at 5-6). Had the parties simply put forth the effort to prepare a stipulation for the court regarding substitution of the RE'153 Patent after the first remand, some of the potential issues with substitution (*e.g.*, which claims are asserted) would have become apparent during negotiations and, as a result, proceedings after *ArcelorMittal II* may have been less complicated (or unnecessary).

As another example, when it came to summary judgment proceedings after the first remand, the court requested that obviousness under the *ArcelorMittal I* mandate be addressed at a later time. (D.I. 312 at 44:19-45:1 ("I'm a little hesitant to bring the obviousness in at this point . . . . If you want expedition, I would set invalidity aside for a moment and just focus on the whole issue of what I do with a reissued patent."); *id.* at 45:25-46:3 ("All I'm looking for is the mechanism by which you all have the opportunity to present your arguments on the issue of infringement and the remand and the reissue patent and how I deal with this . . . .")). Had the issue of literal infringement and commercial success under the *ArcelorMittal I* mandate been addressed for claims 24 and 25 of the RE'153 Patent during the first remand (in addition to addressing invalidity under § 251), the case may very well have ended after those remand proceedings.

Thus, in light of the totality of the circumstances,[27] the Court does not find this case exceptional and certainly not "so 'exceptional' as to justify an award of fees." *Octane Fitness*, 572 U.S. at 555; s*ee also Icon Health & Fitness, Inc. v. Octane Fitness, LLC*, 576 F. App'x 1002,

---

[27] The Court has considered all factors advanced by Defendants to support a finding of exceptionality, as well as those offered by Plaintiffs in opposition, even if not explicitly addressed in this opinion. *See Univ. of Utah v. Max-Planck-Gesellschaft zur Foerderung der Wissenschaften e.V.*, 851 F.3d 1317, 1323 (Fed. Cir. 2017) (noting that the trial judge has "no obligation to write an opinion that reveals her assessment of every consideration" when denying attorneys' fees under § 285).

1005 (Fed. Cir. 2014) ("The Supreme Court's decision in *Octane* did not, however, revoke the discretion of a district court to deny fee awards even in exceptional cases.").

IV.     <u>**CONCLUSION**</u>

For the foregoing reasons, Defendants' motion for attorneys' fees (D.I. 354) is DENIED. An appropriate order will follow.